**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: MARK A. BARNETT, CHIEF JUDGE**

|  |  |
|---|---|
| TRIJICON, INC., ) | |
| Plaintiff, ) | |
| v. ) | Court No. 22-00040 |
| UNITED STATES, ) | |
| Defendant. ) | |

### PROPOSED ORDER

Upon consideration of Plaintiff's Motion for Summary Judgment, and all of the pleadings and papers on file herein, and after due deliberation, it is hereby —

**ORDERED** that Plaintiff's Motion for Summary Judgment be, and hereby is granted; and it is further

**ORDERED** that the responsible United States Customs and Border Protection officials shall reliquidate the entries subject to this action, classifying Plaintiff's Tritium Sight Inserts under Subheading 9022.29.80 of the Harmonized Tariff Schedule of the United States, and refunding the excess duties collected on the merchandise to the Plaintiff, with lawful interest.

 

 

_____
Mark A. Barnett, Chief Judge

DATED: _____
      New York, New York

**NONCONFIDENTIAL**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: MARK A. BARNETT, CHIEF JUDGE**

|  |  |  |
|---|---|---|
| TRIJICON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 22-00040 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Trijicon, Inc. ("Trijicon"), through its undersigned attorneys, respectfully moves the Court pursuant to USCIT R. 56 for an order of summary judgment, holding that CBP's classification upon liquidation of the subject merchandise is overruled, that Trijicon's claimed classification for the subject merchandise under Heading 9022, HTSUS, is sustained; and that the appropriate CBP official is directed to re-liquidate the involved entry accordingly, and to refund the excess duties collected, with interest as provided by law.

This motion is supported by the attached Memorandum of Points and Authorities.

Respectfully Submitted,

*/s/ Alexander D. Chinoy*
Alexander D. Chinoy
Shara L. Aranoff
Cynthia Galvez
COVINGTON & BURLING LLP
850 10th St NW
Washington, D.C. 20001
achinoy@cov.com
(202) 662-5559

Dated: September 15, 2023

**NONCONFIDENTIAL**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: MARK A. BARNETT, CHIEF JUDGE**

|  |  |
|---|---|
| TRIJICON, INC.,<br><br>                Plaintiff,<br><br>       v.<br><br>UNITED STATES,<br><br>                Defendant. | Court No. 22-00040 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Alexander D. Chinoy
Shara L. Aranoff
Cynthia Galvez
COVINGTON & BURLING LLP
850 10th St NW
Washington, D.C. 20001
achinoy@cov.com
(202) 662-5559

Dated: September 15, 2023

i

**NONCONFIDENTIAL**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

RELEVANT PORTIONS OF THE TARIFF SCHEDULE ........................................... 1

QUESTION PRESENTED FOR DECISION ............................................................... 2

STATEMENT OF FACTS ........................................................................................... 2

STATEMENT OF THE CASE ...................................................................................... 9

SUMMARY OF ARGUMENT ................................................................................... 10

JURISDICTION .......................................................................................................... 11

STANDARD OF REVIEW ......................................................................................... 11

ARGUMENT ............................................................................................................... 12

I.   The Tritium Sight Inserts Are Properly Classified As An Apparatus Based On The
     Use Of Beta Radiation In Heading 9022 Pursuant to GRI 1 .............................. 12

     A.   The Tritium Sight Inserts Are An "Apparatus" Within The Meaning Of
          Heading 9022 .............................................................................................. 14

     B.   The Tritium Sight Inserts Are Based On The Use Of Beta Radiation, Thus
          Classification In 9022 Is Proper ................................................................ 17

     C.   Chapter 90 Does Not Preclude Classification of The Tritium Sight Inserts
          in Heading 9022 .......................................................................................... 18

     D.   WCO Explanatory Note to Chapter 90 Confirms That The Tritium Sight
          Inserts Are Classified In Heading 9022 ..................................................... 21

     E.   WCO Explanatory Note 9022 Does Not Preclude Classifying The Tritium
          Sight Inserts In Heading 9022 .................................................................... 24

     F.   Because the Tritium Sight Inserts Are Classifiable Under Heading 9022,
          They Are Precluded from Classification Under Heading 9405 .................. 25

II.  The Tritium Sight Inserts Are Properly Classified As An Apparatus Based On The
     Use of Beta Radiation Under Heading 9022 Pursuant To GRI 3 ........................ 29

     A.   Heading 9022 Is More Specific Than Heading 9405 .................................. 30

     B.   CBP Erred In Classifying Tritium Sight Inserts In Heading 9405 ............. 31

CONCLUSION ............................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Net & Twine Co. v. Worthington,*
141 U.S. 468 (1891) ....................................................................................................11

*Anhydrides & Chems., Inc. v. United States,*
130 F.3d 1481 (Fed. Cir. 1997) ...................................................................................11

*Bausch & Lomb, Inc. v. United States,*
148 F.3d 1363 (Fed. Cir. 1998) .............................................................................11, 13

*Bousa Inc. v. United States,*
25 CIT 386 (2001) ........................................................................................................11

*CamelBak Prod., LLC v. United States,*
649 F.3d 1361 (Fed. Cir. 2011) .......................................................................12, 13, 27

*Cummins Inc. v. United States,*
454 F.3d 1361 (Fed. Cir. 2006) ...................................................................................11

*Deckers Outdoor Corp. v. United States,*
714 F.3d 1363 (Fed. Cir. 2013) ...................................................................................21

*Deseret Co., v. United States,*
10 CIT 609 (1986) ........................................................................................................15

*Faus Grp., Inc. v. United States,*
581 F.3d 1369 (Fed. Cir. 2009) ..............................................................................30, 31

*Gen. Elec. Co. v. United States,*
247 F.3d 1231 (Fed. Cir. 2001), *aff'd in relevant part on reh'g*, 273 F.3d 1070
(Fed. Cir. 2001) ............................................................................................................15

*Intercontinental Fibers, Inc. v. United States,*
64 CCPA 31, C.A.D. 1179, 545 F. 2d 744 (1976) ......................................................28

*ITT Thompson Indus., Inc. v. United States,*
537 F. Supp. 1272 (Ct. Int'l Trade 1982), *aff'd*, 703 F.2d 585 (Fed. Cir. 1982) .........14, 16, 26

*Lenkurt Electric Co. v. United States,*
63 Cust. Ct. 463 (1969) ...............................................................................................15

*Lynteq, Inc. v. United States,*
976 F.3d 693 (Fed. Cir. 1992) .....................................................................................21

*Medline Industries Inc. v United States,*
    62 F.3d 1407 (Fed. Cir. 1995)........................................................................25

*Millennium Lumber Dist., Ltd. v. United States,*
    558 F.3d 1326 (Fed. Cir. 2009)......................................................................13

*Nippon Kogaku (USA) Inc. v. United States,*
    69 CCPA 89, 673 F.2d 380 (1982), *reh'g denied* (1982) ..........................14

*Orlando Food Corp. v. United States,*
    140 F.3d 1437 (Fed. Cir. 1998)......................................................................30

*Photonetics, Inc. v. United States,*
    33 CIT 1549, 659 F. Supp. 2d 1317 (2009) ..........................11, 29, 30, 31

*Pomeroy Collection, Ltd. v. United States,*
    559 F. Supp. 2d 1374 (Ct. lnt'l Trade 2008)................................................33

*Toy Biz v. United States,*
    27 CIT 11, 248 F. Supp. 2d 1234 (2003) ......................................................12

*United States v. Mannesmann-Meer, Inc.,*
    54 CCPA 24, C.A.D. 897 (1966) ....................................................................15

*United States v. Siemens Am.,*
    68 CCPA 62, 653 F.2d 471 (1981) ..........................................................29, 30

## Statutes

19 U.S.C. § 1202................................................................................................1

19 U.S.C. § 1515..............................................................................................11

28 U.S.C. § 1581(a)..........................................................................................11

28 U.S.C. § 2639(a)(1)......................................................................................11

## Other Authorities

*Apparatus*, The Merriam-Webster Dictionary, 11th ed. (2019) ....................14

*Base*, Merriam-Webster's Collegiate Dictionary, 11th ed. (2020) ................17

Customs Ruling HQ 088465 (Feb. 22, 1991) ..........................15, 16, 18, 26

Customs Ruling HQ H307905 (Aug. 17, 2020) ..........................................27

Customs Ruling HQ W968353 (Aug. 1, 2007)..............................................33

Customs Ruling PD B88392 (Aug. 21, 1997) ..........................................................................26, 28

H.R. Rep. No. 100-576 (1988), reprinted in 1988 U.S.C.C.A.N. 1547........................................21

**INTRODUCTION**

This case concerns the tariff classification of Tritium Sight Inserts (or the "subject merchandise") under the Harmonized Tariff Schedule of the United States ("HTSUS"). As imported by Trijicon, Tritium Sight Inserts are very small self-contained devices, which illuminate the aiming points in Trijicon's firearm sights and riflescopes.

