UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| TRIJICON, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 22-00040 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

Upon consideration of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, and upon consideration of all other papers and proceedings had herein; it is hereby

**ORDERED** that defendant's cross-motion for summary judgment is granted;

**ORDERED** that plaintiff's motion for summary judgment is denied; and it is further

**ORDERED** that judgment is entered for defendant and this action is dismissed.

_____
JUDGE

Dated: _____
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

_____
                                        :
TRIJICON, INC.,                         :
                                        :
                        Plaintiff,      :
                                        :
            v.                          :        Court No. 22-00040
                                        :
UNITED STATES,                          :
                                        :
                        Defendant.      :
_____ :

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel:*
Michael A. Anderson                     LUKE MATHERS
Office of the Assistant Chief Counsel   Trial Attorney
International Trade Litigation          Department of Justice, Civil Division
U.S. Customs and Border Protection      Commercial Litigation Branch
                                        26 Federal Plaza, Room 346
                                        New York, New York 10278
                                        (212) 264-9236

Dated:  November 3, 2023                *Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

QUESTION PRESENTED ................................................................................................. 7

SUMMARY OF ARGUMENT .......................................................................................... 7

ARGUMENT ..................................................................................................................... 8

   I.   Standard Of Review ............................................................................................... 8

   II.   Trijicon's Tritium Lamps Are "Lamps … Not Elsewhere Specified Or Included" Of Heading 9405 ....................................................................................................................... 9

      A.   Trijicon's Tritium Lamps Are "Lamps" ....................................................... 9

      B.   Trijicon's Tritium Lamps Are "Not Elsewhere Specified Or Included".................. 12

      C.   Trijicon's Tritium Lamps Are Classified Under Subheading 9405.50.40 ................ 13

   III.   Trijicon's Tritium Lamps Are Not "Apparatus" Of Heading 9022 ................................. 13

      A.   The Federal Circuit's Reasoning In *Gerson Co.* Instructs That Trijicon's Tritium Lamps Are Not Classifiable As "Apparatus"—"Complex Devices Or Machines"—Under Heading 9022 ....................................................................................................................... 14

      B.   Trijicon's Own Definition Of "Apparatus"—A "Set Of Materials Or Equipment For A Particular Use"—Excludes Its Tritium Lamps From Heading 9022 ............................... 16

      C.   The Explanatory Notes Confirm That Trijicon's Tritium Lamps Are Not The Complex Devices And Machines That Are Covered By Heading 9022.............................. 18

      D.   Trijicon's Counterarguments Are Unpersuasive ....................................................... 20

      E.   GRI 3(a) Is Inapplicable ............................................................................................ 23

CONCLUSION................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Airflow Tech., Inc. v. United States*,
   524 F.3d 1287 (Fed. Cir. 2008) ............................................................. 18

*Allstar Mktg. Grp., LLC v. United States*,
   211 F. Supp. 3d 1319 (Ct. Int'l Trade 2017) .................................... 11

*Am. Net & Twine Co. v. Worthington*,
   141 U.S. 468 (1891)................................................................................ 20

*Anhydrides & Chems., Inc. v. United States*,
   130 F.3d 1481 (Fed. Cir. 1997) ........................................................... 20

*Apple Inc. v. United States*,
   964 F.3d 1087 (Fed. Cir. 2020) ........................................................... 23

*Baxter Healthcare Corp. v. United States*,
   182 F.3d 1333 (Fed. Cir. 1999) ............................................................. 9

*Carl Zeiss, Inc. v. United States*,
   195 F.3d 1375 (Fed. Cir. 1999) ........................................................... 11

*Drygel, Inc. v. United States*,
   541 F.3d 1129 (Fed. Cir. 2008) ............................................................. 9

*Energizer Battery, Inc. v. United States*,
   190 F. Supp. 3d 1308 (Ct. Int'l Trade 2016) .................................... 21

*Faus Grp., Inc. v. United States*,
   581 F.3d 1369 (Fed. Cir. 2009) ........................................................... 24

*Gerson Co. v. United States*,
   898 F.3d 1232 (Fed. Cir. 2018) ................................................... passim

*ITT Thompson Indus., Inc. v. United States*,
   537 F. Supp. 1272 (Ct. Int'l Trade 1982) ........................................ 16

*King v. Saint Vincent's Hosp.*,
   502 U.S. 215 (1991)................................................................................ 17

*Lynteq, Inc. v. United States*,
   976 F.2d 693 (Fed. Cir. 1992) ............................................................. 12

*Mita Copystar Am. v. United States*,
   160 F.3d 710 (Fed. Cir. 1998) ............................................................. 23

*Nature's Touch Frozen Foods (W.) Inc. v. United States*,
   639 F. Supp. 3d 1287 (Ct. Int'l Trade 2023) ........................................................ 21

*Nix v. Hedden*,
   149 U.S. 304 (1893) .............................................................................................. 11

*Polycarpe v. E&S Landscaping Serv., Inc.*,
   616 F.3d 1217 (11th Cir. 2010) ............................................................................ 17

*Pomeroy Collection, Ltd. v. United States*,
   559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008) .................................................. 10, 11

*Railtech Boutet, Inc. v. United States*,
   27 C.I.T. 1023 (2003) ........................................................................................... 15

*RKW Klerks Inc. v. United States*,
   592 F. Supp. 3d 1349 (Ct. Int'l Trade 2022) ......................................................... 9

*Rubies Costume Co. v. United States*,
   279 F. Supp. 3d 1145 (Ct. Int'l Trade 2017) ................................................... 12, 20

*Sec'y of Lab. v. Timberline S., LLC*,
   925 F.3d 838 (6th Cir. 2019) ................................................................................ 17

*United States v. Mannesmann-Meer, Inc.*,
   54 C.C.P.A. 24 (1966) .......................................................................................... 16

*United States v. Ron Pair Enters., Inc.*,
   489 U.S. 235 (1989) .............................................................................................. 22

## Harmonized Tariff Schedule of the United States

General Rules of Interpretation:

   General Rule of Interpretation 1 .................................................................... 9, 23

   General Rule of Interpretation 3(a) ................................................................... 23

   General Rule of Interpretation 3(c) .............................................................. 21, 24

   General Rule of Interpretation 6 ....................................................................... 13

Chapter 85:

   Heading 8513 ...................................................................................................... 12

   Heading 8539 ...................................................................................................... 12

Heading 8543 ................................................................................................ 14, 15

Chapter 90:

Heading 9022 ............................................................................................... passim

Subheading 9022.29.80 ..................................................................................... 7

Chapter 94:

Heading 9405 ............................................................................................... passim

Subheading 9405.50 ........................................................................................ 13

Subheading 9405.50.20 .................................................................................... 13