U.S. Customs and Border Protection ("Customs" or "CBP") classified the subject merchandise upon liquidation under Subheading 9405.50.40, HTSUS, which provides for "Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included: Nonelectrical lamps and lighting fittings: Other: Other."

Trijicon believes there to be no material factual dispute regarding the physical characteristics of its products, the underlying entries at issue in this litigation, the timeliness of Trijicon's protest of those entries or its commencement of this litigation, or the Court's jurisdiction over Trijicon's claims. The only dispute between Trijicon and the Government is regarding how Trijicon's products at issue are properly classified under the HTSUS. Accordingly Trijicon moves for summary judgment that its Tritium Sight Inserts are classifiable under Subheading 9022.29.80, HTSUS, as an apparatus based on the use of beta radiation.

**RELEVANT PORTIONS OF THE TARIFF SCHEDULE[1]**

**1. Subheading Under Which the Merchandise Was Assessed**

**9405**   Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and

---

[1] The HTSUS is codified at 19 U.S.C. § 1202. All citations herein are to the 2019 edition of the HTSUS, and to the 2019 edition of the World Customs Organization's Explanatory Notes to the Harmonized Commodity Description and Coding System.

1

the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included:

9405.50          Non-electrical lamps and lighting fittings:

                        Other:

9405.50.40                    Other.

This subheading has an applicable duty rate of 6%.

**2.  Subheading Under Which the Merchandise is Properly Dutiable**

**9022**          Apparatus based on the use of X-rays or of alpha, beta or gamma radiations, whether or not for medical, surgical, dental or veterinary uses, including radiography or radiotherapy apparatus, X-ray tubes and other X-ray generators, high tension generators, control panels and desks, screens, examination or treatment tables, chairs and the like; parts and accessories thereof:

                        Apparatus based on the use of alpha, beta or gamma radiations, whether or not for medical, surgical, dental or veterinary uses, including radiography or radiotherapy apparatus:

9022.29          For other uses:

9022.29.80          Other

This subheading has an applicable duty rate of 0%.

**QUESTION PRESENTED FOR DECISION**

1. Whether the Tritium Sight Inserts should be classified as an apparatus based on the use of beta radiation in Heading 9022, HTSUS.

**STATEMENT OF FACTS**

I.          PROCEDURAL HISTORY

Six discrete shipments of Tritium Sight Inserts, which were ultimately consolidated into a single protested Reconciliation Entry, are at issue in this litigation. The Tritium Sight Inserts are manufactured in Switzerland by a third party, and imported by Trijicon. Plaintiff's Statement of Undisputed Material Facts, ¶ 27 ("SUMF"). Reconciliation Entry No. 637-0639215-4, filed with

2

the port of Laredo, Texas on October 27, 2020 and reflected in the Automated Commercial

Environment system as entered on November 10, 2020, contains the merchandise that is the

subject of this action. SUMF ¶¶ 2–3. Reconciliation Entry No. 637-0639215-4 is reflected.

SUMF ¶ 3. Reconciliation Entry No. 637-0639215-4 covered six original entries of the subject

merchandise made between January and March 2019 ( KB500761311, KB500763119,

KB500764935, KB500765734, KB500766351, and KB500767136.). SUMF ¶ 4. Trijicon is the

importer of record of the subject merchandise, and at the time of the original entries, {███████

███████████████████████████████████████████████████} SUMF ¶ 5–6.[2]

{███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████} also included a request for

internal advice, asking CBP to provide its view on classification of the Tritium Sight Inserts.

SUMF ¶ 7. {████████████████████████████████████████████████

████████████████████████████████}

       In response to Trijicon's request for an internal advice ruling, CBP issued HQ H307905

on August 17, 2020, concluding that the subject merchandise is classified under Subheading

9405.50.40, HTSUS. SUMF ¶ 7. Reconciliation entry no. 637-0639215-4 liquidated on April 30,

2021. SUMF ¶ 8. Trijicon timely protested the classification of the subject merchandise in

protest no. 2304-21-102337 on October 17, 2021. SUMF ¶ 9. CBP denied Trijicon's protest on

October 27, 2021. SUMF ¶ 10. CBP's protest denial provides no independent classification

---

[2] Neither Trijicon nor CBP contend that classification under {████████████████} is correct; the
disagreement over what the correct classification actually is ultimately led to this litigation, as
detailed below.

**NONCONFIDENTIAL - CONFIDENTIAL INFORMATION REDACTED**

analysis; instead it incorporates the reasoning of HQ H307905 by reference.[3] H307905 thus sets forth the entirety of CBP's analysis regarding the classification of the Tritium Sight Inserts at issue. *See* Ex. 04, Deposition Testimony of Patricia Fogle 57:4–5 (July 21, 2023) ("Fogle Dep.") ("The position of the agency is contained within the HQ Ruling"); SUMF ¶ 10.

Trijicon timely commenced this litigation via the filing of a summons on February 9, 2022 and complaint on May 31, 2022. Summons, ECF No. 1; Compl., ECF No. 9. The parties subsequently engaged in fact discovery, involving an exchange of written discovery responses and the production of documents. The Government deposed Trijicon's corporate designee, Mr. Paul Koesler, on June 7, 2023. Trijicon deposed the CBP's designee, Ms. Patricia Fogle, on July 21, 2023. Discovery closed on July 21, 2023, and pursuant to the Second Amended Scheduling Order, ECF No. 24 (June 15, 2023), Trijicon timely filed this Motion for Summary Judgment on September 15, 2023.

II.    PRODUCTS AT ISSUE

The six original entries of Trijicon's Tritium Sight Inserts at issue in this litigation involved 11 different Trijicon product models.[4] SUMF ¶ 12. The tritium sight inserts themselves are very small self-contained devices {███████████████████████████████████ █████████████████████████████████}. SUMF ¶ 33. At the time of importation each of the 11 models contains *at least* a gaseous tritium light source (or "GTLS"), which is a

---

[3] While CBP's protest denial suggests that Trijicon's protest was also untimely as to a subset of the underlying entries, CBP ultimately agreed in discovery that Trijicon's protest was in fact timely as to all six of the underlying entries. SUMF ¶ 11.

[4] The 11 imported models of Trijicon's products at issue are LAT4367-1, LAT4582, LAT4674, LAT4733, LAT4734-IV, LAT4962, LAT4963, LAT4963/II-Y, LAT4963/III-O, LAT4964, and LAT5571. The distinctions between these models are detailed *infra*. Both CBP and Trijicon agree that all 11 models should be classified under a single HTSUS subheading (but disagree as to which subheading that should be). Fogle Dep. 146:21–25.

4

hermetically sealed glass capsule coated internally with zinc sulfide (or phosphor) and filled with tritium gas. SUMF ¶ 12; SUMF ¶¶ 17–18. Tritium is a radioactive isotope of hydrogen with a half-life of about 12 years. *See, e.g.,* Ex. 06, Deposition Testimony of Paul Koesler 97:13–21, 98:5–8 (June 7, 2023) ("Koesler Dep."); SUMF ¶ 15. Tritium, which is a colorless and odorless gas, contains one proton and two neutrons. SUMF ¶ 14. Tritium is not a "stable element," and thus decays into another element. Koesler Dep. 97:13–21; SUMF ¶ 16. In this case, tritium decays by emitting a beta particle. SUMF ¶ 16. When the tritium gas emits the beta particle, that beta particle interacts with the zinc sulfide coating in the interior of the glass capillary. Koesler Dep. 97:13–21; SUMF ¶ 19. The beta particle "energizes" or "excites" the zinc sulfide, resulting in a self-luminous glow. Koesler Dep. 85:15–17; SUMF ¶¶ 20–21.

The subject merchandise is manufactured in Switzerland by a third party, mb-microtec AG ("mb-microtec"). SUMF ¶ 27. { ████████████████████████████████████████ ████████████████████████ } SUMF ¶ 32. As imported by Trijicon, the tritium sight insert assemblies come in two primary configurations: cylindrical tritium sight inserts used in iron sights; and rectangular tritium sight inserts used in riflescopes. SUMF ¶ 36. In each instance, the subject merchandise includes at least the glass capillary,[5] the interior phosphor coating, and the tritium gas. SUMF ¶ 37. The glass enclosures in both the cylindrical and rectangular implementations are specifically configured to ensure that the phosphor is not only illuminated, but also visible through certain portions of the enclosure designed to facilitate aiming. SUMF ¶ 65.

---

[5] Trijicon uses the terms "capillary" and "ampule" to refer to the glass component in the subject merchandise. Trijicon does not believe "capillary" and "ampule" to be limited to one cross-sectional shape, and thus applies these terms to both the cylindrical and rectangular configurations.