Subheading 9405.50.30 .................................................................................... 13

Subheading 9405.50.40 ............................................................................. 7, 8, 13

**Rules**

USCIT Rule 30(b)(6) ........................................................................................ 11

USCIT Rule 56(a) ............................................................................................... 8

**Other Authorities**

1 *Thessalonians* 5:5 ........................................................................................... 6

Alok M. Srivastava & Timothy J. Sommerer, *Fluorescent Lamp Phosphors*,
   7 Electrochem. Soc'y Interface 28 (1998) ................................................... 3

*Apparatus*, Webster's New World College Dictionary 65 (3d ed. 1988) .................... 14

Charles Édouard Guillaume, *The International Physical Congress*,
   61 Nature 425 (1900) ...................................................................................... 2

Explanatory Note 90.22(II) ................................................................. 19, 20, 21, 22

Explanatory Note 94.05(I) .................................................................... 10, 12, 15

General Explanatory Note to Chapter 90 ....................................................... 19, 20, 24

*Gunsights*,
   McGraw-Hill Encyclopedia of Science & Technology 304–05 (9th ed. 2002) ................. 5, 10

HQ 088465 (Feb. 22, 1991) ................................................................................ 21

HQ 089963 (Nov. 21, 1991) ............................................................................... 11

HQ 966041 (Apr. 29, 2003) ............................................................................... 10

*John* 8:12 ........................................................................................................... 6

Jonathan H. Choi, *The Substantive Canons of Tax Law*, 72 Stan. L. Rev. 195 (2020) ............... 21

*Lamp*, Webster's New World College Dictionary 757 (3d ed. 1988) ......................................... 10

*Lighting*, The Columbia Encyclopedia 1639 (Paul Lagassé ed., 6th ed. 2000) ...................... 3, 10

Marie Curie, *Pierre Curie* (1923) ...................................................................... 2

*Phosphorescence*, The Columbia Encyclopedia 2216 (Paul Lagassé ed., 6th ed. 2000) .............. 3

*Radioactivity*, The Columbia Encyclopedia 2350 (Paul Lagassé ed., 6th ed. 2000) ................. 2, 3

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| _____ | : |
| TRIJICON, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :      Court No. 22-00040 |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| _____ | : |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the United States Court of International Trade (USCIT),

defendant, the United States (the Government), respectfully cross-moves this Court for an order:

(1) denying plaintiff Trijicon, Inc.'s motion for summary judgment; (2) granting our cross-

motion for summary judgment; (3) entering judgment for the Government and dismissing this

action; and (4) granting the Government such other and further relief as may be just and

appropriate.  As we demonstrate below, summary judgment in favor of the Government is

appropriate because there are no genuine disputes of material fact, and the Government is

entitled to judgment in its favor as a matter of law.

## INTRODUCTION

This case concerns the tariff classification of self-powered, radioluminescent light

sources—"tritium lamps"—that Trijicon uses to illuminate gunsights.  The undisputed facts

show that the merchandise is properly classified as a "lamp" under heading 9405 of the

Harmonized Tariff Schedule of the United States (HTSUS).  A "lamp" is any of various devices

for producing light or heat.  Lamps of heading 9405 can be constituted of any material and use any source of light.  The tritium lamps at issue fit this description.

Trijicon argues that a tritium lamp is instead an "apparatus based on the use of X-rays or of alpha, beta, gamma or other ionizing radiations" under heading 9022 of the HTSUS.  But under the HTSUS, light sources are "lamps," not "apparatus," as the Federal Circuit recently confirmed in *Gerson Co. v. United States*, 898 F.3d 1232, 1233–34 (Fed. Cir. 2018), when classifying battery-powered LED candles as "lamps" rather than electrical "machines" or "apparatus."  Accordingly, the Court should grant the Government's cross-motion for summary judgment, deny Trijicon's motion for summary judgment, enter judgment in the Government's favor, and dismiss this action.

## **BACKGROUND**

Radiation has been associated with glowing light ever since Pierre and Marie Curie discovered the chemical element radium at the turn of the twentieth century.  While working to concentrate radium that they kept in tubes, "[o]ne of [their] joys was to go into [their] workroom at night…. The glowing tubes looked like faint, fairy lights."  Marie Curie, *Pierre Curie* 187 (1923).  The Curies later "surprised" the first International Congress of Physics with the "intensity" of radium's "effects": "Several hundred persons at a time could see this light, which appears everlasting, radiated perpetually by radium …."  Charles Édouard Guillaume, *The International Physical Congress*, 61 Nature 425, 427 (1900).

Radioactive materials produce light through radioactive decay.  Energized sub-atomic particles shoot off of radioactive material, which is unstable, during its decay into a more stable element.  *See Radioactivity*, The Columbia Encyclopedia 2350–51 (Paul Lagassé ed., 6th ed. 2000).  When these high-energy particles (also called alpha, beta, or gamma rays) bombard other

2

atoms, they energize or excite those atoms.  *See id.*  This is called ionizing radiation.  Potent

ionizing radiation can excite the atoms contained in air itself, creating the spontaneous glow at

which the Curies marveled in their laboratory.  *See id.* at 2351 (explaining that uranium and its

salts exhibit this phosphorescence).  Weaker radiation can ionize a phosphor—a substance

consisting of a host material like a sulfide and an activator such as copper or zinc that, when

energized, produces light.  *See Phosphorescence*, *id.* at 2216.

Using energized phosphors to make light is a familiar phenomenon.  Phosphors coating

the interior of fluorescent lamps produce visible light, but are excited by ultraviolet light, a type

of electromagnetic radiation, made by vaporizing mercury with an electric current inside the

lamp's sealed glass tube.  *Lighting*, *id.* at 1639; Alok M. Srivastava & Timothy J. Sommerer,

*Fluorescent Lamp Phosphors*, 7 Electrochem. Soc'y Interface 28, 28–29 (1998).[1]

The subject merchandise also uses a phosphor to produce light, but the merchandise is

radioluminescent—its phosphor coating is excited by ionizing radiation, specifically, beta

radiation.  All eleven models at issue comprise a tiny cylindrical or rectangular glass vial

containing tritium gas and a zinc sulfide phosphor interior coating.  Plaintiff's Statement of

Undisputed Material Facts (Pl.'s SUMF), ECF No. 28-1 ¶¶ 12–13.  Tritium is a radioactive form

of hydrogen.  *Id.* ¶ 15.  The gaseous tritium within the lamps shoots off beta particles in all

directions.  USCIT Rule 30(b)(6) Deposition of Paul Koesler (Koesler Dep.) at 98:13–99:5

(Government Exhibit (Gov't Ex.) 1).  The beta particles cannot escape the glass vials, which are

hermetically sealed and have no aperture.  Pl.'s SUMF ¶¶ 17, 24; Koesler Dep. at 110:10–16;

Plaintiff's Exhibit (Pl.'s Ex.) 14, ECF No. 28-15 at 27.  They instead collide with, and excite or

---

[1] The above-cited sources, together with the encyclopedia and dictionary entries cited in
this brief, are reproduced in Government Exhibit 7.

energize, the vials' phosphor coatings.  Pl.'s SUMF ¶ 21.  The phosphor coatings in turn produce

colored light.  *Id.* ¶ 22. The lamps are thus self-powered.  Pl.'s Ex. 14 at 2.  They require no

battery or other external power source.  *See, e.g.*, Pl.'s Ex. 10, ECF No. 28-11 at 4 ("Tritium

phosphor-filled glass lamp provides battery-free glow for a visible sight picture in all lighting

situations.").  But the lamps continuously produce light—they cannot be dimmed, brightened, or

switched on and off.  Koesler Dep. at 96:2–15, 174:17–175:3.