**NONCONFIDENTIAL - CONFIDENTIAL INFORMATION REDACTED**

In the typical cylindrical models, the subject merchandise consist of a cylindrical GTLS (as discussed above, a hermetically sealed cylindrical glass capsule containing gaseous tritium with an interior zinc sulfide coating), which is further inserted into an aluminum housing (or sleeve) metal container with adhesive, sealed with a sapphire crystal cap.[6] SUMF ¶ 41. As explained above, the tritium gas inside the insert emits beta radiation, which ensures the constant (and colorful) activation of the phosphor surrounding it. SUMF ¶ 43. These materials are contained within a sealed glass capillary enclosure, which remains visible through the sapphire crystal cap affixed to the aluminum sleeve. SUMF ¶ 43. After importation, Trijicon's cylindrical Tritium Sight Inserts are most commonly used as a low light aiming aid (through their illumination of the aiming points) within its iron sights, which are in turn used on firearms (e.g. open sights on hand guns). SUMF ¶ 44.

Trijicon's typical iron sights are composed of two iron blocks: (i) a front sight comprising a single elevated post mounted at the center of the firing end of the barrel, and (ii) a rear sight shaped in a "U" and mounted toward the rear of the barrel. SUMF ¶ 48. When aiming, the shooter aligns the two blocks such that the front sight's post appears at the center of the rear sight's "U." SUMF ¶ 49. Conventional iron sights are readily usable during daylight conditions, as one can see both the front and rear sights, particularly if they are painted with white or colored dots. SUMF ¶ 50. In contrast, aligning the front and rear sights can be difficult or impossible at

---

[6] The LAT4582, LAT4674, LAT4962, LAT4963, LAT4963/II-Y, LAT4963/III-O, and LAT4964 consist of cylindrical GTLS (a hermetically sealed cylindrical glass capsule containing gaseous tritium with an interior zinc sulfide coating), inserted into an aluminum housing (or sleeve) metal container, sealed with a crystal cap. One imported model, the LAT4367-1, consists of a cylindrical GTLS (hermetically sealed cylindrical glass capsule containing gaseous tritium with an interior zinc sulfide coating) without additional external components.

night or in low-light conditions. SUMF ¶ 51. Trijicon's sights solve this problem via use of the tritium inserts at issue. SUMF ¶ 51.

At its heart, the imported apparatus features gaseous tritium, stored within a phosphor-coated,[7] sealed glass tube, as described above. SUMF ¶ 13. The tritium emits beta radiation, which in turn activates the phosphor and permits it to be visible in the dark, even in the absence of an external power source. SUMF ¶¶ 19–23. The typical cylindrical inserts described above have additional components, namely the glowing glass capillaries are further encased in a metal housing. SUMF ¶ 41. A crystal cap (also referred to as a "sapphire lens") abuts the end of the tube, and protects the glass tube. SUMF ¶ 41. It is made of crystal to permit the glowing beta-activated phosphor within the housing to remain visible to the user of the firearm. SUMF ¶ 42. The crystal cap acts as a window for the user, and is not convex or concave. SUMF ¶ 45. The glowing phosphor is visible to the user of the firearm as a relatively dim dot (often green or blue, but also other colors, depending on the phosphor used). SUMF ¶ 46. In low light conditions the phosphor appears integral with the sight, and takes the place of the painted dot visible during daylight. SUMF ¶ 47. A labeled image of these components is immediately below:



---

[7] The luminescent powder coating is referred to in the industry as either a "zinc sulfide" or "phosphor" coating. These terms are used interchangeably and refer to an identical component substance.

Trijicon's iron sights are assembled in the United States. SUMF ¶ 48. They incorporate the imported tritium sight inserts at the center of the front sight post and at two points along the "U" of the rear sight, with the crystal cap visible to the person looking down the sight of the firearm. SUMF ¶ 48–49, 52. The yellow and green tritium sight inserts are warranted to glow for twelve years from date of original manufacture, without need for further intervention; orange tritium sight inserts are warranted for five years. SUMF ¶¶ 54–55. If the tritium sight inserts were to be removed from the iron sights, the iron sights would still function for their intended purpose of aiming the firearm during daylight, but the user would lose the additional advantage provided by the imported tritium sight inserts of being able to aim effectively in low light situations. SUMF ¶ 53.

As imported, the rectangular tritium sight insert used in riflescopes features core GTLS components that are functionally the same as the cylindrical version used in iron sights.[8] SUMF ¶ 58. The rectangular insert comprises the tritium gas, a sealed rectangular glass ampule, and interior phosphor coating. SUMF ¶ 59. From a radioactivity perspective these components interact in the same manner as described above with respect to the cylindrical insert: the tritium emits beta radiation, which activates the phosphor coating inside the glass ampule. SUMF ¶ 60. In other respects, the rectangular tritium sight insert differs somewhat from the cylindrical insert. First, and most obviously, the shapes of the inserts are distinct. The flat surface of the rectangular insert enables it to be affixed with a silicone adhesive to a smooth surface within the interior of the riflescope assembly (vs. the cylindrical assembly, which must be inserted into a round chamber within an iron sight block, and a "plug" of the same silicone adhesive fills the non-

---

[8] The LAT4733, LAT4734-IV, and LAT5571 consist of rectangular GTLS (a hermetically sealed rectangular glass capsule containing gaseous tritium with an interior zinc sulfide coating), painted white on the outer faces of all but one primary surface.

viewing end of the sleeve). SUMF ¶ 61. Second, the rectangular tritium sight insert is typically further processed prior to importation with an additional manufacturing step not present in the cylindrical insert—white paint is added as a component to certain exterior surfaces. SUMF ¶ 62. Specifically, all but one primary surfaces are painted white, with only one glass surface left exposed. SUMF ¶ 62. The white paint ultimately helps ensure that the sight aid is sufficiently visible in the riflescope's reticle pattern. SUMF ¶ 63. A labeled image of these components is immediately below:



The expected lifespan of the rectangular tritium sight insert used in riflescopes is longer than that of the cylindrical insert. The rectangular insert is warranted to glow for fifteen years from date of original manufacture, without need for further intervention. SUMF ¶ 64.

## STATEMENT OF THE CASE

On August 17, 2020, CBP issued internal advice ruling HQ H307905 ("IA Ruling") directing that Tritium Sight Inserts should be classified in Heading 9405 as "Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included." SUMF ¶ 7.

In a single footnote, CBP summarily rejected Trijicon's classification as "apparatus based on the use of beta radiation" in Heading 9022. Ex. 02, HQ H307905 Internal Advice Ruling (Aug. 17, 2020), at 7 n.6. On April 30, 2021 CBP liquidated reconciliation entry no. 637-0639215-4 in accordance with the IA Ruling. SUMF ¶ 8.

On October 17, 2021 Trijicon filed protest no. 2304-21-102337, contending that the Tritium Sight Inserts should have been classified in 9022, because, in their condition as imported, they satisfy the text of that heading, and because under General Rule of Interpretation ("GRI") 3, it is the more specific heading. SUMF ¶ 9.

CBP denied this protest on October 27, 2021 relying on HQ H307905 and a statement that certain entries were untimely. SUMF ¶ 10. CBP has since then confirmed that there is no dispute as to the timeliness of the reconciliation entry or the resulting protest. Fogle Dep. 47:1–5; SUMF ¶ 11. On February 9, 2022 Trijicon filed a summons in this Court, and on May 31, 2022 filed its complaint. Summons, ECF No. 1; Compl., ECF No. 9.

## SUMMARY OF ARGUMENT

This case is ripe for summary judgment, as there are no material facts in dispute and the dispositive issues are legal issues.

Classification of the Tritium Sight Inserts in 9022 is proper under GRI 1 because each model of the subject merchandise is an apparatus based on the use of beta radiation in that the models consist of a set of materials used to illuminate aiming points in Trijicon's products and the use of beta radiation is central to the subject merchandise's ability to function as an aiming aid.

The Tritium Sight Inserts are not lamps under 9405 because the text of Heading 9405 proves that only lamps "not elsewhere specified or included" in any other provision of the HTSUS can be properly classified under the heading.

The Tritium Sight Inserts are not lamps under 9405 because 9022 is the more specific classification under GRI 3.

## JURISDICTION

Trijicon brings this action pursuant to 19 U.S.C. § 1515. The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a). CBP denied Trijicon's protest on October 27, 2021. Trijicon timely filed the summons in this action on February 9, 2022, after having paid the liquidated duties.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. U.S.C.I.T.R. 56(a).

When there is a dispute over classification, the Court first undertakes the legal question to "construe the relevant classification headings" and then undertakes the factual question to "determine under which of the properly construed tariff terms the merchandise at issue falls." *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998). "[W]hen the nature of the merchandise is undisputed, . . . the classification issue collapses entirely into a question of law." *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006). "[W]hile a presumption of correctness attaches to Customs' classifications pursuant to 28 U.S.C. § 2639(a)(1), 'this presumption "is irrelevant where there is no factual dispute between the parties."'" *Photonetics, Inc. v. United States*, 33 CIT 1549, 1553–54, 659 F. Supp. 2d 1317, 1321 (2009) (quoting *Bousa Inc. v. United States*, 25 CIT 386, 387 (2001)).