For one model with a cylindrical shape, this describes the entire lamp.  Pl.'s SUMF ¶ 40

(LAT4367-1).  Some lamp models are rectangular, rather than cylindrical, and have a white paint

applied.  *Id.* ¶¶ 56, 63 (LAT4733, LAT4734-1V, and LAT5571).  The remaining lamp models

come with a protective metal sleeve and crystal cap glued on.  *Id.* ¶ 41 (LAT4582, LAT4674,

LAT4962, LAT4963, LAT4963/II-Y, LAT4963/III-O, and LAT4964); *see* Pl.'s Ex. 13, ECF No.

28-14 (photographs of the lamp models at issue).  None of the tritium lamps are lead-lined.  *See*

Pl.'s Ex. 12, ECF No. 28-13 at 3–9; Koesler Dep. at 160:10–19.  The lamps' Swiss

manufacturer, mb-Microtec, markets all three types of models under the brand name "trigalight."

*See* Pl.'s Ex. 11, ECF No. 28-12; Pl.'s Ex. 14.  Only those with the protective sleeve and cap are

called trigalight "tactical inserts."  Pl.'s Ex. 11 at 27; Pl.'s Ex. 15, ECF No. 28-16 at 2.  mb-

Microtec advertises trigalights as "self-powered illumination" for a variety of devices, including

watches, compasses, and gunsights.  Pl.'s Ex. 14 at 2, 7–8, 10, 14–15, 27; Pl.'s Ex. 11 at 8, 19–

21, 26–28, 33–34.

Trijicon imported each of these three trigalight models in the subject entries between

January and March of 2019.  Pl.'s SUMF ¶¶ 2, 4.  For each lamp model, Trijicon has assigned a

unique part number beginning with the letters "LAT," which "may" stem from the words "lamp

tritium." Koesler Dep. at 74:12–19. And "lamp" is the word that Trijicon consistently uses to describe the merchandise, including in its:

- communications with mb-Microtec, Gov't Ex. 2;

- engineering diagrams, Pl.'s Ex. 15 at 2; Pl.'s Ex. 16, ECF No. 28-17 at 2;

- work instructions for factory workers, Gov't Ex. 3;

- product information aimed at the general public, Pl.'s Ex. 10 at 4–6; Gov't Ex. 4; and

- communications and filings made with the United States Nuclear Regulatory Commission, Gov't Ex. 5.

Trijicon incorporates the lamps into gunsights. Pl.'s SUMF ¶ 34. Gunsights are "[o]ptical instruments which establish an optical line or axis for the purpose of aiming a weapon. The axis includes the observer's eye, a suitable mark in the instrument, and the target." *Gunsights*, McGraw-Hill Encyclopedia of Science & Technology 304–05 (9th ed. 2002). The lamps at issue fit into three different types of gunsights that Trijicon makes: advanced combat optical gunsight (ACOG) riflescopes, ruggedized miniature reflex (RMR) sights, and "night sight" iron sights. Koesler Dep. at 228:21–229:2; Pl.'s Ex. 12, ECF No. 28-13 at 4, 6.

A riflescope is a "telescopic" sight that provides magnification for the user, and its crosshairs or "reticle may be illuminated by a small lamp to permit night use." *Gunsights*, McGraw-Hill Encyclopedia of Science & Technology 304–05 (9th ed. 2002). Reflex sights "employ in their simplest form a lamp, a reticle, a collimating lens, and a glass plate or partially reflecting mirror. The collimator images the reticle pattern at infinity, and the mirror superimposes this image over the target area." *Id.* Iron sights are simpler. They consist of a "front sight" (an "elevated post") atop the firing end of a gun, and a "rear sight" mounted on the opposite end through which the front sight appears when the gun is aimed. Pl.'s SUMF ¶¶ 48–

49.  Samples of Trijicon's tritium-lamp-illuminated gunsights have been filed with the Court.
*See* Physical Exhibits 1–4.

Illumination is one of the ways Trijicon differentiates itself from competitors.  Koesler
Dep. at 64:16–65:2.  The company's name derives from the word "tritium" and the light that
three tritium lamps produce in an iron sight.  *Id.* at 49:18–50:7.  Its civilian products are etched
with citations of Bible verses discussing light.  *Id.* at 278:18–279:19.  Physical Exhibits 3 and 4,
for example, bear the etchings "JN8:12" and "1 TH5:5," respectively.  *John* 8:12 ("Then spake
Jesus again unto them, saying, I am the light of the world: he that followeth me shall not walk in
darkness, but shall have the light of life."); 1 *Thessalonians* 5:5 ("Ye are all the children of light,
and the children of the day: we are not of the night, nor of darkness.").  And Trijicon offers two
lighting options for its ACOG riflescopes and RMR sights: tritium lamps, or battery-powered
LED lamps.  Koesler Dep. at 174:5–181:1; Gov't Ex. 6.  The LED lamps, unlike the tritium
lamps, can be dimmed, brightened, and shut on or off.  Koesler Dep. at 175:14–16, 179:19–22.

As for the procedural history of this matter, Trijicon's recitation is accurate.  The subject
tritium lamps were contained in Reconciliation Entry No. 637-0639215-4, "which was filed with
the Port of Laredo, Texas, on October 27, 2020."  Pl.'s SUMF ¶ 3.  The reconciliation entry
"covered six original entries of the subject merchandise made between January and March 2019
(KB500761311, KB500763119, KB500764935, KB500765734, KB500766351, and
KB500767136)," for which Trijicon was the importer of record.  *Id.* ¶¶ 4–5.  Trijicon then made
a request for internal advice in connection with the reconciliation entry, arguing that its tritium
lamps were not lamps at all, but rather "apparatus based on the use of … beta … radiation[]," of
heading 9022.  *Id.* ¶ 7.  In a published Headquarters ruling, Customs disagreed, classifying the
merchandise as "[l]amps … not elsewhere specified or included" of heading 9405.  *Id.*  The

6

reconciliation entry liquidated on April 30, 2021; Trijicon timely protested the liquidation; and

Trijicon's protest was denied in accordance with the ruling. *Id.* ¶¶ 8–11. Trijicon timely brought

suit in this Court, and now moves for summary judgment. *See* ECF No. 28 (Trijicon Br.).