Ambiguity in a classification is resolved "in favor of the importer, since the intention of Congress to impose a higher duty should be expressed in clear and unambiguous language." *Am. Net & Twine Co. v. Worthington*, 141 U.S. 468, 474 (1891); *Anhydrides & Chems., Inc. v. United States*, 130 F.3d 1481, 1485 (Fed. Cir. 1997) ("[R]evenue statutes, which are neither remedial

nor in implementation of public policy, are in doubtful cases construed in favor of the citizen, lest burdens be imposed beyond the statutory revenue-producing purpose.").

The only issue presented here is an issue of law pertaining to the proper classification of the subject Tritium Sight Inserts based on the interpretation of Headings 9022 and 9405, as applied to the facts in this case. Accordingly, because there are no disputed material facts in this case, no deference is due to Customs' classification determination. Pursuant to the terms of the relevant GRIs and HTSUS headings, Plaintiff's Tritium Sight Inserts are properly classified as an apparatus based on the use of beta radiation in Heading 9022. Thus, Plaintiff is entitled to summary judgment as a matter of law.

## ARGUMENT

### I.   The Tritium Sight Inserts Are Properly Classified As An Apparatus Based On The Use Of Beta Radiation In Heading 9022 Pursuant to GRI 1

Trijicon respectfully believes that both the cylindrical and rectangular Tritium Sight Inserts should be classified under 9022.29.80, HTSUS, for other "Apparatus based on the use of alpha, beta or gamma radiations, whether or not for medical, surgical, dental or veterinary uses, including radiography or radiotherapy apparatus." Defendant has conceded that the shape of the insert does not affect its classification. Fogle Dep. 146:14–18; SUMF ¶ 66.

The classification of goods under the HTSUS is governed by the principles set forth in the GRIs and, in the absence of special language or context which requires otherwise, by the Additional U.S. Rules of Interpretation. *Toy Biz v. United States*, 27 CIT 11, 15, 248 F. Supp. 2d 1234, 1242 (2003). The GRIs are applied in numerical order starting with GRI 1. *CamelBak Prod., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011).

"Under GRI 1, the court must determine the appropriate classification 'according to the terms of the headings and any relative section or chapter notes,'" with all terms "construed

according to their common commercial meanings." *Millennium Lumber Dist., Ltd. v. United States*, 558 F.3d 1326, 1328–29 (Fed. Cir. 2009) (quoting GRI 1). Where there may be a dispute as to which of two or more tariff classifications may apply to particular merchandise, the Court should analyze the problem first by construing the relevant classification headings. *Bausch & Lomb*, 148 F.3d at 1365. Pursuant to GRI 1, if a heading specifically describes the subject Tritium Sight Inserts, they should be classified under that heading. *See CamelBak*, 649 F.3d at 1364.

Even if CBP's classification determinations were entitled to deference, CBP's rejection of classification under 9022 affords virtually no analysis to defer to. The sum total of CBP's consideration of 9022 in HQ H307905 was relegated to a footnote:

> Counsel maintains that the tritium sight inserts could also be classified in heading 9022, HTSUS, which provides for, in part, other apparatus based on the use of beta for other uses. However, 9022, HTSUS, does not describe the products entirely because it is the glowing colored phosphor that provides visibility to the user of the firearm as an alignment aide at night or in low-light conditions. This is the whole purpose of installing the sight inserts in the iron sight block and riflescope assembly. As such, the tritium sight inserts are properly classified in heading 9405.50.40, HTSUS, as lamps.[9]

This conclusory statement ignores the question of whether Trijicon's products at issue are classifiable under Heading 9022 under GRI 1, and instead focuses on the extent to which they are classifiable under Heading 9405. Based on a review of the terms of the tariff headings at issue, the subject Tritium Sight Inserts are properly classified under Heading 9022 using a GRI 1 analysis.[10]

---

[9] Ex. 02, HQ H307905 Internal Advice Ruling (Aug. 17, 2020), at 7 n.6.

[10] HQ H307905 primarily focused on whether the Tritium Sight Inserts are classifiable as lamps under Heading 9405, or as parts of rifle scopes under Heading 9013. In its decision, CBP rightly rejected classification of the Tritium Sight Inserts under 9013. During discovery, CBP confirmed that its position remains that Trijicon's Sight Inserts are properly classified under Heading 9405, not 9013. *See* Fogle Dep. 129:19–21 ("[M]y opinion has not changed . . . that the subject merchandise is not under heading 9013."). Trijicon's view remains that the Tritium Sight Inserts

A.     **The Tritium Sight Inserts Are An "Apparatus" Within The Meaning Of Heading 9022**

Trijicon believes the Tritium Sight Inserts, as imported, meet the definition of an "apparatus." The HTSUS does not define the term "apparatus." Reference to dictionary definitions is appropriate when a tariff term is not defined in the HTSUS or in the Explanatory Notes to the Harmonized Commodity Description and Coding System (the "Explanatory Notes" or "ENs") developed by the World Customs Organization ("WCO"). *Nippon Kogaku (USA) Inc. v. United States*, 69 CCPA 89, 92–93, 673 F.2d 380, 382 (1982), *reh'g denied* (1982). *The Merriam-Webster Dictionary* defines "apparatus" as "1: a set of materials or equipment for a particular use" or "2: a complex machine or device."[11] The Court of Appeals has defined an "apparatus" as a "group of devices or a collection or set of materials, instruments or appliances to be used for a particular purpose or a given end." *ITT Thompson Indus., Inc. v. United States*, 537 F. Supp. 1272, 1277–78 (Ct. Int'l Trade 1982), *aff'd*, 703 F.2d 585 (Fed. Cir. 1982); *see also Gen. Elec. Co. v. United States*, 247 F.3d 1231, 1235 (Fed. Cir. 2001) (finding an item to be a "combination apparatus" where it was comprised of two components that had to "independently perform their nonsubordinate functions if the [item] is to operate properly"), *aff'd in relevant part on reh'g*, 273 F.3d 1070 (Fed. Cir. 2001); *see also Deseret Co., v. United States*, 10 CIT 609, 611 (1986) (stating the "broad definition of apparatus" is "an aggregate of materials

---

are most appropriately classified based on their own characteristics (which would place them either in 9022 in Trijicon's view, or 9405 in CBP's view), rather than as a part of the articles into which they are installed. In the case of the cylindrical inserts used in the iron sights, there is not even a provision for "parts" of iron sights. Even if there were, this classification would be improper because the iron sights would serve their intended purpose as daylight sights whether or not the cavities in them were filled with the sight inserts. Given that the tritium sight inserts have their own available classifications (either under 9022 or 9405), it would be inappropriate to disregard those provisions and classify them as generic parts of either a firearm or scope under 9013. They are properly classified as the discrete articles that they are.

[11] Ex. 17, *Apparatus*, The Merriam-Webster Dictionary, 11th ed. (2019).

intended for a specific use"); *Lenkurt Electric Co. v. United States*, 63 Cust. Ct. 463, 467–68, CD 3937 (1969) (citing to *United States v. Mannesmann-Meer, Inc.*, 54 CCPA 24, C.A.D. 897 (1966) to define an "apparatus" as "a combination of articles and materials which are 'intended, adapted, and necessary for the accomplishment of some purpose'"). Thus, an "apparatus" has been broadly defined as a combination or set of materials which are intended for some purpose or use.

Customs has found that the incorporation of radiation along with other materials resulted in an "apparatus" classified in 9022. In a classification ruling involving a "Gammacell 220 reloaded with Cobalt-60," a protestant argued that the Gammacell 220 product, a research irradiator, was functioning only as a "shipping package" for the cobalt-60, which should be classified under 2844.40.0010, HTSUS, "which provides for elements, isotopes and compounds with cobalt-60 radioactivity only." HQ 088465 (Feb. 22, 1991). CBP, however, reasoned that "Heading 2844 provides for radioactive materials packed in tubes, needles, etc., designed to be used for transportation purposes to ensure safety of radioactive materials. This heading does not provide for apparatus or machinery." *Id.* CBP concluded that the Gammacell 220 was "more than a transporting package" because "[w]ith the cobalt, the Gammacell 220 becomes a machine that performs certain functions; it is a high dose rate research irradiator." *Id.* For the reasons provided in the Gammacell ruling as to cobalt-60, Trijicon's Tritium Sight Inserts are an "apparatus" comprised of tritium and other components. Here, similarly, the Tritium Sight Inserts cannot be reduced to the tritium gas contained therein; rather, the subject merchandise is an "apparatus" that "perfor[ms] certain functions," HQ 088465 (Feb. 22, 1991), and that are comprised of a "set of materials . . . to be used for a particular purpose," *ITT Thompson*, 537 F. Supp at 1277–78.