## QUESTION PRESENTED

Whether the imported tritium lamps are properly classified as:

(1) "Lamps and lighting fittings including searchlights and spotlights and parts thereof,

not elsewhere specified or included: Non-electrical lamps and lighting fittings: Other" of

subheading 9405.50.40, HTSUS; or

(2) "Apparatus based on the use of X-rays or of alpha, beta, gamma or other ionizing

radiations, whether or not for medical, surgical, dental or veterinary uses, including radiography

or radiotherapy apparatus, X-ray tubes and other X-ray generators, high tension generators,

control panels and desks, screens, examination or treatment tables, chairs and the like; parts and

accessories thereof: Apparatus based on the use of alpha, beta, gamma or other ionizing

radiations, whether or not for medical, surgical, dental or veterinary uses, including radiography

or radiotherapy apparatus: For other uses: Other" of subheading 9022.29.80, HTSUS.[2]

## SUMMARY OF ARGUMENT

Trijicon's tritium lamps are properly classified as "lamps" of heading 9405 "not

elsewhere specified or included." They meet the common meaning of the term "lamp," as

informed by not only reliable lexicographic sources and caselaw but also Trijicon's own

communications with its supplier, workers, customers, and chief regulator. And no other

---

[2] The versions of the HTSUS and Explanatory Notes cited in this brief are those in effect at the time of entry in January to March of 2019. Copies of the Explanatory Notes are reproduced in Government Exhibit 8.

heading of the HTSUS provides for non-electric lamps like Trijicon's. They are thus classifiable under subheading 9405.50.40, as Customs classified them at liquidation.

Heading 9022, which covers "apparatus based on the use of … alpha, beta, gamma or other ionizing radiations," does not describe Trijicon's tritium lamps. The Federal Circuit recently explained in *Gerson Co.* that an "apparatus" is a "complex device or machine for a specific use," and held that "lamps" such as battery-powered LED candles do not meet that definition. Trijicon's tritium lamps, which have even less features than LED lamps, are thus not "apparatus"—or "complex devices or machines"—of heading 9022. And, tellingly, Trijicon distances itself from this definition.

Instead, Trijicon argues that the term "apparatus" should be interpreted broadly to cover any "set of materials" for a particular purpose. This interpretation is outdated as it derives from cases interpreting prior tariff statutes. But even if this definition applies, it does not support classifying Trijicon's lamps as apparatus. A tritium lamp is just one "material" (that is, one tool or piece of equipment), not a set thereof. Moreover, the relevant Explanatory Notes clarify that the apparatus covered by heading 9022 are complex devices and machines that employ radiation with high precision to analyze or irradiate external substances—not merely illuminative articles like Trijicon's tritium lamps. These lamps are therefore "not elsewhere specified or included" and classifiable only under heading 9405.

## ARGUMENT

### I.   Standard Of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT Rule 56(a). Where, as here, "no factual dispute exists regarding the merchandise,

resolution of the classification turns solely on" the "meaning of the relevant tariff provisions," a "question of law" that the court determines *de novo*. *RKW Klerks Inc. v. United States*, 592 F. Supp. 3d 1349, 1354–55 (Ct. Int'l Trade 2022) (citations omitted). That question of law is governed by the HTSUS's General Rules of Interpretation (GRIs). *Id.* at 1355. "The HTSUS is designed so that most classification questions can be answered by GRI 1." *Id.* (citation omitted). Under GRI 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes."

HTSUS terms generally are "construed according to their common and popular meaning." *Baxter Healthcare Corp. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999) (citation and alteration omitted). "Courts may rely upon their own understanding of terms or consult dictionaries, encyclopedias, scientific authorities, and other reliable information" in ascertaining common meaning. *RKW Klerks*, 592 F. Supp. 3d at 1355 (citations omitted). That includes the Explanatory Notes to the Harmonized Tariff Schedule, which, though not binding, "are 'generally indicative' of the proper interpretation of a tariff provision." *Drygel, Inc. v. United States*, 541 F.3d 1129, 1134 (Fed. Cir. 2008). Courts credit "the unambiguous text of relevant explanatory notes absent persuasive reasons to disregard it." *Id.*

## II.     Trijicon's Tritium Lamps Are "Lamps … Not Elsewhere Specified Or Included" Of Heading 9405

Trijicon's tritium lamps are classifiable under heading 9405 because they are "lamps," as that term is commonly understood pursuant to its plain meaning, and because they are "not elsewhere specified or included" in another HTSUS provision. *Gerson Co.*, 898 F.3d at 1236.

### A.   Trijicon's Tritium Lamps Are "Lamps"

*First*, Trijicon's tritium lamps are "lamps," as that word is commonly understood. A "lamp" is "any of various devices for producing light or heat, as an electric light bulb or a gas

jet." *Lamp*, Webster's New World College Dictionary 757 (3d ed. 1988).  Lamps can be "constituted of any material" and "use any source of light," meaning that the term "lamps" includes "*[n]on-electrical lamps*."  *Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1385–86 (Ct. Int'l Trade 2008) (emphasis in original) (quoting Explanatory Note 94.05(I)); *see Gerson Co.*, 898 F.3d at 1237.  And, were heading 9405 ambiguous, its Explanatory Note further confirms that lamps, which "may be equipped with lamp-holders" and the like, include "in particular … [s]pecialised lamps" such as "machine lamps (presented separately)[.]"  Explanatory Note 94.05(I) (emphasis omitted).

The subject merchandise is a "lamp" within the common meaning of that term.  It is a device that produces light by energizing a phosphor, Pl.'s SUMF ¶¶ 21–22, similar to how a fluorescent lamp produces light, *Lighting*, The Columbia Encyclopedia 1639 (Paul Lagassé ed., 6th ed. 2000).  It illuminates the complex devices into which it is incorporated (watches, compasses, or, in Trijicon's case, gunsights), Pl.'s Ex. 14 at 2, 7–8, 10, 14–15, 27; Pl.'s Ex. 11 at 8, 19–21, 26–28, 33–34, much like the specialized, separately imported machine lamps to which Explanatory Note 94.05(I) refers, *see, e.g.*, HQ 966041 (Apr. 29, 2003) (classifying a specialized fluorescent sewing machine light, with wiring and a metal housing, designed to illuminate the machine's working area, under heading 9405).  Reliable lexicographic sources confirm that light sources incorporated into gunsights, particularly riflescopes and reflex sights, are still called "lamps."  *Gunsights*, McGraw-Hill Encyclopedia of Science & Technology 304–05 (9th ed. 2002).  Battery-powered LED lamps replace the tritium lamps for some gunsight models.  Koesler Dep. at 174:5–181:1; Gov't Ex. 6.  And Trijicon consistently calls the merchandise a "lamp" in communications with its supplier, workers, customers, and chief regulator.  Gov't Exs.