15

Trijicon's Tritium Sight Inserts are comprised of a "set of materials." In the case of all 11 of the imported models at issue, the subject merchandise include *at least* the glass capillary, the interior phosphor coating, and the tritium gas. SUMF ¶¶ 12–13. In the typical cylindrical models, at the time of importation the subject merchandise also is comprised of the metal sleeve, adhesive, and the crystal or sapphire cap. SUMF ¶ 41. The tritium gas inside the insert emits beta radiation. That radiation ensures the constant (and colorful) activation of the phosphor surrounding it, which is in turn contained within a sealed glass capillary enclosure. SUMF ¶ 43. The glass enclosures in both the cylindrical and rectangular implementations are specifically configured to ensure that the phosphor is not only illuminated, but also visible through certain portions of the enclosure designed to facilitate aiming.[12] SUMF ¶ 65. Therefore, the overall "set

---

[12] While CBP's position is that "the gas and the phosphor react or energize to create light" it has also confirmed that:

> Q: And the gas and the phosphor can only come together to energize light because they're held within a glass container, correct?
>
> A: Yes.
>
> Q: And in the cylindrical inserts the glass container is protected by metal housing and a crystal end cap, right?
>
> A: Yes.
>
> Q: And then the rectangular inserts, there is an outer-paint layer designed to focus the light in the direction of the fiber optic, for purposes of eliminating the red bulb, correct?
>
> A: Yes.
>
> Q: So you would agree that, Trijicon's inserts consist of a set of materials for a particular use, correct?
>
> A: I'm not sure.

Fogle Dep. 137:17–138:5.

of materials" work in concert to use tritium gas to facilitate the aiming of the firearm into which

the riflescopes and iron sights are installed, by creating (and making visible) a specific glowing

aiming point a firearm user can view in low light (either directly or through an optical fiber).

Lastly, in its internal documents, CBP refers to the subject merchandise as an "apparatus." *See*

Ex. 03, U.S. Customs and Border Protection Interoffice Memorandum (Feb. 12, 2020), at 2

("This apparatus features gaseous tritium . . . . A crystal cap abuts the end of the tube and

protects the glass tube within the apparatus.").[13]

### B. The Tritium Sight Inserts Are Based On The Use Of Beta Radiation, Thus Classification In 9022 Is Proper

The Tritium Sight Insert are an apparatus "based on the use of beta radiation" as

9022.29.80, HTSUS, requires. *Merriam-Webster's Collegiate Dictionary* defines "base" as "the

fundamental part of something."[14] Within the Tritium Sight Inserts, it is the tritium (and the beta

radiation it emits) that is central to the function of the apparatus. Tritium is a radioactive isotope

of hydrogen with a half-life of about 12 years. *See, e.g.*, Koesler Dep. 98:5–6; SUMF ¶ 15.

Tritium, which is a colorless and odorless gas, contains one proton and two neutrons. SUMF

¶ 14. Tritium is not a "stable element," and thus decays into another element. Koesler Dep.

97:13–21; SUMF ¶ 16. In this case, tritium decays by emitting a beta particle. When the tritium

gas emits the beta particle, that beta particle interacts with the zinc sulfide coating in the interior

of the glass capillary. Koesler Dep. 97:13–21; SUMF ¶ 19. Mr. Koesler, Trijicon's Director of

Engineering and designated Radiation Safety Officer, who in his tenure at Trijicon has overseen

the engineering department as well as led engineering groups in design and development of new

---

[13] But, CBP's witness noted that with respect to the internal memorandum, she "would quibble with the term apparatus as it's referred to in 9022, since it is our position that the subject merchandise is not considered an apparatus in 9022." Fogle Dep 133:14–17.

[14] Ex. 18, *Base*, Merriam-Webster's Collegiate Dictionary, 11th ed. (2020).

sighting products, confirmed that the beta particle "energizes" or "excites" the zinc sulfide, resulting in a self-luminous glow. Koesler Dep. 85:15–17, 97:13–21; SUMF ¶¶ 20–21. Thus, without the tritium, the phosphor would not be visible in low light conditions and none of the other components would permit the apparatus to serve its intended function. In *Gammacell 220 reloaded with Cobalt-60*, CBP determined that the merchandise, a research irradiator that contained cobalt-60, a synthetic radioactive isotope of cobalt, was an apparatus based on the use of "radioactive materials." HQ 088465 (Feb. 22, 1991). As with the Gammacell 220 product, Trijicon's sight insert is an apparatus that performs certain functions with the beta radiation emitted within the capillary.

Heading 9022 is not restricted to merchandise with a specific end-use. CBP has confirmed that the language of Heading 9022 is neither a principal use provision, nor an actual use provision. Fogle Dep. 124:14–17. The ultimate use of the subject merchandise does not bear on whether it can be classified within Heading 9022. Nor does Heading 9022 provide any minimum measure of radioactivity that a good must meet to be properly classified in the heading.

Because the beta radiation is central to the subject merchandise serving its intended function, the Tritium Sight Inserts are "based on the use of . . . beta . . . radiations," as contemplated by 9022.29.80, HTSUS.

C.   **Chapter 90 Does Not Preclude Classification of The Tritium Sight Inserts in Heading 9022**

The Tritium Sight Inserts are properly classified in 9022 because they are small, contained apparatuses that use beta radiation to excite the phosphor and produce a glow in order to serve as an aiming aid. Classification of the Tritium Sight Inserts is not in any respect precluded by the chapter notes in Chapter 90. The Notes to Chapter 90 lists merchandise that Chapter 90 does not cover, including:

18

(a) Articles of a kind used in machines, appliances or for other technical uses, of vulcanized rubber other than hard rubber (heading 4016), of leather or of composition leather (heading 4205) or of textile material (heading 5911);

(b) Supporting belts or other support articles of textile material, whose intended effect on the organ to be supported or held derives solely from their elasticity (for example, maternity belts, thoracic support bandages, abdominal support bandages, supports for joints or muscles) (section XI);

(c) Refractory goods of heading 6903; ceramic wares for laboratory, chemical or other technical uses, of heading 6909;

(d) Glass mirrors, not optically worked, of heading 7009, or mirrors of base metal or of precious metal, not being optical elements (heading 8306 or chapter 71);

(e) Goods of heading 7007, 7008, 7011, 7014, 7015 or 7017;

(f) Parts of general use, as defined in note 2 to section XV, of base metal (section XV) or similar goods of plastics (chapter 39);

(g) Pumps incorporating measuring devices, of heading 8413; weight-operated counting or checking machinery, or separately entered weights for balances (heading 8423); lifting or handling machinery (headings 8425 to 8428); paper or paperboard cutting machines of all kinds (heading 8441); fittings for adjusting work or tools on machine tools or water-jet cutting machines, of heading 8466, including fittings with optical devices for reading the scale (for example, "optical" dividing heads) but not those which are in themselves essentially optical instruments (for example, alignment telescopes); calculating machines (heading 8470); valves or other appliances of heading 8481, machines and apparatus (including apparatus for the projection or drawing of circuit patterns on sensitized semiconductor materials) of heading 8486;

(h) Searchlights or spotlights of a kind used for cycles or motor vehicles (heading 8512); portable electric lamps of heading 8513; cinematographic sound recording, reproducing or re-recording apparatus (heading 8519); sound-heads (heading 8522); television cameras, digital cameras and video camera recorders (heading 8525); radar apparatus, radio navigational aid apparatus and radio remote control apparatus (heading 8526); connectors for optical fibers, optical fiber bundles and cables (heading 8536); numerical control apparatus (heading 8537); sealed beam lamp units of heading 8539; optical fiber cables of heading 8544;

(ij) Searchlights or spotlights of heading 9405;

(k) Articles of chapter 95;

(l) Monopods, bipods, tripods and similar articles, of heading 9620;

19

(m) Capacity measures, which are to be classified according to their constituent material; or

(n) Spools, reels or similar supports (which are to be classified according to their constituent material, for example, in heading 3923 or section XV).

None of the goods described in Note 1 to Chapter 90 exclude the Tritium Sight Inserts from classification in 9022, HTSUS.[15] The Tritium Sight Inserts consist of *at least* a glass capillary with the inside glass surface coated with zinc sulfide powder and tritium gas hermetically sealed within the volume of the capillary. SUMF ¶¶ 17–18. The zinc sulfide coated capillary provides the self-luminescent glow. SUMF ¶ 21. Depending on the model, different additives may be included with the zinc sulfide to change the color of the glow. SUMF ¶ 22. The tritium gas sealed inside the capillary emits beta radiation which energizes the luminescent powder coating on the inside surface of the glass capillary, producing the glow. SUMF ¶¶ 19–21. These capillaries are either cylindrical or rectangular. SUMF ¶ 36. In the cylindrical models that

---

[15] Further, Note 3 to Chapter 90 states that "[t]he provisions of notes 3 and 4 to section XVI apply also to this chapter." Section XVI, Note 3 states:

> Unless the context otherwise requires, composite machines consisting of two or more machines fitted together to form a whole and other machines designed for the purpose of performing two or more complementary or alternative functions are to be classified as if consisting only of that component or as being that machine which performs the principal function.