2–5, Pl.'s Ex. 15 at 2; Pl.'s Ex. 16 at 2.  Trijicon thus admits that the imported merchandise can be described as a "lamp" in a "colloquial" sense.  Trijicon Br. at 33.[3]

Notwithstanding this evidence, Trijicon argues that the merchandise is not properly classified under heading 9405 because classification under that heading "encompasses only the [tritium lamp's] glass container which, in part, allows for light," and not its "use of tritium gas." Trijicon Br. at 30–31.  But this description of a lamp is not supported by the plain meaning of the term.  The common meaning of lamp is "any of various devices for producing light," not just a "glass container."  *See Pomeroy Collection, Ltd.*, 559 F. Supp. 2d at 1391–92 (rejecting a similar argument).  This interpretation of "lamp" is also not supported by the relevant case law.  Heading 9405 provides for "lamps" by name; such an *eo nomine* provision "will ordinarily include all forms of the named article."  *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citation omitted).  The term "lamps" thus includes self-luminous ones like Trijicon's that, despite their unique energy source and specialized uses, are still commonly (or "colloquially") known as lamps.  *Id.* (holding that an *eo nomine* provision for "compound optical microscopes" described an article despite its "exclusive use" in surgery); *Allstar Mktg. Grp., LLC v. United States*, 211 F. Supp. 3d 1319, 1336–37 (Ct. Int'l Trade 2017) (holding that a blanket with sleeves was classifiable under an *eo nomine* provision for "[b]lankets").  Thus, heading 9405 describes the totality of Trijicon's tritium lamps.  *See, e.g.*, HQ 089963 (Nov. 21, 1991) (classifying a

---

[3] Trijicon suggests that it uses the word "lamp" merely "as a shorthand" for the merchandise.  Trijicon Br. at 33.  That suggestion is not consistent with the testimony of Trijicon's designated agent pursuant to USCIT Rule 30(b)(6).  Trijicon's agent testified that the initialism "GTLS"—not the term "lamp"—was used as a shorthand for the "mouth full" of a phrase "gaseous tritium light source."  Koesler Dep. at 168:14–169:8.  In any event, Trijicon fails to explain how the "colloquial" or "shorthand" meaning is any different from the common meaning that controls tariff classification.  *See, e.g.*, *Nix v. Hedden*, 149 U.S. 304, 306–07 (1893) (classifying tomatoes as vegetables, rather than fruits, based on "common speech").

"betalight," a brand of tritium lamp used to illuminate emergency exit signs, under heading

9405).

Trijicon also quibbles with the Explanatory Note, pointing out that it does not specifically

mention tritium-powered lamps. Trijicon Br. at 34. True, but it does not need to. The existing

description of the merchandise within the Explanatory Note shows that tritium-powered lamps

are covered by heading 9405. The Explanatory Note says that heading 9405 covers

"[s]pecialised lamps," "constituted of any material," that use "any source of light." Explanatory

Note 94.05(I). And the common thread tying all of the Explanatory Note and its exemplars

together, and thus informing the scope of the heading, is illumination—not any particular power

source. *Gerson Co.*, 898 F.3d at 1238; *see Rubies Costume Co. v. United States*, 279 F. Supp. 3d

1145, 1169 (Ct. Int'l Trade 2017) (explaining that commonalities between exemplars can inform

a heading's scope), *aff'd*, 922 F.3d 1337 (Fed. Cir. 2019).

### B.  Trijicon's Tritium Lamps Are "Not Elsewhere Specified Or Included"

*Second*, Trijicon's tritium lamps are classifiable under heading 9405 because they are

lamps "not elsewhere specified or included." An article is "elsewhere specified or included" in

the HTSUS if another heading "expressly provide[s]" for that article. *Lynteq, Inc. v. United

States*, 976 F.2d 693, 699 (Fed. Cir. 1992); *see Gerson Co.*, 898 F.3d at 1236 n.3 (suggesting that

a heading that generally provides for electrical "apparatus" and "machines" does not "specif[y]

or include[]" "lamps"). But no other heading expressly covers lamps like Trijicon's. Headings

8513 and 8539 cover electric lamps. *See* heading 8513 (covering certain "[p]ortable electric

lamps designed to function by their own source of energy"); heading 8539 (covering "[e]lectrical

filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps;

arc lamps").  These headings are disqualified because Trijicon's lamps are non-electric.  And as explained below, the heading proffered by Trijicon, heading 9022, is also not applicable.

### C.  Trijicon's Tritium Lamps Are Classified Under Subheading 9405.50.40

Given that heading 9405 provides for the merchandise, GRI 6 dictates classification under subheading 9405.50.40.  At the six-digit level, subheading 9405.50 provides for "[n]on-electrical lamps and lighting fittings" like Trijicon's.  And at the eight-digit level, subheading 9405.50.40 provides for lamps "other" than certain "[i]ncandescent lamps" and lamps "[o]f brass," which subheadings 9405.50.20 and 9405.50.30 respectively cover.  The subject merchandise, being neither incandescent nor brass, is therefore properly classified under subheading 9405.50.40, just as Customs classified it at liquidation.

### III.  Trijicon's Tritium Lamps Are Not "Apparatus" Of Heading 9022

Trijicon's main contention is that its tritium lamps are "apparatus" of heading 9022.  Heading 9022 provides for "[a]pparatus based on the use of X-rays or of alpha, beta, gamma or other ionizing radiations, whether or not for medical, surgical, dental or veterinary uses, including radiography or radiotherapy apparatus, X-ray tubes and other X-ray generators, high tension generators, control panels and desks, screens, examination or treatment tables, chairs and the like; parts and accessories thereof[.]"  Trijicon defines an "apparatus" as a "set of materials or equipment for a particular use."  Trijicon Br. at 14.  Trijicon's proposed classification falls short for at least three reasons.