Section XVI, Note 4 states:

> Where a machine (including a combination of machines) consists of individual components (whether separate or interconnected by piping, by transmission devices, by electric cables or by other devices) intended to contribute together to a clearly defined function covered by one of the headings in chapter 84 or chapter 85, then the whole falls to be classified in the heading appropriate to that function.

Neither Note 3 or Note 4 to Section XVI apply to the Tritium Sight Inserts because the subject merchandise is not a "composite machine consisting of two or more machines fitted together," nor is a machine intended for a function covered in Chapter 84 or Chapter 85.

are incorporated into iron sights, the components within the glowing glass tube are further encased in a metal housing. A crystal cap abuts the end of the tube, and protects the glass tube. SUMF ¶ 41. It is made of crystal to permit the glowing beta-activated phosphor within the housing to remain visible to the user of the firearm. SUMF ¶ 42. The crystal cap acts as a window for the user, and is not convex or concave. SUMF ¶ 45. The glowing phosphor is visible to the user of the firearm as a relatively dim dot (often green or blue, but also other colors, depending on the phosphor used). SUMF ¶ 46. In low light conditions the phosphor appears integral with the sight, and takes the place of the painted dot visible during daylight. SUMF ¶ 47. The subject merchandise is not excluded from Chapter 90 pursuant to Note 1 because the Tritium Sight Inserts do not comport with any of the exclusions with respect to: ultimate incorporation into other articles, purpose or function, and composition of the merchandise. Indeed, CBP has confirmed this contention, stating, "CBP's position is that the subject merchandise does not fall into Chapter 90 and Heading 9022, primarily based on the beginning language [of the Explanatory Note to Chapter 90] **and not based on the exclusions** [found in Note 1 to Chapter 90]." Fogle Dep. 152:14–17 (emphasis added). For these reasons, Trijicon's Tritium Sight Inserts are appropriately classified in Chapter 90, under Heading 9022.

**D.    WCO Explanatory Note to Chapter 90 Confirms That The Tritium Sight Inserts Are Classified In Heading 9022**

For additional guidance on the scope and meaning of tariff headings and Chapter and Section Notes, the court also may consider the Explanatory Notes. *See Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 n.1 (Fed. Cir. 2013). Although ENs are not binding on the Court's analysis, they are "indicative of proper interpretation" of the tariff schedule. *Lynteq, Inc. v. United States*, 976 F.3d 693, 699 (Fed. Cir. 1992) (quoting H.R. Rep. No. 100-576, at 549 (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 1547, 1582). The EN to Chapter 90

supports the position that the Tritium Sight Inserts should be classified in Chapter 90, and more specifically, in Heading 9022.

The first paragraph of the EN to Chapter 90 addresses the "GENERAL CONTENT AND ARRANGEMENT OF THE CHAPTER." It states:

> This Chapter covers a wide variety of instruments and apparatus which are, as a rule, characterised by their high finish and high precision. Most of them are used mainly for scientific purposes . . . for specialised technical or industrial purposes . . . or for medical purposes.

However, there are exceptions to the characterization provided for above:

> There are certain exceptions to the general rule that the instruments and apparatus of this Chapter are high precision types. For example, the Chapter also covers ordinary goggles (heading 90.04), simple magnifying glasses and non-magnifying periscopes (heading 90.13), divided scales and school rules (heading 90.17) and fancy hygrometers, irrespective of their accuracy (heading 90.25).

The EN to Chapter 90 goes on to state that "Except for certain exclusions referred to in Note 1 to this Chapter . . . the instruments, apparatus and parts thereof falling in this Chapter may be of any material."[16]

Trijicon's Tritium Sight Inserts are characterized by their "high precision" as described in the EN to Chapter 90. The Tritium Sight Inserts are designed to harness beta radiation within very small, precisely crafted glass ampules, which are internally coated with specialized phosphors that are activated by the beta radiation emitted by the tritium and in turn emit light radiation of desired color temperatures in a defined direction to maximize the glow and therefore maximize the product's function of providing users with a glowing self-contained long-life

---

[16] Such exclusions are detailed in Section I.D., *supra*. As stated above, Trijicon's Tritium Sight Inserts do not fall within the scope of any of the exclusions in Note 1 to Chapter 90.

alignment aide. SUMF ¶¶ 13, 20–23. 

} Ex. 11, mb-microtec AG Trigalight Presentation (July 3, 2011), at 11; SUMF ¶ 28.

While CBP contends that Trijicon's products are "not considered to be high finish or high precision," CBP agreed that:



Fogle Dep. 148:21–149:9.

Even though the Tritium Sight Inserts are not used for scientific, industrial, or medical purposes, this EN recognizes that apparatuses under this Chapter are not always used for scientific purposes by using the phrase "most of them," which indicates that merchandise with uses outside of the enumerated industries can also fall within Chapter 90.

NONCONFIDENTIAL - CONFIDENTIAL INFORMATION REDACTED

Even if this Court finds that the Tritium Sight Inserts are not characterized by their "high precision," this finding would not preclude classification in 9022. The EN states that there are exceptions to the rule that apparatus of this chapter are high precision types, listing examples including "ordinary goggles" and "non-magnifying periscopes." *See also* Fogle Dep. 151:8–11. Trijicon therefore considers that the sight inserts at issue are high precision apparatus under the ENs to Chapter 90, but notes that the ENs do not require that all apparatus classifiable under Chapter 90 be high precision as it allows for exceptions without limitation.

### E.   WCO Explanatory Note 9022 Does Not Preclude Classifying The Tritium Sight Inserts In Heading 9022

The EN to Heading 9022 is similarly not preclusive to classification of the subject merchandise under 9022. The EN for 9022 states:

> Alpha, beta or gamma radiations emanate from a radioactive substance with the property of emitting radiations by spontaneous transformation of its atoms. This radioactive substance is placed in a container, normally of steel coated with lead (bomb), which has an aperture designed to let the radiations pass in one direction only. Gamma radiations can be used for much the same purpose as X-rays.

The Tritium Sight Inserts contain tritium gas, which is contained within the glass ampule. Tritium is a radioactive substance that emits beta radiation. SUMF ¶¶ 13, 15–16. Thus the Tritium Sight Inserts satisfy the first sentence in the EN. The EN goes on to state that the radioactive substance is within a container that is "normally of steel coated with lead (bomb), which has an aperture designed to let the radiations pass in one direction only." While the ampule in the Tritium Sight Inserts is not made of steel coated with lead with an aperture to let the beta radiation pass in one direction, "normally" is an illustrative term. *See* Fogle Dep. 142:11–14 ("Q: Normally is a word that implies that this is an illustrative type of container, right? It does not require it to be steel, does it? A: No."). In *Medline Industries Inc. v United*

24

*States*,[17] the Court of Appeals indicated that use of "usually" indicated a broad reading of the merchandise. In that case, the Court of Appeals declined to narrow the term "bed linen" to only those articles that can be found on all beds. The Court of Appeals pointed to the EN for the relevant heading which stated that the "articles are usually made of cotton or flax, but sometimes also of hemp . . ." and stated that the definition of bed linen included at least those of "linen, cotton or other fabric articles for a bed." 62 F.3d 1407, 1409 (Fed. Cir. 1995). Similar to *Medline*'s use of "usually," the use of "normally of steel coated with lead (bomb)" should not be read as a requirement that only merchandise that incorporates a container of steel coated with lead can be properly classified under Heading 9022.

The EN goes on to provide examples of four types of merchandise that "may" fall within this classification: therapy apparatus, apparatus for radiological examinations, apparatus having a measuring instrument, and fire alarms. However, these are merely examples, and the use of "may" indicates that it is not comprehensive, and thus should not be read to limit the application of the heading to only the devices listed in the EN.[18]

### F. Because the Tritium Sight Inserts Are Classifiable Under Heading 9022, They Are Precluded from Classification Under Heading 9405

As explained above, Trijicon's imported Tritium Sight Inserts are classifiable under Heading 9022, and specifically in 9022.29.80, HTSUS, which provides for other "Apparatus based on the use of alpha, beta or gamma radiations, whether or not for medical, surgical, dental

---

[17] 62 F.3d 1407 (Fed. Cir. 1995).

[18] The EN also excludes instruments "which are not designed to incorporate a radioactive source and which merely measure or detect radiation even when such instruments are calibrated in arbitrary terms." The Tritium Sight Inserts are not designed to measure or detect radiation, rather they are designed to incorporate a radioactive source—tritium—and harness the beta radiation emitted by the tritium gas so that the phosphor will produce a glow and serve as a long term alignment aid without need for any external power.

or veterinary uses, including radiography or radiotherapy apparatus: For other uses: Other."