First, the Federal Circuit's reasoning in *Gerson Co.* rejects Trijicon's position.  That decision defines an "apparatus" as a "complex device or machine for a specific use" and effectively holds that a "lamp" is not an "apparatus" for purposes of the HTSUS.  Second, even if "apparatus" means any "set of materials" for a particular purpose, as Trijicon suggests,

13

Trijicon misunderstands the word "materials."  In the context of an "apparatus," "materials" means not "anything that has matter" but rather "tools" or "equipment," as dictionaries confirm. The imported merchandise fails this definition as a tritium lamp is just one tool or piece of equipment.  And third, the relevant Explanatory Notes make plain that tritium lamps are not complex machines and devices like those covered by heading 9022.  As such, Trijicon's tritium lamps are not classifiable under heading 9022, and are instead classifiable only under heading 9405.

> **A.  The Federal Circuit's Reasoning In *Gerson Co.* Instructs That Trijicon's Tritium Lamps Are Not Classifiable As "Apparatus"—"Complex Devices Or Machines"—Under Heading 9022**

*First*, the Federal Circuit's reasoning in *Gerson Co.*, which classified battery-powered LED candles as "lamps" of heading 9405 rather than "electrical machines and apparatus" of heading 8543, instructs that Trijicon's tritium lamps are not "apparatus."  898 F.3d 1232 (Fed. Cir. 2018).

In *Gerson Co.*, the Federal Circuit explained that although the LED candles at issue "use[d] electricity to operate and therefore arguably qualif[ied] as 'electrical machines and apparatus' in a 'hyper-technical sense,'" the words "machines" and "apparatus" "generally connote equipment designed specifically to carry out a particular function."  *Id.* at 1236 (noting that the dictionary defines "apparatus" as "any complex device or machine for a specific use")); *accord Apparatus*, Webster's New World College Dictionary 65 (3d ed. 1988).  The word "apparatus," therefore, "would seem *not* to cover" LED candles—"decorative articles that also serve an illuminative function."  *Gerson Co.*, 898 F.3d at 1236.  Furthermore, if heading 8543's description of "apparatus" were broad enough to encompass "lamps," the Federal Circuit reasoned, then heading 9405 would be limited to non-electric lamps.  *Id.* at 1236–37.  That

would be a "nonsensical" limitation on heading 9405 not supported by its plain language or its Explanatory Note, given that lamps may be "constituted of *any* material" and use "*any* source of light." *Id.* (quoting Explanatory Note 94.05(I)).  Accordingly, the Federal Circuit held that the LED candles at issue were "lamps" of heading 9405 "not elsewhere specified or included," rather than electrical "apparatus" or "machines" of heading 8543.  *Id.*

Although *Gerson Co.* interpreted the word "apparatus" in heading 8543, rather than heading 9022, its reasoning is still relevant for the interpretation of the term as it appears in heading 9022.  "It is a standard rule of statutory interpretation that where the same word or phrase is used in different parts of the same statute, it will be presumed, in the absence of any clear indication of a contrary intent to be used in the same sense throughout the statute." *Railtech Boutet, Inc. v. United States*, 27 C.I.T. 1023, 1031 (2003) (citation omitted).

Consequently, in accordance with *Gerson Co.*, an "apparatus" is "any complex device or machine for a specific use."  *Gerson Co.*, 898 F.3d at 1236 (citation omitted).  That definition does not cover mere illuminative articles like the tritium lamps at issue, especially considering that they cannot, unlike more complex light sources such as LEDs, be turned on and off, dimmed, or brightened.  Koesler Dep. at 96:2–15, 174:17–175:3.  Moreover, if the word "apparatus" *did* describe the subject lamps, then heading 9405 would be limited to non-radiation-powered lamps.  This argument is just as divorced from the text of heading 9405 as the limitation rejected by the Federal Circuit in *Gerson Co*.  *See* 898 F.3d at 1236–37.  Heading 9405, after all, covers lamps of "*any* material" using "*any* source of light."  *Id.* at 1237 (quoting Explanatory Note 94.05(I)).

Tellingly, Trijicon does not contend that its tritium lamps meet the definition of "apparatus" adopted by *Gerson Co.  See* Trijicon Br. at 14–17.  In short, the Federal Circuit

effectively has rejected Trijicon's primary contention—that a "lamp" can be an "apparatus"—as a "hyper-technical" reading of the HTSUS. *Gerson Co.*, 898 F.3d at 1236.

> **B. Trijicon's Own Definition Of "Apparatus"—A "Set Of Materials Or Equipment For A Particular Use"—Excludes Its Tritium Lamps From Heading 9022**

*Second*, even if Trijicon were right that "apparatus" means a "set of materials or equipment for a particular use," Trijicon Br. at 14, its tritium lamps would still not be classifiable under heading 9022. The definition that Trijicon is relying on describes the collective tools needed to accomplish a task—not a single device like a tritium lamp.

Under now-superseded tariff statutes, some courts understood "apparatus" to be "collective in the sense that it is intended to encompass a *group of devices* or a *collection or set of materials, instruments or appliances* to be used for a particular purpose or a given end." *ITT Thompson Indus., Inc. v. United States*, 537 F. Supp. 1272, 1277–78 (Ct. Int'l Trade 1982) (emphasis added) (interpreting TSUS item 685.70, which covered "sound or visual signalling apparatus or parts thereof").[4] *But see United States v. Mannesmann-Meer, Inc.*, 54 C.C.P.A. 24, 28 (1966) ("'[A]pparatus,' or its synonyms 'machinery' or 'set of machinery,' … embrace an aggregate of elements or means acting in concert to accomplish an over-all specific purpose.") (interpreting paragraph 353 of the Tariff Act of 1930, which provided for "[e]lectrical signaling, welding, and ignition apparatus, instruments …, and devices"). This understanding of "apparatus," assuming it survived the HTSUS's enactment and *Gerson Co.*, does not support classifying the merchandise under heading 9022. A tritium lamp is not a *group*, *set*, or *collection*

---

[4] It should be noted that the TSUS provided in items 653.30 through 653.40 for "*illuminating articles* and parts thereof," *ITT Thompson Indus., Inc.*, 537 F. Supp. at 1275 (emphasis added), which bolsters *Gerson Co.*'s conclusion (and our argument) that "lamps" are not considered "apparatus."

of devices, materials, instruments, or appliances.  It is just *one* device, material, instrument, or appliance.

Trijicon tries to avoid this conclusion by taking the word "materials" out of its context.  Trijicon argues that "materials" means anything comprised of matter, and notes that the tritium lamps consist of tritium gas, glass vials, phosphor coatings, and, in some cases, paint and protective components.  Trijicon Br. at 14–17 & n.12; Koesler Dep. at 149:1–6.  But words cannot be read in a vacuum.  *King v. Saint Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used[.]" (citation omitted)).  "Materials" in this context means "apparatus (as tools or other articles) necessary for doing or making something," or "[t]ools, implements, or apparatus for performing an action"—plural.  *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1223 (11th Cir. 2010) (citations omitted).