Accordingly, under GRI 1, the insert cannot be classified under Heading 9405.

The Tritium Sight Insert is an apparatus "based on the use of . . . beta . . . radiation[]."

Without the tritium, which emits beta radiation and activates the phosphor to produce a glowing

effect, the Tritium Sight Inserts would serve no function, as the phosphor could not act as an

aiming alignment aid. SUMF ¶¶ 19, 53. The insert is thus based on the use of beta radiation.

Additionally, the insert constitutes an "apparatus." Here, the Tritium Sight Insert cannot be

reduced to the tritium gas contained therein, but instead is comprised of a "set of materials . . . to

be used for a particular purpose." *ITT Thompson*, 537 F. Supp at 1277–78; *see also* Customs

Ruling HQ 088465 (Feb. 22, 1991) (finding that a research irradiator constituted "more than a

transporting package" because "[w]ith the cobalt, [the irradiator] becomes a machine that

performs certain functions," and that therefore a classification which did not "provide for

apparatus or machinery" was improper).

Therefore, the Tritium Sight Insert is both an apparatus, and based on the use of beta

radiation, as Heading 9022, HTSUS, requires. Moreover, the subheading text of 9022.29.80,

HTSUS, does not contain any restriction by end-use and in fact expressly states that a good can

be classified thereunder "whether or not" it is "for medical, surgical, dental or veterinary uses."[19]

As such, the Tritium Sight Insert's end-use does not thereby preclude it from proper

classification under 9022.29.80, HTSUS.

---

[19] For rulings classifying goods under 9022.29.80 representing a range of end-uses, see Customs
Ruling PD B88392 (Aug. 21, 1997) (classifying various instruments analyzing and measuring
ash, coal, and cement, using gamma radiation); Customs Ruling HQ 088465 (Feb. 22, 1991)
(classifying instrument "used in a wide range of studies including medical product sterilization,
biological and genetic effects, food preservation, growth stimulation, chemistry pollution, etc.").

As noted above, in the IA Ruling, CBP rejected classification under Heading 9022 in a single cursory footnote, stating that "9022, HTSUS, does not describe the products entirely because it is the glowing colored phosphor that provides visibility to the user of the firearm as an alignment aide at night or in low-light conditions. This is the whole purpose of installing the sight inserts in the iron sight block and riflescope assembly." In so stating, CBP premised its rejection of 9022 on two legally unsupported assertions, namely that (i) a heading must "describe the products entirely" and (ii) classification is governed by "the whole purpose" of installing the Tritium Sight Inserts. Customs Ruling HQ H307905 (Aug. 17, 2020) at 7 n.6. CBP provided no authority for either the proposition that the subheading must capture "entirely" a good's characteristics or that classification is governed by a good's "whole purpose." The first proposition is difficult to square with countless residual subheadings providing for "other" goods or items "not elsewhere specified or indicated" (including the classification that the IA Ruling concluded is applicable). Likewise, as to the second proposition, the Court of Appeals has indicated that although courts must classify under a subheading when a good "is described in whole" under that "single" subheading, where this requirement is not satisfied, courts must proceed to apply the GRIs. *CamelBak*, 649 F.3d at 1364. This implies that the correct subheading might not necessarily describe a good "in whole" or "entirely," and, by the same token, there can be other instances where multiple subheadings describe the good "as a whole." *CamelBak*, 649 F.3d at 1365 ("We apply GRI 3(a) when the goods, as a whole, are prima facie classifiable under two or more headings or subheadings to determine which heading provides the most specific description of the goods."). Further, GRI 2(b) provides in part that "[a]ny reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance." That Heading 9022 only specifically mentions the tritium

gas (and the beta radiation it releases) among the components of the Tritium Sight Inserts does not render that heading inapplicable to an apparatus that contains tritium and other constituent parts, such as the phosphor coating. Indeed, CBP has classified other kinds of apparatus under 9022.29.80, despite the fact that the subheading neither captures "entirely" the goods' characteristics nor invokes the goods' "whole purpose." For example, CBP classified a "GEOSCAN Through Belt Analyser" under 9022.29.80, despite the fact that the ruling described the machine as one "which uses Prompt Gamma Neutron Activation Analysis (PGNAA) to perform continuous on-line elemental analysis of bulk cement material sliding through it on a standard conveyor belt." Customs Ruling PD B88392 (Aug. 21, 1997).

The predecessor of Heading 9022 was TSUS item number 709.66, which covered "apparatus based on the use of radiations from radioactive substances, and parts thereof." The Court of Customs and Patent Appeals, when analyzing the phrase "based on" in item number 709.66 stated:

> It is axiomatic that a statute must be construed to carry out legislative intent. To determine that intent, one must first look to the statutory language itself. See, *Intercontinental Fibers, Inc. v. United States*, 64 CCPA 31, C.A.D. 1179, 545 F. 2d 744 (1976). Doing so, we agree with the court below that the plain meaning of the "based on" language of item 709.66 evinces Congressional intent to limit the provision to goods in which the use of radiation is a fundamental and essential constituent. The use of radiation must be an indispensable requisite for the apparatus which, however, does not mean that the apparatus must be based solely on the use of radiation.

*United States v. Siemens Am.*, 68 CCPA 62, 68, 653 F.2d 471, 476 (1981). As discussed at length above, the use of beta radiation is an "indispensable requisite" for the Tritium Sight Inserts. Without the beta radiation, there would be nothing to excite the phosphor and produce a glow to allow the Tritium Sight Insert to function as a low-light aiming aid through its illumination of the aiming points. SUMF ¶¶ 19–21. As the Court wrote in *Siemens*, the fact that

other materials are needed for the Tritium Sight Inserts to function does not preclude the subject

merchandise from being "based on" the use of beta radiation.

## II.   The Tritium Sight Inserts Are Properly Classified As An Apparatus Based On The Use of Beta Radiation Under Heading 9022 Pursuant To GRI 3

Plaintiff contends that this case can be resolved under GRI 1, because the Tritium Sight

Inserts are properly classifiable under Heading 9022 as an apparatus based on the use of beta

radiation, and are not classifiable under Heading 9405 as a "[l]amps and lighting fitting[]."

Assuming, *arguendo*, that the Court were to find the Tritium Sight Inserts to be classifiable

under both Heading 9022 and Heading 9405, the tariff classification of the subject merchandise

would be determined pursuant to GRIs 2–6, applied in numerical order. *See* GRI 1. GRI 2 would

not apply in this case because the Tritium Sight Inserts are not imported in an incomplete or

unfinished state and are not a mixture or combination of materials or substances. *See*

*Photonetics, Inc. v. United States*, 33 CIT 1549, 1568, 659 F. Supp. 2d 1317, 1333 n.16 (2009).

Thus, the tariff classification analysis would turn to GRI 3(a), which states:

> When, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows:
>
> (a) The heading which provides the most specific description shall be preferred to headings providing a more general description.

"Under this so-called rule of relative specificity, we look to the provision with

requirements that are more difficult to satisfy and that describe the article with the greatest

degree of accuracy and certainty." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1441

(Fed. Cir. 1998) (citing *United States v. Siemens Am., Inc.*, 68 CCPA 62, 653 F.2d 471, 477

(1981)). "[W]hen determining which heading is the more specific, and hence the more

appropriate for classification, a court should compare only the language of the headings and not

29

the language of the subheadings." *Orlando Food*, 140 F.3d at 1440. For the reasons discussed below, application of the rule of relative specificity directs classification of the subject merchandise under Heading 9022.

### A.      Heading 9022 Is More Specific Than Heading 9405

The subject Tritium Sight Inserts are properly classified in Heading 9022 because Heading 9022 is contains terms that are more difficult to satisfy, and describes the goods with more accuracy and certainty.

As a preliminary matter, Heading 9405, HTSUS is a general catch-all provision for lamps and lighting fittings, while Heading 9022 provides specifically for apparatuses based on x-rays, alpha, beta, or gamma radiation. As such, Heading 9022 encompasses goods that require more processing and is therefore the more difficult provision to satisfy. *See Orlando Food*, 140 F.3d at 1441 (Fed. Cir. 1998) (finding that Heading 2103, which covers preparations for sauces, is more specific than Heading 2002, which covers prepared and preserved tomatoes, because it requires more processing and is therefore more difficult to satisfy).

By the same token, Heading 9022 describes the Tritium Sight Inserts with the greatest degree of accuracy and certainty. While the Tritium Sight Inserts generate light, they do so specifically through the specialized construction of a multi-component apparatus that is designed to harness and make useful beta radiation. *See Photonetics, Inc. v. United States*, 33 CIT 1549, 1569, 659 F. Supp. 2d 1317, 1333 (2009) ("Courts undertaking the GRI 3(a) comparison 'look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty.'") (quoting *Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1373 (Fed. Cir. 2009)); SUMF ¶¶ 12–21.