True, in other contexts, "materials" can mean "the basic matter (as metal, wood, plastic, fiber) from which the whole or the greater part of something physical (as a machine, tool, building, fabric) is made," *id.* (citation omitted)—as in gas, glass, coatings, paint, protective metal sleeves, and crystal caps.  Context is important, however, and here, the tariff term at issue is "apparatus."  The word "materials" in the definition of "apparatus," in light of its context within the tariff, thus means not the basic matter from which a machine or tool is made but rather the collective "[t]ools," "implements," or equipment used to perform some task.  *See id.* at 1223–24 (citation omitted) (interpreting "materials" to mean tools, not the basic matter from which one machine or tool is made, based on statutory context); *Sec'y of Lab. v. Timberline S., LLC*, 925 F.3d 838, 848 (6th Cir. 2019) (same).

Trijicon's interpretation of "apparatus," moreover, is overly broad.  Any article that consists of more than one substance is a "set of materials" and thus an apparatus, according to Trijicon's interpretation of the term.  For example, a glass of water would be an apparatus for quenching thirst; a shoe would be an apparatus for walking; a printed brief would be an apparatus for persuading a judge.  If the HTSUS's drafters meant for "apparatus" to be so "broadly defined," Trijicon Br. at 15, they would have used broader terms.  *Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1292 (Fed. Cir. 2008) (explaining that the HTSUS's drafters could have used a "broader term" than the one they used, had they wanted a provision to encompass more merchandise).  For example, the drafters could have provided that heading 9022 covers "articles" based on the use of radiation, rather than "apparatus."  But they did not.  Thus, even under Trijicon's definition, a single tritium lamp is not an "apparatus," or a set of tools or equipment.

### C.  The Explanatory Notes Confirm That Trijicon's Tritium Lamps Are Not The Complex Devices And Machines That Are Covered By Heading 9022

*Third*, were it unclear that Trijicon's tritium lamps are not "apparatus" of heading 9022, the applicable Explanatory Notes clarify that heading 9022 covers complex, high-precision devices and machines with apertures that allow radiation to pass through to perform their functions, unlike the hermetically sealed lamps at issue.

To begin, the General Explanatory Note offers useful guidance as to the merchandise covered by the headings of chapter 90 (titled "optical, photographic, cinematographic, measuring, checking, precision, medical or surgical instruments and apparatus; parts and accessories thereof").  As explained by the General Explanatory Note, Chapter 90 "covers a wide variety of instruments and apparatus which are, as a rule, characterized by their high finish and high precision.  Most of them are used mainly for scientific purposes …, for specialised technical

or industrial purposes (measuring or checking, observation, etc.) or for medical purposes." General Explanatory Note to Chapter 90.  The chapter "includes in particular … [m]achines, instruments and appliances for testing materials," and "[a] large group of measuring, checking or automatically controlling instruments and apparatus[.]"  *Id.*  Although some of chapter 90's headings specify these apparatus by name, "other instruments and apparatus are covered by more general descriptions," for instance, "X-ray, etc., apparatus of heading 90.22[.]"  *Id.*

Explanatory Note 90.22(II) in turn clarifies what heading 9022 means by "apparatus based on the use of alpha, beta, gamma or other ionizing radiations[.]"  Such radiations "emanate from a radioactive substance with the property of emitting radiations by spontaneous transformation of its atoms.  This radioactive substance is placed in a container, normally of steel coated with lead (bomb), which has an aperture designed to let the radiations pass in one direction only."  Explanatory Note 90.22(II).  The Explanatory Note then lists four "types" of covered apparatus that "may be distinguished, according to the radiations employed and the use for which they are designed:"

> (1) **Therapy apparatus**, in which the radioactive source is a charge of radium, radio-cobalt or some other radioactive isotope.
>
> (2) **Apparatus for radiological examinations**, used mainly in industry for checking metal parts, etc., without damaging their structure.
>
> (3) **Apparatus** having a measuring instrument such as beta and gamma ray thickness gauges for measuring the thickness of materials (sheets, linings and the like), apparatus for monitoring the contents of packages containing any product (pharmaceutical products, foodstuffs, sporting gun cartridges, perfumes, etc.) or ionisation anemometers. In these apparatus, the required information is generally obtained by measuring the change in the amount of radiation applied to the factor under examination.
>
> (4) **Fire alarms** incorporating smoke detectors containing a radioactive substance.

*Id*.

Heading 9022, construed in light of the General Explanatory Note to Chapter 90 and Explanatory Note 90.22(II), does not describe Trijicon's tritium lamps.  The lamps, despite being manufactured with high-precision machines, Pl.'s Ex. 14 at 23, do not perform any high-precision function like radiological examination or anemometry.  They cannot even perform simple functions, like being shut on and off, dimmed, or brightened.  Koesler Dep. at 96:2–15, 174:17–175:3.  They do not have or come in lead-lined containers.  *See* Pl.'s Ex. 12 at 3–9; Koesler Dep. at 160:10–19.  They do not have "an aperture designed to let the radiations pass in one direction only" to perform their function.  Pl.'s SUMF ¶¶ 17, 24; Koesler Dep. at 110:10–16; Pl.'s Ex. 14 at 27.  Nor are they similar to the listed types of covered apparatus—therapy apparatus, radiological examination apparatus, measuring apparatus, and fire alarms with smoke detectors—all of which use radiation to irradiate, measure, test, check, examine, or detect foreign substances.  *See Gerson Co.*, 898 F.3d at 1238; *Rubies Costume Co.*, 279 F. Supp. 3d at 1169. Heading 9022 therefore does not cover Trijicon's hermetically sealed lamps, within which beta particles shoot off in all directions and serve merely to energize an interior phosphor coating to produce light.

### D.  Trijicon's Counterarguments Are Unpersuasive

Trijicon raises a number of points in response, none of which is persuasive.  Trijicon first suggests that "[a]mbiguity in a classification is resolved 'in favor of the importer, since the intention of Congress to impose a higher duty should be expressed in clear and unambiguous language.'"  Trijicon Br. at 11–12 (quoting *Am. Net & Twine Co. v. Worthington*, 141 U.S. 468, 474 (1891), and citing *Anhydrides & Chems., Inc. v. United States*, 130 F.3d 1481, 1485 (Fed. Cir. 1997)).  But this is not the case.  This judge-made nineteenth-century substantive canon is of

doubtful modern-day existence.  Jonathan H. Choi, *The Substantive Canons of Tax Law*, 72 Stan. L. Rev. 195, 251–54 & n.299 (2020) (explaining that the Supreme Court reversed course in the 1930s and has as recently as 2001 reaffirmed "the general anti-taxpayer rule").  And it cannot displace the statutory rules governing classification—including GRI 3(c), which requires that a tie go to "the heading which occurs last in numerical order," not the heading with the lower duty rate.  *See Nature's Touch Frozen Foods (W.) Inc. v. United States*, 639 F. Supp. 3d 1287, 1307 (Ct. Int'l Trade 2023) (under the HTSUS, "canons and duty rates do not control classification—the text of the headings and subheadings do").