In other words, a classification under Heading 9405 as a non-electric lamp encompasses only the insert's glass container which, in part, allows for light. Heading 9022, on the other hand,

encompasses the insert's use of tritium gas and the beta radiation it generates, which is what causes the apparatus to come alive and function as a long-lasting sight insert without need of an external power supply.

While the Tritium Sight Inserts generate light, they do so specifically through the specialized construction of a multi-component apparatus that relies on beta radiation to provide an aiming aid that can be used in the field by soldiers, hunters, and others for years without need for servicing or other external power. *See Photonetics, Inc. v. United States*, 33 CIT 1549, 1569 659 F. Supp. 2d 1317, 1333 (Ct Int'l Trade 2009) ("Courts undertaking the GRI 3(a) comparison look to the 'provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty.'") (quoting *Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1373 (Fed. Cir. 2009)); SUMF ¶¶ 12–23. There exist more light types powered by sources other than electricity than exist products which rely upon beta radiation to achieve some functional result.[20] As such, Heading 9022, which specifically provides for apparatus based on beta radiation, is a more specific description of the Tritium Sight Inserts, than the more general "other non-electrical lamps and lighting fittings" provision in Heading 9405 and specifically, in 9405.50.40, HTSUS.

### B.   CBP Erred In Classifying Tritium Sight Inserts In Heading 9405

CBP's conclusion in the IA Ruling that the Tritium Sight Inserts were properly classified in Heading 9405 is erroneous because it conflicts with legal precedent, which states that Heading 9405 excludes goods that are classifiable under another provision of the tariff schedule, and

---

[20] For examples of goods classified under 9405.50.40, *see* NY D87786 (Mar. 5, 1999) (classifying rattan torchlight); NY C81556 (Nov. 18, 1997) (classifying conical glass lamp with cotton wicking); NY E80583 (May 10, 1999) (classifying ceramic candle holder).

because the WCO ENs do not support classification of the Tritium Sight Inserts within Heading 9405.

1.    Heading 9405, as Interpreted By the Court of Appeals For The Federal Circuit, is Limited to Lamps that Cannot Be Classified Under Any Other HTSUS Heading

The Court of Appeals has interpreted the text of Heading 9405 to exclude goods that are classifiable under some other provision of the HTSUS. That heading provides for "[l]amps and lighting fittings including searchlights and spotlights and parts thereof, ***not elsewhere specified or included***." HTSUS Ch. 94 (emphasis added).

In *Gerson Company v. United States*, the court held that "[f]or a lamp to be classifiable under heading 9405, . . . the plain language of the heading requires that the lamp not be 'elsewhere specified or included,' meaning that the lamp must not be covered by any other heading in any chapter of the HTSUS." 898 F.3d 1232, 1236 (Fed. Cir. 2018) (emphasis added) (finding that decorative candles and tea light lamps were not classifiable under Heading 8543 or any other chapter, and that they were therefore classifiable under Heading 9405).

Likewise, in *Russ Berrie & Company, Inc. v. United States*, this Court found that "the terms of Heading 9405, HTSUS ('Lamps . . . not elsewhere specified or included . . .') encompass only those lamps that do not fall within the scope of other headings of the HTSUS." 329 F. Supp. 3d 1345, 1372 (Ct. Int'l Trade 2018) (finding that candle holders were not classifiable under Heading 9505 or any other heading, and that they were therefore classifiable under Heading 9405); *see also Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1388 (Ct. lnt'l Trade 2008) (finding that candle lamps were not classifiable under Heading 7013 or any other heading, and that they were therefore classifiable under Heading 9405).

The *Gerson* court's interpretive approach accords with CBP's reading of "not elsewhere specified or included" in other headings in the HTSUS. For example, in an August 2007 ruling,

the CBP found that a "Tzatziki Garlic Dip" was not properly classified under Heading 1901, which is limited by the phrase "not elsewhere specified or included," because the good could be properly classified "elsewhere in the HTSUS"—namely, under Heading 2103, HTSUS, as a sauce. Customs Ruling HQ W968353 (Aug. 1, 2007).

CBP's IA Ruling relied upon GRI 1 as dispositive on the classification of the subject merchandise. *See* Fogle Dep. 117:20–118:1. CBP's witness, Ms. Fogle confirmed that "in this case, CBP determined that GRI-1 was applicable and therefore, didn't go beyond that analysis and conclusions." *Id.* 118:2–8. However, and as discussed above, CBP did not undertake a fulsome analysis as to whether the Tritium Sight Inserts could be properly classified in Heading 9022. Trijicon acknowledges that the subject merchandise is in some instances referred to colloquially as "lamps" in Trijicon's documentation. *See e.g.*, Ex. 10, Trijicon Iron Sight Brochure, at 3. However, as Mr. Koesler explained in his deposition, the usage of "lamp" to refer to the subject merchandise and GTLSs more broadly is meant as a shorthand. *See* Koesler Dep. 169:2–4. Notwithstanding Trijicon's use of "lamp" as a shorthand for the subject merchandise, GRI 1 requires looking to the terms of the relevant headings to classify merchandise. CBP erred in classifying the subject merchandise within a provision that includes the phrase "not elsewhere specified or included," where other headings might apply. CBP further erred in ignoring GRI 3(a) requiring classification under the more specific applicable heading. Such a consideration would confirm that the proper classification of the Tritium Sight Inserts is within Heading 9022, as an apparatus based on the use of beta radiation.

> 2.      WCO EN 9405 Does Not Support Classification of The Tritium Sight Inserts in Heading 9405

The EN to Heading 9405 does not specifically provide for the classification of the Tritium Sight Inserts in Heading 9405, and confirms that the subject merchandise are not properly classified within the heading. The 2019 EN to Heading 9405 provides for:

> (I) LAMPS AND LIGHTING FITTINGS, NOT ELSEWHERE SPECIFIED OR INCLUDED
>
> Lamps and lighting fittings of this group can be constituted of any material (excluding those materials described in Note 1 to Chapter 71) and use any source of light (candles, oil, petrol, paraffin (or kerosene), gas, acetylene, electricity, etc.). Electrical lamps and lighting fittings of this heading may be equipped with lamp-holders, switches, flex and plugs, transformers, etc., or, as in the case of fluorescent strip fixtures, a starter or a ballast.

The EN contemplates merchandise that the general public would traditionally understand to be "lamps" or "light fixtures" as classified within the heading. For example, table lamps, Christmas lights, and candlesticks.

As stated above, the subject merchandise is not properly classified in Heading 9405, because by its terms the heading is only for lamps and light fittings "not elsewhere specified or included." The EN to Heading 9405 does not contemplate that the Tritium Sight Inserts would be classified in Heading 9405. Of the examples listed in the EN, those that CBP finds to be most analogous to the Tritium Sight Inserts would be "candelabra, candlesticks, candle brackets, e.g., for pianos" because they are non-electrical merchandise that produce a glow. Fogle Dep. 154:9–13. But even this example is a stretch. The Tritium Sight Inserts are complex devices made up of a set of materials, including tritium gas and phosphor, that work together to produce a glow, with the beta radiation as the essential material that allows the Tritium Sight Inserts to function as an aiming aid by illuminating aiming points in the firearm sights. SUMF ¶¶ 12–21.

**CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court issue summary judgment in its favor and order Customs to reliquidate the subject entries with classification in Subheading 9022.29.80 and to refund excess duties paid with interest as provided by law.

Respectfully Submitted,

*/s/ Alexander D. Chinoy*
Alexander D. Chinoy
Shara L. Aranoff
Cynthia Galvez
COVINGTON & BURLING LLP
850 10th St NW
Washington, D.C. 20001
achinoy@cov.com
(202) 662-5559

Dated: September 15, 2023

35

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Standard Chambers Procedures of the U.S. Court of International Trade, this Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment contains 11,046 words, as determined by Microsoft Word. This word count is within the limit of 14,000 words set forth in Rule 2(B).

_/s/ Alexander D. Chinoy_
Alexander D. Chinoy
Shara L. Aranoff
Cynthia Galvez
COVINGTON & BURLING LLP
850 10th St NW
Washington, D.C. 20001
achinoy@cov.com
(202) 662-5559

Dated: September 15, 2023

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 15, 2023, I served a copy of Trijicon Inc.'s attached Motion

for Summary Judgment and of the attached Memorandum of Points and Authorities in Support of

Plaintiff's Motion for Summary Judgment with the Clerk of Court using the CM/ECF system,

which will send notice to all counsel of record, including Luke Mathers, counsel to the United

States.


<u>*/s/ Alexander D. Chinoy*</u>
Alexander D. Chinoy
Shara L. Aranoff
Cynthia Galvez
COVINGTON & BURLING LLP
850 10th St NW
Washington, D.C. 20001
achinoy@cov.com
(202) 662-5559

Dated: September 15, 2023