Next, Trijicon exalts Customs' classifying a "Gammacell 220 reloaded with Cobalt-60," a "research irradiator," as an apparatus of heading 9022, and claims that this ruling supports Trijicon's position.  Trijicon Br. at 15 (citing HQ 088465 (Feb. 22, 1991)).  This example, however, supports the Government's interpretation.  Irradiators like the Gammacell 220 comfortably fit within the Explanatory Notes' description of high-precision, complex machines and devices that apply radiation to external materials.  *Compare* HQ 088465 (Feb. 22, 1991) (describing the Gammacell 220 as a "high dose rate research irradiator" for "medical product sterilization," among other uses), *with* Explanatory Note 90.22(II).  Tritium lamps do not.

Trijicon then devotes part of its brief to criticizing Customs' analysis, as reflected in HQ H307905.  *See, e.g.*, Trijicon Br. at 10, 13, 16–17, 27, 33–34.  But the Court decides this case *de novo* based on the record made before it and the law cited to it in briefing—not based on a non-binding Customs ruling or Customs' analysis.  *Energizer Battery, Inc. v. United States*, 190 F. Supp. 3d 1308, 1315 (Ct. Int'l Trade 2016) ("[T]he fact that CBP may have incorrectly applied a

legal test in its analysis or that Defendant may have abandoned CBP's analysis in its briefing to the court is neither dispositive nor sufficient reason for the court to find in Plaintiff's favor.").[5]

Trijicon also points out that heading 9022 "is not restricted to merchandise with a specific end-use," that heading 9022 requires no "minimum measure of radioactivity that a good must meet to be properly classified in the heading," and that the chapter notes to Chapter 90 do not expressly exclude tritium lamps. Trijicon Br. at 18–21. These arguments miss the central issue before the Court. The dispositive legal question is ascertaining the meaning of the word "apparatus" in the context of heading 9022. For all the reasons discussed above, heading 9022 is not so broad as to encompass Trijicon's tritium lamps.

Finally, Trijicon misreads Explanatory Note 90.22(II). It first argues that because containers for radioactive material are "*normally* of steel coated with lead (bomb)," not all containers within "apparatus" of heading 9022 need to have an "aperture designed to let the radiations pass in one direction only." Trijicon Br. at 24 (emphasis added) (quoting Explanatory Note 90.22(II)). But the full sentence at issue provides that, in apparatus of heading 9022, a "radioactive substance is placed in a container, normally of steel coated with lead (bomb), which has an aperture designed to let the radiations pass in one direction only." Explanatory Note 90.22(II). A phrase that is "set aside by commas" (like "normally of steel coated with lead (bomb)") "stands independent of the language that follows." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *Apple Inc. v. United States*, 964 F.3d 1087, 1096–97 (Fed. Cir.

---

[5] Trijicon also claims that Customs, "in its internal documents," "refers to the subject merchandise as an 'apparatus,'" Trijicon Br. at 17, but the document that Trijicon cites was quoting Trijicon's internal advice request. *Compare* Pl.'s Ex. 3, ECF No. 28-4 at 2 ("This apparatus features gaseous tritium …. A crystal cap abuts the end of the tube and protects the glass tube within the apparatus."), *with* Pl.'s Ex. 1, ECF No. 28-2 at 19 ("At its heart, this apparatus features gaseous tritium …. A crystal cap abuts the end of the tube, and protects the glass tube within the apparatus.").

2020) (interpreting an Explanatory Note using rules of punctuation and grammar).  The modifier "normally" thus applies only to its antecedent ("container") and not to the subsequent phrase beginning "which has an aperture."  Containers for radioactive material in apparatus of heading 9022 thus *normally* will be lead-coated, but *always* will have "an aperture designed to let the radiations pass in one direction only."  Hermetically sealed tritium lamps, like Trijicon's merchandise, do not fit that bill.

Trijicon then says that Explanatory Note 90.22(II)'s use of the word "may"—in listing four "types" of covered apparatus that "*may* be distinguished, according to the radiations employed and the use for which they are designed"—means that the listed exemplars "'may' fall within" heading 9022.  Trijicon Br. at 25.  It is unclear how Trijicon arrived at this interpretation. The Explanatory Note simply is saying that the listed exemplars—not one of which resembles a hermetically sealed tritium lamp—can be categorized based on their radiation and use.

In sum, the guidance of the Explanatory Notes is consistent with the holding in *Gerson Co.*: "apparatus" are complex devices and machines, not "lamps."

### E.  GRI 3(a) Is Inapplicable

Trijicon argues in the alternative that its tritium lamps are classifiable under heading 9022 pursuant to GRI 3(a).  Trijicon Br. at 29–34.  GRI 3(a) provides in relevant part that "[w]hen … goods are, prima facie, classifiable under two or more headings, … [t]he heading which provides the most specific description shall be preferred to headings providing a more general description."  But as explained, under GRI 1, the lamps are classifiable solely under heading 9405.  Resort to GRI 3(a) is thus prohibited.  *Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998) ("As GRI 1 expressly provides, the other GRI provisions may be consulted only if the headings and notes 'do not otherwise require' a particular classification.").

Even if GRI 3(a) did apply, however, the lamps would still properly be classified under heading 9405 because the term "lamps" is more specific than heading 9022's "general description[]" of "apparatus."  General Explanatory Note to Chapter 90.  "Lamps" provide illumination.  "Apparatus," in Trijicon's estimation, can perform any function, making heading 9405 "more difficult to satisfy."  *Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1373 (Fed. Cir. 2009).  And, as noted, were both headings equally difficult to satisfy, heading 9405 beats heading 9022 because it appears later in the HTSUS.  GRI 3(c).

## **CONCLUSION**

For these reasons, the Court should grant the Government's cross-motion for summary judgment, deny Trijicon's motion for summary judgment, enter judgment in the Government's favor, and dismiss this action.

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

</div>

*Of Counsel:*
Michael A. Anderson
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection


Dated:  November 3, 2023

/s/ Luke Mathers
LUKE MATHERS
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9236
*Attorneys for Defendant*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| TRIJICON, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 22-00040 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## **CERTIFICATE OF COMPLIANCE**

I, LUKE MATHERS, a trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief in support of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, relying upon the word count feature of the word processing program used to prepare the brief, certify that this brief complies with type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 7,172 words.

/s/ Luke Mathers
LUKE MATHERS