**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: MARK A. BARNETT, CHIEF JUDGE**

|  |  |
|---|---|
| TRIJICON, INC., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 22-00040 |
| UNITED STATES, | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Respectfully Submitted,

*/s/ Alexander D. Chinoy*
Alexander D. Chinoy
Shara L. Aranoff
Cynthia Galvez
COVINGTON & BURLING LLP
850 10th St NW
Washington, D.C. 20001

Dated: December 8, 2023

**NONCONFIDENTIAL**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................. 1

ARGUMENT ................................................................................................................. 2

I.    Trijicon's Tritium Sight Inserts are Not Lamps of Heading 9405 .................................... 2

    A.    Court Cases Describing "Lamps" Do Not Support Classifying the Tritium Sight Inserts as Lamps in Heading 9405 ................................................... 2

    B.    The Explanatory Note to Heading 9405 Does Not Support Classification of the Tritium Sight Inserts as Lamps ................................................... 5

    C.    CBP Rulings Provide Additional Support that Classification of the Tritium Sight Inserts in Heading 9405 is Improper ......................................... 8

    D.    Shorthand References to Subject Merchandise as "Lamps" Do Not Support Classification Under Heading 9405, HTSUS ............................... 11

    E.    Trijicon's Tritium Sight Inserts Are "Elsewhere Specified or Included" ............ 15

II.    Trijicon's Tritium Sight Inserts Are Apparatuses Based on the Use of Beta Radiation Under Heading 9022, HTSUS ......................................................... 16

    A.    A Tritium Sight Insert Is an "Apparatus" Within The Meaning of Heading 9022 ................................................................................................... 16

    B.    The Explanatory Notes Confirm that the Tritium Sight Inserts Are Classified in Heading 9022 ............................................................... 24

    C.    Defendant's Counterarguments Are Unpersuasive ............................................. 27

    D.    Classification of the Tritium Sight Inserts in Heading 9022 Is Appropriate Because Heading 9022 Is More Specific than Heading 9405, Pursuant to GRI 3(a) ............................................................................................. 29

CONCLUSION ............................................................................................................. 31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agatec Corp. v. United States,*
  31 C.I.T. 847 (2007) ...................................................................................26

*Faus Grp., Inc. v. United States,*
  581 F.3d 1369 (Fed. Cir. 2009)...................................................................30

*Gerson Co. v. United States,*
  898 F.3d 1232 (Fed. Cir. 2018)............................................................. *passim*

*GRK Canada, Ltd. v. United States,*
  761 F.3d 1354 (Fed. Cir. 2014)...............................................................13, 14

*Lynteq, Inc. v. United States,*
  976 F.2d 693 (Fed. Cir. 1992).......................................................................5

*Orlando Food Corp. v. United States,*
  140 F.3d 1437 (Fed. Cir. 1998)....................................................................29

*Outer Circle Products v. United States,*
  590 F.3d 1323 (Fed. Cir. 2010)....................................................................26

*Photonetics, Inc. v. United States,*
  33 C.I.T. 1549 659 F. Supp. 2d 1317 (Ct. Int'l Trade 2009) ...................29

*Pomeroy Collection, Ltd. v. United States,*
  559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008) .............................................2, 4, 5, 6

*Rainin Instrument Co., Inc. v. United States,*
  288 F. Supp. 2d 1360 (Ct. Int'l Trade 2003) ...........................................13

**Statutes**

19 U.S.C. § 1202 ...............................................................................................1

**Other Authorities**

*Merriam-Webster Dictionary* ..................................................................16, 17, 20, 21

*Oxford English Dictionary* ...........................................................................21

*Webster's New World College Dictionary* ......................................................16

Customs Ruling HQ 960822 (Jun. 17, 1998)...................................................7

Customs Ruling HQ 086870 (July 20, 1990).................................................................9

Customs Ruling HQ 089963 (Nov. 21, 1991) .......................................................10, 27

Customs Ruling HQ H018500 (Feb. 8, 2008) ............................................................13

Customs Ruling HQ 088465 (Feb. 22, 1991) .............................................................19

Customs Ruling N184115 (Oct. 5, 2011) ...................................................................19

Customs Ruling NY D87786 (Mar. 5, 1999)..............................................................28

Customs Ruling NY C81556 (Nov. 18, 1997).............................................................28

Customs Ruling NY E80583 (May 10, 1999) .............................................................28

## INTRODUCTION

Trijicon, Inc. ("Plaintiff" or "Trijicon"), submits this response to the United States' ("Defendant" or the "Government") Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 31 ("Defendant's Motion"), pursuant to Rule 56. USCIT R. 56. The parties agree that summary judgment is appropriate in this case because there are no genuine issues of material fact in dispute. The only issue before this Court is the proper legal interpretation of the competing tariff provisions.

## SUMMARY OF THE ARGUMENT

Plaintiff's Tritium Sight Inserts (the "subject merchandise") are not properly classified under Heading 9405 of the Harmonized Tariff Schedule of the United States ("HTSUS")[1] as claimed by Defendant. Tritium Sight Inserts are very small devices that are coated internally with zinc sulfide (or phosphor) and are filled with tritium gas, which releases beta radiation. The beta radiation reacts with the phosphor to produce a glow, which illuminates aiming points in Trijicon's firearm sights and riflescopes. Trijicon's Tritium Sight Inserts are not "lamps" as the term is used in Heading 9405 and, even if they were, they are elsewhere specified or included. As such, the Tritium Sight Inserts are properly classified pursuant to GRI 1 in Heading 9022, as an apparatus based on the use of beta radiation.

Notably, Defendant's Motion has abandoned the rationale proffered by U.S. Customs and Border Protection ("CBP" or "Customs") in Internal Advice Ruling HQ H307905 (August 17, 2020), which led to this appeal. In its Internal Advice Ruling, CBP concluded the subject merchandise could not be classified in Heading 9022 because that heading "does not describe the

---

[1] The HTSUS is codified at 19 U.S.C. § 1202. All citations herein are to the 2019 edition of the HTSUS, and to the 2019 edition of the World Customs Organization's Explanatory Notes to the Harmonized Commodity Description and Coding System.

products entirely because it is the glowing colored phosphor that provides visibility to the user of

the firearm as an alignment aid at night or in low-light conditions."  Plaintiff's Exhibit ("Pl.'s Ex.")

02, HQ H307905 Internal Advice Ruling (Aug. 17, 2020), at 7 n.6. Instead, the Government now

argues that Trijicon's Tritium Sight Inserts are not an "apparatus" as that term is used in Heading

9022. Tellingly, Defendant does not support its new position with any reference to the deposition

of its own witness and the author of HQ H307905, Ms. Patricia Fogle, whose testimony supports

Trijicon's position. Because the Tritium Sight Inserts satisfy the "apparatus" language of Heading

9022, which in any event is more specific than Heading 9405, the Government's claim that the

subject merchandise is not specified or included elsewhere than in Heading 9405 must fail. To the

contrary, Trijicon's internal documents, and the testimony of both Trijicon's and CBP's witness

support classification of the subject merchandise in Heading 9022.

## ARGUMENT

I.      **Trijicon's Tritium Sight Inserts are Not Lamps of Heading 9405**

Classification of the Tritium Sight Inserts in Heading 9405 is improper because the term

"lamp" as used in Heading 9405 does not encompass the subject merchandise. Case law, dictionary

definitions, and other authority proffered by the Government do not support classifying the subject

merchandise as "lamps" in Heading 9405 that are "not elsewhere specified or included." Nor do

shorthand references to the subject merchandise as lamps in some documents demonstrate that

classification in Heading 9405 is proper.

A.      **Court Cases Describing "Lamps" Do Not Support Classifying the Tritium
        Sight Inserts as Lamps in Heading 9405**

The Government relies on *Gerson Co. v. United States*, 898 F.3d 1232 (Fed. Cir. 2018) and

*Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008) to support

its argument that the Tritium Sight Inserts should be considered "lamps" as that term is used in

Heading 9405. As detailed below, the distinct products at issue in those cases, as well as differences in the alternative classifications considered, demonstrate why the Government's reliance on those decisions is misplaced.

*Gerson* does not support classification of Trijicon's Tritium Sight Inserts in Heading 9405 for two principal reasons. First, Tritium Sight Inserts are nothing like the products at issue in *Gerson*. The products in *Gerson* are described as "finished decorative candle and tea light lamps made of plastic and/or wax. The lamps are designed to resemble ordinary candles, such as votive, pillar, taper, or tea light candles . . . [they] use battery-operated LEDs." *Gerson*, 898 F.3d at 1234. The Court's conclusion that decorative, electric candles and tea lights can be considered "lamps" does not support applying a similar term to Tritium Sight Inserts. The Tritium Sight Inserts are complex devices designed for a particular purpose. They are not "decorative," as were the electric candles in *Gerson*, but are instead apparatuses carefully constructed to contain and harness the radioactive material that provides illumination in Trijicon's firearm sights and riflescopes. Unlike the electric candles in *Gerson*, the subject merchandise that Trijicon imports here are specifically intended to glow within Trijicon's firearm products without an external power source. Further, the subject merchandise are used for the specific purpose of illuminating aiming points in Trijicon's gunsights. In sum, Trijicon's Tritium Sight Inserts are in no way analogous to the products at-issue in *Gerson*, such that the classification analysis in that case has neither binding nor persuasive value here.

Second, the alternative heading proposed by the plaintiff in *Gerson* was Heading 8543, a broad, general category encompassing "[e]lectrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter." *Id.* (quoting Heading 8543). The Court of Appeals held that Heading 8543 did not "cover Gerson's candles, which are decorative

articles that also serve an illuminative function," whereas those articles fell squarely within Heading 9405 as "[l]amps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included." *Id.* at 1236–37. *Gerson* therefore provides no support for the Government's claim that GRI 1 supports classification of Trijicon's Tritium Sight Inserts in Heading 9405 rather than Heading 9022, which the Court of Appeals was not called upon to interpret.

For the same reasons, *Pomeroy* also does not support classification of Trijicon's Tritium Sight Inserts as "lamps" in Heading 9405. The Government relies on *Pomeroy* to support its understanding of the definition of the term "lamp." *See* Def.'s Mot. at 10–11. First, as with *Gerson*, the products in *Pomeroy* are distinct from the Tritium Sight Inserts. The products at issue in *Pomeroy* were various types of candles incorporated into decorative glass vessels, which CBP liquidated in Heading 7013 as "[g]lassware of a kind used for table, kitchen . . . or similar purposes." *See Pomeroy*, 599 F. Supp. 2d at 1377–79 (for example, one of the variations of the candles "consists of a rustic iron stand roughly 15 inches tall . . ., a bell-shaped glass vessel  . . ., a packet of sand, a packet of small granite rocks, and a vanilla-scented pillar candle," which the user assembles by pouring sand into the glass vessel, positioning the candle on top, and arranging the stones around the base of the candle). The court found that the products "clearly fall[] within the broad description of '[n]on-electrical lamps' set forth in the Explanatory Note to heading 9405, which expressly includes lamps that use candles as a light source." *Id.* at 1387. As with *Gerson*, the products in *Pomeroy* were articles that were expressly listed in the Explanatory Notes to the Harmonized Commodity Description and Coding System (the "Explanatory Notes" or "ENs") to Heading 9405—candles. Distinctly, the Tritium Sight Inserts are not candles and are not one of the examples listed in the Explanatory Note to Heading 9405. There is nothing about the

merchandise examined or the court's classification logic in *Pomeroy* that compels or even supports classification of Trijicon's Tritium Sight Inserts in Heading 9405.

Second, the alternate heading the court considered in *Pomeroy*, Heading 7013—which provides for "[g]lassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes . . ."—is not analogous to Heading 9022, for apparatuses based on the use of various types of radiation. The court in *Pomeroy* found that Heading 7013 did not cover the decorative candles because the candles are "not 'glassware' *per se* (such as a vase), but [are] instead goods ready for assembly that have, *inter alia*, a *component* made of glass." *Id.* at 1388 (emphasis in original). Here, the terms of Heading 9022 fully describe the entirety of the Tritium Sight Inserts as an apparatus based on the use of beta radiation.[2] Neither the Court of Appeals in *Gerson* nor the Court of International Trade in *Pomeroy* considered or analyzed Heading 9022, which further limits the cases' applicability to the instant litigation.

**B.   The Explanatory Note to Heading 9405 Does Not Support Classification of the Tritium Sight Inserts as Lamps**

Explanatory Notes are not binding on the Court's analysis, but can be "indicative of proper interpretation" of the tariff schedule. *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992) (quoting H.R. Rep. No. 100-576, at 549 (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 1547, 1582). The EN to Heading 9405 confirms Trijicon's reading of Heading 9405 and cannot be squared with the Government's contention that the Tritium Sight Inserts are appropriately classified therein.

---

[2] The Government takes Trijicon's GRI 3(a) argument out of context in its motion in stating that Trijicon maintains that a "lamp" under Heading 9405 is simply a glass container. Def.'s Mot. at 11. Understood in the context of Trijicon's Motion, Trijicon argues that Heading 9022 is more specific than Heading 9405 because Heading 9022 contains a more specific description of the Tritium Sight Inserts as an apparatus based on the use of beta radiation.

The 2019 EN to Heading 9405 provides for:

> LAMPS AND LIGHTING FITTINGS, NOT ELSEWHERE SPECIFIED OR INCLUDED
>
> Lamps and lighting fittings of this group can be constituted of any material (excluding those materials described in Note 1 to Chapter 71) and use any source of light (candles, oil, petrol, paraffin (or kerosene), gas, acetylene, electricity, etc.). Electrical lamps and lighting fittings of this heading may be equipped with lamp-holders, switches, flex and plugs, transformers, etc., or, as in the case of fluorescent strip fixtures, a starter or a ballast.

In *Gerson,* the Court of Appeals noted that:

> That EN [EN 94.05] also provides examples of lamps that fall within the heading and includes those that are "normally used for the illumination of rooms" such as "chandeliers" and "table lamps," as well as "[c]andelabra" and "candlesticks." *Id.*; *see also Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1386 (Ct. Int'l Trade 2008) (noting that heading 9405 covers "candle holders and candle lamps"). The notes therefore suggest that chapter 94 was intended to include at least finished, standalone electric lamps used in the home.

898 F.3d at 1237. The court in *Gerson* ruled that because the products—decorative electrical candles—fell within the examples enumerated in the EN for Heading 9405, which included candlesticks and candelabra, and because Heading 9405 includes lamps that use electricity, classification of the electric candles in Heading 9405 was proper. *Id.* at 1237–38.

In contrast, Trijicon's Tritium Sight Inserts are not specifically provided for in the EN to Heading 9405. As explained in Trijicon's Motion for Summary Judgment ("Plaintiff's Motion"), the EN to Heading 9405 contemplates merchandise that the general public would traditionally understand to be "lamps" or "light fixtures," such as table lamps and candlesticks. *See Gerson*, 898 F.3d at 1237. While Trijicon acknowledges that the EN to Heading 9405 covers lamps "constituted of any material" and that use "any source of light," it does not follow that the Tritium Sight Inserts should therefore be classified in Heading 9405. The EN provides a lengthy list of

6

examples of merchandise that are covered by Heading 9405. None of those examples incorporate radiation. In addition, Heading 9405 is not the only HTSUS heading that could apply to a lamp; thus even if a device could be considered a "lamp," it does not logically follow that it must be classified in Heading 9405. *See, e.g.*, Heading 8513 (certain "[p]ortable electric lamps designed to function by their own source of energy") and Heading 8539 ("[e]lectrical filament or discharge lamps, including sealed beam lamp units and ultraviolet or infrared lamps; arc lamps").

Indeed, when Trijicon pressed the Government's witness on which examples listed within the EN to Heading 9405 are most analogous to the Tritium Sight Inserts, the Government maintained that it was "candelabra, candlesticks, candle brackets, e.g., for pianos" because those products are non-electrical merchandise that produce a glow. Pl.'s Ex. 04, Deposition Testimony of Patricia Fogle 154:9–18 (July 21, 2023) ("Fogle Dep."). The Tritium Sight Inserts—complex devices consisting of tritium gas and phosphor within a hermetically sealed glass capillary designed to function as an aiming aid in Trijicon's firearm sights and riflescopes—are entirely distinct from "candelabra, candlesticks, candle brackets, e.g., for pianos" that mainly serve to decorate and illuminate a space. *See* Customs Ruling HQ 960822 (Jun. 17, 1998) (classifying glow sticks, which are meant to emit light but are not meant to light a room, in Heading 3824, HTSUS, based upon the ENs, which included "[a]rticles producing a lighting effect by the phenomenon of chemiluminescence, e.g., lightsticks in which the lighting effect is obtained by a chemical reaction between oxalic acid type esters and hydrogen peroxide in the presence of a solvent and a fluorescent compound"). Thus, the fact that Tritium Sight Inserts emit a glow does not automatically place them in Heading 9405 along with items specifically enumerated in the EN.

7

### C.     CBP Rulings Provide Additional Support that Classification of the Tritium Sight Inserts in Heading 9405 is Improper

Customs rulings demonstrate that even if the Government were correct that the Tritium Sight Inserts meet the definition of a "lamp" as used in Heading 9405, the terms of the heading would still require the subject merchandise to be "not otherwise specified or included" for classification in Heading 9405 to be proper. Defendant's Motion does not acknowledge that there are a wide variety of products that emit light that are not classified in Heading 9405.

For example, CBP's rulings on glow sticks demonstrate that products that glow—*i.e.*, produce light—are not always classified as a "lamp" or in Heading 9405. In HQ 960822, CBP found that certain glow sticks were properly classified in Heading 3824 as "prepared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries . . . ." HQ 960822 (Jun. 17, 1998). CBP rejected the protestant's proposed classification of the glow stick as a "toy" based on the indicated use of the product in advertisements, and stated that although "the marketing of an article can help determine whether it falls into a particular category, marketing and advertising alone are not dispositive." *Id.* Instead, CBP noted that the glow stick was "made of chemical filled plastic tubing which is a waterproof, semi-durable product," and CBP cited the ENs to Heading 3824, HTSUS, which covered "[a]rticles producing a lighting effect by the phenomenon of chemiluminescence, e.g., lightsticks in which the lighting effect is obtained by a chemical reaction between oxalic acid type esters and hydrogen peroxide in the presence of a solvent and a fluorescent compound." *Id.*

Similarly, in HQ 086870, CBP considered the appropriate classification of "light sticks" that "are used in a variety of applications, including industrial and military applications calling for an illuminating function" and consist of "an outer flexible plastic tube which contains a mixture of chemicals and, in addition, another glass ampoule which in turn contains another chemical

mixture." Customs Ruling HQ 086870 (July 20, 1990). There, as well, CBP classified the products according to their chemical compounds, finding they should be classified as "prepared binders for foundry molds or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products)...other: mixtures containing 5 percent or more by weight of one or more aromatic or modified aromatic substances: other." *Id.*

Both of these CBP rulings help clarify why classification of the Tritium Sight Inserts in Heading 9405 according to the Government's reasoning is inappropriate. First, the glow sticks share certain characteristics with the subject merchandise: namely, an ampule filled with an illuminating substance. In the prior rulings, CBP was clear that the product's mere illuminating characteristic was not dispositive for a "lamp" classification. Indeed, CBP rejected an argument relying upon an importer's own description of the glow sticks as dispositive for classification—a position the Government now makes in the present litigation. *See* Def.'s Mot. at 10 (". . . Trijicon consistently calls the merchandise a 'lamp' in communications with its supplier, workers, customers, and chief regulator."). Second, it was the principal components of the glow sticks (*i.e.,* the chemical compounds that caused the glow) that determined the articles' classification, rather than the mere fact that they emit a glow.

Both considerations weigh against classification of the subject merchandise under Heading 9405 and indicate classification in Heading 9022 is proper: the Tritium Sight Inserts consist of at least a hermetically sealed glass ampule filled with tritium gas that interacts with the phosphor coating to produce a glow—much like the non-lamp glow sticks that CBP appropriately classified elsewhere in the HTSUS. Moreover, CBP's consideration of the glow sticks' predominant constituent elements is appropriate here, where the Tritium Sight Inserts' use of beta radiation is

the main distinguishing feature. These features outweigh any other references made in Trijicon's materials when determining classification.

One ruling where CBP classified a tritium filled glass light used to illuminate emergency exit signs under Heading 9405 is also readily distinguishable because the product was specifically provided for in the terms of Heading 9405. In HQ 089963, CBP considered the appropriate classification of "betalight," which "consists of a sealed glass tube internally coated with phosphor and filled with the radioactive gas tritium, which activates the phosphor to produce light." Customs Ruling HQ 089963 (Nov. 21, 1991). Crucially, the "betalight" was "used in the manufacture of emergency exit signs and in various other lighting applications as a non electrical form of illumination." *Id.* CBP turned to the ENs for Heading 9405, comfortably finding a description of the product as "identifiable parts of lamps and light fittings, illuminated signs, illuminated name-plates and the like, not more specifically covered elsewhere." *Id.* Because "betalight is used principally in illuminated emergency exit signs and similar products," CBP determined that "the betalight would be considered a part of illuminated signs and it would be classified in heading 9405, HTSUSA." *Id.*

Unlike the betalights in HQ 089963, which were accurately described by the terms of Heading 9405 ("illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included"), the Tritium Sight Inserts do not fit in any of the categories of described products described in Heading 9405. Indeed, the most analogous category that the Government has identified is not listed in the terms of the heading, but is rather an example of a "non-electrical lamp[] and light fitting[]" listed in the Explanatory Note to Heading 9405—"candelabra, candlesticks, candle brackets, e.g., for pianos" because those

products are non-electrical merchandise that produce a glow. Pl.'s Ex. 04, Fogle Dep. 154:9–18.[3] The subject merchandise are not analogous to candelabra, candlesticks, or candle brackets because they are not merely a light used to illuminate a space, but rather a complex device generating a glow from beta radiation to aid in the aiming of firearms.

Further, unlike the betalight that CBP previously considered to be appropriately classified under Heading 9405 as a part of an illuminated sign, neither Trijicon nor the Government contends that the Tritium Sight Inserts are "parts" of a product that is classified under Heading 9405, as described in the HTSUS or in the ENs. The Tritium Sight Inserts thus lack the fundamental features that would make classification in Heading 9405 appropriate.

### D. Shorthand References to Subject Merchandise as "Lamps" Do Not Support Classification Under Heading 9405, HTSUS

Defendant's Motion dedicates much attention to Bible quotes and the historical discovery of radiation—none of which is relevant to a GRI 1 analysis of the subject merchandise—and further relies upon various shorthand references to the subject merchandise as "lamps" as dispositive of classification under Heading 9405. Defendant's argument must fail for two reasons: first, because Defendant's emphasis on Trijicon's references to "lamps" fails to take into consideration the other terms that Trijicon and its supplier, mb-microtec, use to describe the subject

---

[3] In its motion, the Government also analogizes the Tritium Sight Inserts to the "specialized, separately imported machine lamps to which Explanatory Note 94.05(I) refers" and cites to HQ 966041 (Apr. 29, 2003), which dealt with a fluorescent sewing machine light designed to illuminate the area around the sewing machine. Def.'s Mot. at 10. Despite the Government's contention, the Tritium Sight Inserts are not similar to the specialized lamps in the Explanatory Note. As with the other products listed as examples in the Explanatory Note, the specialized lamps are all lamps intended for illuminating a space or for decor. *See* Explanatory Note 9405(I)(3) (listing "darkroom lamps; machine lamps []; . . . non-flashing beacons for aerodromes; shop window lamps; electric garlands (including those fitted with fancy lamps for carnival or entertainment purposes or for decorating Christmas trees").

merchandise; and second, because any shorthand usage of that term is not dispositive as a matter of law for classification purposes.

First, throughout its Motion and Additional Statement of Undisputed Material Facts, Defendant asserts that Trijicon's shorthand references in various communications to the subject merchandise as "lamps" should be given significant weight in support of classification under Heading 9405. *See* Def. Add'l Statement of Undisputed Material Facts ¶¶ 8–12 ("Def. Add'l SUMF"); Def.'s Mot. at 5, 10–11. In its Motion for Summary Judgment, Trijicon described the subject merchandise in this case as consisting of "*at least* a gaseous tritium light source (or 'GTLS'), which is a hermetically sealed glass capsule coated internally with zinc sulfide (or phosphor) and filled with tritium gas." Pl.'s Mot. 4–5 (emphasis in original). As Trijicon's Mr. Koesler explained in his deposition, the usage of "lamp" to refer to the subject merchandise and GTLSs more broadly is meant as a shorthand. *See* Pl.'s Ex. 06, Deposition Testimony of Paul Koesler 169:2–4 (June 7, 2023) ("Koesler Dep."). Indeed, unlike Defendant's assertion in Footnote 3 of its Motion that "GTLS" and not "lamp" is a shorthand for "gaseous tritium light source," Mr. Koesler explains in his deposition that when Trijicon refers to the subject merchandise as a "tritium lamp," it does so merely to avoid the inconvenience of spelling out "gaseous tritium light source" in every instance, and in fact uses "tritium lamp" and "tritium insert" interchangeably. *See id.* at 168:14–21. Mr. Koesler further explained that GTLS is "commonly used to refer to" the subject merchandise by the U.S. Nuclear Regulatory Commission because it is "the most specific name" for the Tritium Sight Inserts. *Id.* at 146:11–147:6.

Descriptions of the subject merchandise by Trijicon's supplier mb-microtec lend further support for Trijicon's position that "lamps" is merely a shorthand for the subject merchandise that does not dictate its proper classification. {███████████████████████████████

**NONCONFIDENTIAL - CONFIDENTIAL INFORMATION REDACTED**

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████ } Pl.'s Ex. 11, mb-

microtec AG Trigalight Presentation (July 3, 2011), at 8. Moreover, mb-microtec's trade catalog

refers to the product as "a self-powered illumination light source called trigalight" or "gaseous

tritium light sources" or "GTLS," and alternatively a "tactical insert." Pl.'s Ex. 14, mb-microtec

Trade Catalog (2020), at 4, 6, 14. Mb-microtec further analogizes the products to "a cathode ray

tube, which was once used in television screens," rather than a "lamp." *Id.* at 6. In sum, the

Government errs in focusing on one subset of references to the subject merchandise reflected in

some record documents (those using the shorthand term "lamps") to the exclusion of more precise

references in other record documents. Consequently, periodic references to the subject

merchandise as "lamps" do not merit the weight that the Government attributes to them.

Second, CBP and the courts have recognized that, as a matter of law, a name that *sometimes*

refers to the articles in colloquial usage does not determine how the article is classified. *See, e.g.*,

Customs Ruling HQ H018500 (Feb. 8, 2008) ("While this passage, read alone, might indicate that

marketing information and environment of sale are determinative of classification, this is not the

position of CBP."); *Rainin Instrument Co., Inc. v. United States*, 288 F. Supp. 2d 1360, 1366 (Ct.

Int'l Trade 2003) ("[W]hile the marketing of merchandise is a factor to be considered in

determining its classification, it is not dispositive.") (internal citations omitted). The Court of

Appeals has clearly stated that "even within the context of the HTSUS, we should not be 'so

trusting of our own notions of what things are as to be willing to ignore the purpose for which they

were designed and made and the use to which they were actually put.'" *GRK Canada, Ltd. v.*

*United States*, 761 F.3d 1354, 1361 (Fed. Cir. 2014) (quoting *United States v. Quon Quon Co.*, 46

13

**NONCONFIDENTIAL - CONFIDENTIAL INFORMATION REDACTED**

C.C.P.A. 70, 73 (1959)). Customs Rulings also follow this approach. For example, in HQ 960822 and HQ 086870, CBP classified glow sticks (aka "light sticks" or "lightsticks") according to their chemical components, *i.e.*, chemical mixtures consisting of cyalume chemicals. Indeed, in HQ 960822, CBP explicitly rejected the protestant's claim that the marketing of the product was dispositive for classification purposes. HQ 960822 (June 17, 1998) ("While it is true that the marketing of an article can help determine whether it falls into a particular category, marketing and advertising alone are not dispositive.").

A comparison to *GRK Canada* is also instructive. In that decision, the Court of Appeals considered whether the product at-issue—various screw designs—would be classified as "other wood screws" under 7318.12.00, HTSUS, or as "selftapping screws" under 7318.14.10, HTSUS. *GRK Canada, Ltd.*, 761 F.3d at 1356. The Court of Appeals stated that "use of the subject articles [can be] an important aspect of their identity and, consequently, the articles' classification," and that use can be important when "interpret[ing] tariff designations whose common commercial meaning includes the intended use of articles." *Id.* at 1358–59. Applying those considerations to the products before it, the Court of Appeals noted, with reference to the Explanatory Notes for the relevant heading, that "it is evident that the material with which the screw is intended to be used is inherent within the name of the *eo nomine* tariff classification 'other wood screw.'" *Id.* at 1359.

In the present case, similar facts exist. Trijicon and the Government agree that 9405.50.40, HTSUS, is an *eo nomine* provision. This classification covers "[l]amps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; illuminated signs, illuminated nameplates and the like, having a permanently fixed light source, and parts thereof not elsewhere specified or included: Non-electrical lamps and lighting fittings:

Other: Other." The Explanatory Note for Heading 9405, when explaining what the heading covers, includes:

> "[l]amps and lighting fittings *normally used for* the illumination of rooms"; "[l]amps *for exterior lighting*"; "[s]pecialised lamps, e.g. . . . non-flashing beacons *for aerodromes*"; "[l]amps and lighting fittings *for the vehicles of Chapter 86, for aircraft or for ships or boats*"; "[c]andelabra, candlesticks, candle brackets, e.g., *for pianos*."

EN Heading 9405 (2019). These examples from the enumerated list found in the EN for Heading 9405 indicate that the use of the merchandise is an important aspect of determining whether it meets the type of "lamp" appropriately classified under Heading 9405. None of the examples listed above—nor any of the other examples found in the EN—could even remotely be read to cover the subject merchandise in this litigation.

### E.    Trijicon's Tritium Sight Inserts Are "Elsewhere Specified or Included"

As explained in detail below and in Trijicon's Motion for Summary Judgment, the subject merchandise is properly classified in Heading 9022. Because Trijicon's Tritium Sight Inserts are classifiable in Heading 9022, they are precluded from classification in Heading 9405 given that they are "elsewhere specified or included." *See Gerson*, 898 F.3d at 1236 ("[f]or a lamp to be classifiable under heading 9405, . . . the plain language of the heading requires that the lamp not be 'elsewhere specified or included,' meaning that the lamp must not be covered by any other heading in any chapter of the HTSUS."). Thus, even if this Court finds that the imported Tritium Sight Inserts could *prima facie* qualify for classification in Heading 9405, the "not elsewhere specified or included" limitation dictates that classification in Heading 9405 is improper because the subject merchandise are also *prima facie* classifiable in Heading 9022. GRI 1 requires looking to the terms of the relevant headings to classify merchandise. Defendant's classification of the

15

subject merchandise in a provision with the phrase "not elsewhere specified or included" must fail where other headings might apply.

## II.     Trijicon's Tritium Sight Inserts Are Apparatuses Based on the Use of Beta Radiation Under Heading 9022, HTSUS

Classification of the subject merchandise in Heading 9022 is proper under a GRI 1 analysis because each model of the subject merchandise is an "apparatus" and is "based on the use of beta radiation." The Tritium Sight Inserts are covered by the express terms of Heading 9022. The subject merchandise are complex devices and consist of a set of materials which, when combined, are used to illuminate aiming points in Trijicon's gun sight products. The use of beta radiation is essential to the subject merchandise's ability to function as an aiming aid. Furthermore, even if, *arguendo*, Heading 9405 could also apply to the subject merchandise, GRI 3(a) dictates that Heading 9022 is the more specific classification.

### A.     A Tritium Sight Insert Is an "Apparatus" Within The Meaning of Heading 9022

In Defendant's Motion, the Government argues that Trijicon's Tritium Sight Inserts may not be classified under Heading 9022 because a Tritium Sight Insert is not an "apparatus." Contrary to the Government's claim, Trijicon's definition of "apparatus" is not outdated and has not been discredited by more recent case law. In fact, *Gerson* recites a near identical definition to that which appears first in the *Merriam-Webster Dictionary* ("a set of materials or equipment for a particular use").[4] *Gerson* states: "On the other hand, the terms 'machine' and 'apparatus'

---

[4] Defendant's Motion mischaracterizes the holding in *Gerson*, stating that "The Federal Circuit recently explained in *Gerson Co.* that an 'apparatus' is a 'complex device or machine for a specific use,' and held that 'lamps' such as battery-powered LED candles do not meet that definition." Def.'s Mot at 8. *Gerson* did not purport to adopt a single definition for the term "apparatus" as implied in Defendant's Motion. *See, e.g.,* Def.'s Mot. at 13 ("First, the Federal Circuit's reasoning in *Gerson Co.* rejects Trijicon's position. That decision defines an 'apparatus' as a 'complex device or machine for a specific use' and effectively holds that a 'lamp' is not an 'apparatus' for purposes

generally connote equipment designed specifically to carry out a particular function." 898 F.3d at 1236 (citing Webster's New World College Dictionary 67 (4th ed. 2009)). The Government is correct in pointing out that *Gerson* also quotes the second-listed definition for apparatus in the *Merriam-Webster Dictionary*, which is "any complex device or machine for a specific use."[5] Based on either of the two definitions of "apparatus" referenced in *Gerson*, each of Trijicon's Tritium Sight Inserts is an "apparatus" within the meaning of Heading 9022. The subject merchandise are both "a set of materials . . . for a particular use" and a "complex device . . . for a specific use."

    1.  "Set of materials . . . for a particular use"

   The Tritium Sight Inserts at-issue in this litigation comfortably fit within the first definition in the *Merriam-Webster Dictionary*—that is, a "set of materials . . . for a particular use"—because the subject merchandise consist of several component parts (such as tritium gas, phosphor, and a glass capillary) that work together to facilitate the aiming of Trijicon's iron sights and riflescopes.[6]

    a)  *The Tritium Sight Inserts are a "set of materials"*

   First, the subject merchandise are a "set of materials." Defendant asserts that the components of the Tritium Sight Inserts are not themselves "materials," but instead that a Tritium

---

of the HTSUS."). Nor did the Court of Appeals hold that a "lamp" is not an "apparatus." The Court of Appeals in *Gerson* instead held that Gerson's electric candles are classifiable under subheading 9405.40.80. *Gerson*, 898 F.3d at 1241. Putting aside Defendant's erroneous characterization of *Gerson*, Trijicon's Tritium Sight Inserts meet both definitions of "apparatus" recited in *Gerson*.

[5] 898 F.3d at 1236. Although *Gerson* points to *Webster's New World College Dictionary* as the source of this definition for "apparatus," the definition in *Webster's* is identical to that found in the *Merriam-Webster Dictionary*.

[6] As Trijicon highlighted in its Motion for Summary Judgment, Defendant's witness ultimately did not refute Trijicon's characterization of the subject merchandise as "a set of materials for a particular use." *See* Pl.'s Mot. at 16 (quoting Pl.'s Ex. 06, Fogle Dep. 137:17–138:5).

Sight Insert "is just one 'material' (that is, one tool or piece of equipment), not a set thereof." Def.'s Mot. at 8; *see also* Def.'s Mot. at 14 ("Trijicon misunderstands the word 'materials.'").[7] This position is curious given that Defendant, elsewhere in the same motion, refers to the components of the Tritium Sight Inserts as "materials." Moreover, treating the constituent components of Tritium Sight Inserts as "materials" (plural) is consistent with the common meaning of the term.

When describing how the tritium gas inside the glass capillary interacts with the zinc sulfide phosphor interior coating, Defendant explains that "*[r]adioactive materials* produce light through radioactive decay," and that "[e]nergized sub-atomic particles shoot off of *radioactive material*, which is unstable, during its decay into a more stable element." Def.'s Mot. at 2 (citing *Radioactivity*, The Columbia Encyclopedia 2350–51 (Paul Lagassé ed., 6th ed. 2000)) (emphasis added). Shortly thereafter, Defendant describes the phosphor coating as a "material" when explaining that "[w]eaker radiation can ionize a phosphor—a substance consisting of a *host material like a sulfide* and an activator such as copper or zinc that, when energized, produces light." Def.'s Mot. at 3 (citing *Phosphorescence*, The Columbia Encyclopedia 2216 (Paul Lagassé ed., 6th ed. 2000)) (emphasis added). Later in the motion, the Government describes merchandise classifiable within Heading 9022 as encompassing a subset of "[c]ontainers for *radioactive materials* in apparatus." Def.'s Mot. at 23 (emphasis added).

---

[7] Interestingly, the Government appears to argue the same point differently depending on the word that is being interpreted: while the Government argues that the term "apparatus" should have the exact same meaning in every heading of the HTSUS, it also claims that "material" can be understood differently depending on the "context." *Compare* Def.'s Mot. at 15 ("Although *Gerson Co.* interpreted the word 'apparatus' in heading 8543, rather than heading 9022, its reasoning is still relevant for the interpretation of the term as it appears in heading 9022."), *with id.* at 17 ("Trijicon tries to avoid this conclusion by taking the word 'materials' out of its context."). The Government cannot have it both ways.

As Defendant's Motion illustrates, the word "materials" is a broad term, and Trijicon's use of the term in its Motion for Summary Judgment comports with its common understanding. This understanding also makes sense in the particular context of the definition of "apparatus." There is no text in the dictionary definition of "apparatus" or in *Gerson* to suggest, as the Government claims, that Heading 9022 applies only to an imported article consisting of several different devices working together as a machination rather than a discrete, individual article designed for a particular purpose. *See, e.g.*, Customs Ruling HQ 088465 (Feb. 22, 1991) (classifying a research irradiator in Heading 9022); Customs Ruling N184115 (Oct. 5, 2011) (classifying an Optical Heating Crystallization Device in Heading 9022). Contrary to the Government's argument, the type of "apparatus" referred to in Heading 9022 is not limited to several different devices working together as a machination, but includes discrete individual articles designed for a particular purpose. In light of the Government's own expansive adoption of the commonly understood meaning of the term "materials," its attempt to narrow that term's definition in this context must fail.

### b)   *The Tritium Sight Inserts serve "a particular use"*

Second, the Tritium Sight Inserts serve a "particular use." The Government acknowledges in its motion that the Tritium Sight Inserts are specially designed for a particular purpose but later attempts to discredit that admission by suggesting that *any* article can be interpreted as having a special purpose. The Government maintains that the Tritium Sight Inserts can still be considered lamps "despite their unique energy source and specialized uses." Def.'s Mot. at 11. However, the Government later criticizes Trijicon's interpretation of an apparatus with "a particular use," suggesting it would lead to such "overly broad" results as "a glass of water would be an apparatus for quenching thirst; a shoe would be an apparatus for walking; [or] a printed brief would be an apparatus for persuading a judge." Def.'s Mot. at 18. This oversimplification of Trijicon's position is without merit. As the Government readily admits, the Tritium Sight Inserts are specialized. As

imported by Trijicon, they serve a sophisticated and specific use: the glow from the beta radiation emitted inside the inserts are used to aid in aiming firearms. The Government acknowledges as much, and then attempts to reduce and obfuscate the point by arguing that any object can be used for a special purpose. Such an argument denies the clear specialized nature of Tritium Sight Inserts, which rely upon radioactive materials interacting with a host material inside a hermetically sealed glass capillary to produce light.[8]

### 2.   "Complex device or machine for a specific use"

Trijicon's Tritium Sight Inserts further meet the definition that Defendant relies upon in its motion: a "complex device or machine for a specific use" because they are small, high-precision devices designed to harness beta radiation within precisely crafted glass ampules and emit light radiation in a defined direction to provide users with a glowing alignment aid.

#### a)   *The Tritium Sight Inserts are "devices" that are "for a specific use"*

The Government alleges that the subject merchandise are not the type of "complex devices or machines" of Heading 9022. Def.'s Mot. at 14–16. Defendant's Motion implicitly concedes that the subject merchandise are a "device." *E.g.*, Def.'s Mot. at 9 ("A 'lamp' is any of various devices for producing light or heat . . ."), 10 ("It is a device that produces light by energizing a phosphor."). The *Merriam-Webster Dictionary* defines "Device" as: "a piece of equipment or a mechanism for a special purpose." Pl.'s Ex. 19, *Device*, Merriam-Webster Dictionary (2022). This definition is

---

[8] The Government's argument further misses the point and takes unsupported logical leaps by suggesting that "[a]ny article that consists of more than one substance is a 'set of materials' and thus an apparatus." The Government again ignores the rest of the terms in the definition for "apparatus"—"a set of materials **for a particular use**." A glass of water can quench thirst, it can also be used for watering plants, cleaning a car, or washing hands. A shoe can be used for walking, it can also be used for standing or for protection. A printed brief can be used to persuade a judge, but it can also be used for teaching. None of the examples listed by the Government have a "particular use," they have numerous potential uses. Trijicon's imported Tritium Sight Inserts have a particular use—illuminating aiming points in Trijicon's products.

essentially the same as the definition for "apparatus." And, as explained in detail above, Trijicon's Tritium Sight Inserts are "for a specific use." The subject merchandise facilitate the aiming of the firearm into which the riflescopes and iron sights are installed, by creating (and making visible) a specific glowing aiming point a firearm user can view in low light (either directly or through an optical fiber).

<em>b)</em> <u><em>The Tritium Sight Inserts are "complex"</em></u>

Notably, Defendant does not cite to any dictionary definition for the term "complex." Nor does *Gerson* provide further detail on what characteristics a device must possess to make it "complex." The Government simply asserts, without supporting authority, that the definition "complex device or machine for a specific use" "does not cover mere illuminative articles like the tritium lamps at issue, especially considering that they cannot, unlike more complex light sources such as LEDs, be turned on and off, dimmed, or brightened." Def.'s Mot. at 15. This perhaps suggests that the Government considers "complex[ity]" to require features that allow for manipulation of the amount of light the device gives off. However, this ignores that the term "complex" is broad and can refer to numerous types of characteristics. In fact, Defendant's Motion dismisses without any explanation that the complex production process necessary to manufacture the Tritium Sight Inserts could satisfy the definition of "complex." *See* Def.'s Mot. 20 ("The lamps, despite being manufactured with high-precision machines . . .").

The *Merriam-Webster Dictionary* defines "complex" as "composed of two or more parts." Pl.'s Ex. 20, *Complex*, Merriam-Webster Dictionary (2022). The *Oxford English Dictionary* similarly defines "complex" as "Consisting of or comprehending various parts united or connected together; formed by combination of different elements; composite, compound;" or, "Consisting of parts or elements not simply co-ordinated, but some of them involved in various degrees of subordination; complicated, involved, intricate; not easily analysed or disentangled." Pl.'s Ex. 21,

21

*Complex*, Oxford English Dictionary, 2nd ed. (1991) (available in online version at: https://www.oed.com/dictionary/complex_adj?tab=meaning_and_use#8833579).[9] The subject merchandise easily meet these three dictionary definitions.

First, the subject merchandise are "composed of two or more parts." As imported, the subject merchandise contain at least the glass capillary, the interior phosphor coating, and the tritium gas. The typical cylindrical inserts described above have additional components, namely the glowing glass capillaries are further encased in a metal housing. Pl.'s Statement of Undisputed Material Facts ("SUMF ¶ 41"). A crystal cap (also referred to as a "sapphire lens") abuts the end of the tube, and protects the glass tube. Pl.'s SUMF ¶ 41. In the case of the rectangular inserts, the rectangular glass ampule is further painted with white paint on all but one primary surfaces. Pl.'s SUMF ¶ 62. Thus, the inserts at the very minimum are comprised of three parts. These parts are "hard to separate." None of the individual components of the subject merchandise can function on its own to illuminate the aiming points in Trijicon's products: without the tritium gas, the phosphor would not illuminate; without the phosphor, the tritium's beta radiation would be invisible; and without the glass, there would be no way to pair the tritium and the phosphor. The device components function in concert to achieve this purpose.

Second, the subject merchandise can also be described as "Consisting of or comprehending various parts united or connected together; formed by combination of different elements; composite, compound." As explained above, the subject merchandise consist of various parts that are "united or connected together" and which cannot function on their own to achieve the illumination of aiming points. The manufacturer of the subject merchandise must first produce the glass capillaries by heating large glass tubes and "creating thin glass capillaries of the desired

---

[9] This definition lists "A very complex Apparatus" as an example.

dimension," next the inside of the glass capillary is coated with zinc sulfide, then the capillary is filled with tritium gas, and the glass capillary is then "cut to the desired length and at the same time hermetically sealed by a highly automated laser melting machine." Pl.'s Ex. 22, Technology, *Trigalight*, https://trigalight.com/technology/. Moreover, Trijicon's Tritium Sight Inserts are characterized by their "high precision" as described in the EN to Chapter 90. The Tritium Sight Inserts are designed to harness beta radiation within very small, precisely crafted glass ampules, which are internally coated with specialized phosphors that are activated by the beta radiation emitted by the tritium and in turn emit light radiation of desired color temperatures in a defined direction to maximize the glow and therefore maximize the product's function of providing users with a glowing self-contained long-life alignment aide. Pl.'s SUMF ¶¶ 13, 20–23. {█████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████} Pl.'s Ex. 11, mb-microtec AG Trigalight

Presentation (July 3, 2011), at 11; Pl.'s SUMF ¶ 28.

Third, the subject merchandise can be described as "Consisting of parts or elements not simply co-ordinated, but some of them involved in various degrees of subordination; complicated, involved, intricate; not easily analysed or disentangled." The Tritium Sight Inserts, as discussed above, consist of several elements that are not easily disentangled from each other. The glass capillary cannot be opened without the tritium gas leaking into the air, which would cause the insert to cease its ability to function, as there would be no radiation to energize the zinc sulfide. Other elements are subordinate to the tritium gas and zinc sulfide, for example, the crystal cap aids users by acting as a window, and the white paint also ensures that the sight aid is sufficiently

visible in the riflescope's reticle pattern. These features enhance the subject merchandise's function.

In sum, Defendant's Motion's attempts to obfuscate the GRI 1 analysis with unsupported and undefined references to material(s), device(s), and complexity are misplaced. As this Response shows, the Tritium Sight Inserts satisfy in full the express language of Heading 9022 in that each individual Tritium Sight Insert is an "apparatus"—and nowhere in its Motion did Defendant argue that Tritium Sight Inserts are not "based on . . . beta radiation."[10]

**B.     The Explanatory Notes Confirm that the Tritium Sight Inserts Are Classified in Heading 9022**

The EN to Chapter 90 supports classification of the subject merchandise in Chapter 90, and more specifically, in Heading 9022. The EN to Chapter 90 states that: "This Chapter covers a wide variety of instruments and apparatus which are, as a rule, characterised by their high finish and high precision." Trijicon's Tritium Sight Inserts are characterized by their "high precision."

The Tritium Sight Inserts are designed to harness beta radiation within very small, precisely crafted glass ampules, which are internally coated with specialized phosphors that are activated by the beta radiation emitted by the tritium and in turn emit light radiation of desired color temperatures in a defined direction to maximize the glow and therefore maximize the product's function of providing users with a glowing self-contained long-life alignment aide. Pl.'s SUMF ¶¶ 13, 20–23. { ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████ } Pl.'s Ex. 11, mb-microtec AG Trigalight Presentation (July 3, 2011), at 11; Pl.'s SUMF ¶ 28.

---

[10] Instead of contesting whether the subject merchandise is based on beta radiation, Defendant argues that the subject merchandise is not an "apparatus." Def.'s Mot. at 2.

**NONCONFIDENTIAL - CONFIDENTIAL INFORMATION REDACTED**

The EN to Heading 9022 likewise supports classification of Trijicon's Tritium Sight Inserts in Heading 9022. As Trijicon explained in its Motion for Summary Judgment, the EN is illustrative, and provides examples of the types of devices that may be classified in the heading. There is no language in the text of the EN to Chapter 90 or the EN to Heading 9022 that precludes classification of the subject merchandise in 9022.[11]

Moreover, even if this Court adopts the Government's interpretation of the EN to Heading 9022, that a device within Heading 9022 must incorporate "an aperture designed to let the radiations pass in one direction only," the Tritium Sight Inserts would still come within the description of the EN because the subject merchandise consist of an aperture that allows for light radiation to pass in one direction.

Trijicon explained in its Motion for Summary Judgment that:

> "The Tritium Sight Inserts are designed to harness beta radiation within very small, precisely crafted glass ampules, which are internally coated with specialized phosphors that are activated by the beta radiation emitted by the tritium **and in turn emit light radiation of desired color temperatures in a defined direction** to maximize the glow and therefore maximize the product's function of providing users with a glowing self-contained long-life alignment aide."

Pl.'s Mot. at 22–23 (citing Pl.'s SUMF ¶¶ 13, 20–23). Trijicon's response to the Government's Interrogatory No. 5 further explains that:

> [E]ach product covered by the subject entries contains an aperture designed to let light radiation pass in one direction only. . . . The beta radiation reacts with the zinc sulphide to produce a luminescent glow, which is light radiation. This resulting light radiation passes in one direction due to the design of the aperture, which directs the light radiation towards the user's eye, or toward the reticle inside an optic, providing users with a glowing alignment aide. The capillary in each sight insert is either sleeved,

---

[11] Defendant's witness during the deposition agreed with Trijicon's reading of the ENs as providing illustrative, and not exhaustive, examples. *See* Pl.'s Ex. 04, Fogle Dep. at 143:9-23.

>painted on all sides except one, or intended to let light radiation
>pass in one direction only once the sight insert is installed into to
>the iron sight or riflescope.

Pl.'s Ex. 23, Pl.'s Resp. to Interrog. No. 5 (Jan. 13, 2023).

With respect to products where the capillary was installed into a sleeve, the light radiation only passes through the viewing end of the sleeve (through the crystal cap). As to the Tritium Sight Inserts containing non-sleeved capillary assemblies, which Trijicon uses in the manufacture of optical sights, the glass capillary assembly is painted on all sides except one with a white paint so that visible light radiation only emanates from one surface of the capillary assembly. *Id.*[12]  Finally, in the few products in which the glass capillary assembly is not purchased and imported by Trijicon already installed into a sleeve or painted on all but one side, the sight insert is installed by Trijicon only into Trijicon products with only one open end such that light radiation passes in one direction only. *Id.* Thus, the subject merchandise satisfy the text of the EN to Heading 9022 because the Tritium Sight Inserts are designed to direct light radiation toward the user's eye or toward the reticle inside an optic, and do so by "let[ing] the radiations pass in one direction only."

---

[12] Trijicon's witness Mr. Koesler explained this concept:

>Q: What do you mean by "aperture" there?
>
>A: An opening for the light to go through, so the light does not
>pass out of the painted sides when you're looking at the product. It
>just passes through the unpainted side.
>
>Q: Okay. How does the paint do that?
>
>A: Same way that a white wall reflects light, right. The light hits it,
>and it just – you know, the photons reflect off it.

Pl.'s Ex. 06, Koesler Dep. at 128:19–129:7.

### C.    Defendant's Counterarguments Are Unpersuasive

Contrary to the Government's assertion, classification of Trijicon's Tritium Sight Inserts in Heading 9022 will not limit Heading 9405 to non-radiation-powered lamps.[13] Classification is a product-specific inquiry, and the Court's decision in this case will be limited to Trijicon's Tritium Sight Inserts. *See Outer Circle Products v. United States*, 590 F.3d 1323, 1325 (Fed. Cir. 2010) ("A classification decision involves . . . determining which heading ***the disputed goods*** fall within") (emphasis added); *Agatec Corp. v. United States*, 31 C.I.T. 847, 851 (2007). In any event, classification of Tritium Sight Inserts in Heading 9022 would not preclude any other hypothetical device that uses radiation from classification in Heading 9405, if that classification was otherwise proper. *See, e.g.*, Customs Ruling HQ 089963 (Nov. 21, 1991).

In *Gerson*, the Court of Appeals agreed with the U.S. Court of International Trade, that:

> If one were to read heading 8543 as covering Gerson's candles, it would cover every electric lamp, because all such lamps use electricity to generate light. And, by operation of Note 1(f), such lamps could not be classified under heading 9405. In other words, heading 9405 would be constrained to only non-electric lamps. That reading, as the Trade Court noted, "would impose a specific, and drastic, limitation on the scope of heading 9405, HTSUS that the article description for that heading does not express or suggest." *Gerson*, 254 F.Supp.3d at 1278. In fact, such a reading would effectively remove electric "searchlights" and "spotlights" from heading 9405 even though those devices are expressly

---

[13] The Government's argument that classification of the Tritium Sight Inserts in Heading 9022 would require a "hyper-technical" reading of the heading description is similarly unpersuasive, as it ignores the relevant context in *Gerson*. Heading 8543, "[e]lectrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter" is much more general in scope than Heading 9022, which covers "Apparatus based on the use of X-rays or of alpha, beta or gamma radiations." Further, in *Gerson* the Court of Appeals took issue with classifying the decorative electrical candles in Heading 8543 because the heading did not specifically describe the product. *Gerson*, 898 F.3d at 1236.  In contrast, Heading 9022 specifically describes the Tritium Sight Inserts, as an "apparatus based on the use of . . . beta . . . radiation." It is an unsupported leap beyond the Court of the Appeals' logic in *Gerson* for the Government to suggest that because the term "lamp" as used in Heading 9405 was a better fit for the electrical candles in *Gerson* than a broader machine classification, then Heading 9022 does not apply to the Tritium Sight Inserts.

provided for in that heading. *See* HTSUS Hdg. 9405 ("Lamps and lighting fittings including searchlights and spotlights and parts thereof' (emphasis added)).

898 F.3d at 1237. By contrast, classification of the Tritium Sight Inserts in Heading 9022 will not "impose a specific and drastic" limitation on the scope of Heading 9405. The product at issue in *Gerson* was an electric candle used to decorate and illuminate rooms. The Court of Appeals took issue with classification of the product in *Gerson* in Heading 8543, as an "[e]lectrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter."

Distinctly, Trijicon's Tritium Sight Inserts are high-precision devices, which harness the beta radiation and zinc sulfide coating within the device, ultimately to facilitate the aiming of firearms. There are far fewer devices that rely upon beta radiation to achieve illumination than there are "lamps and light fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included," and classifying the Tritium Sight Inserts under Heading 9022 would not have an impact equivalent to limiting Heading 9405 "to only non-electric lamps" as was the case in *Gerson*. Classification of the subject merchandise in Heading 9022 would therefore not result in a "drastic" limitation on the scope of Heading 9405, even if that heading were *prima facie* proper. Indeed, multiple examples exist of goods that could be classified in Heading 9405 as a non-electrical lamp. *E.g.*, Customs Ruling NY D87786 (Mar. 5, 1999) (classifying rattan torchlight); Customs Ruling NY C81556 (Nov. 18, 1997) (classifying conical glass lamp with cotton wicking); Customs Ruling NY E80583 (May 10, 1999) (classifying ceramic candle holder).

Further, Trijicon above describes another ruling, where CBP found that a device that incorporates beta radiation should be classified in Heading 9405 because it "is used principally in illuminated emergency exit signs and similar products." HQ 089963 (Nov. 21, 1991). As Heading 9405 covers "illuminated name-plates . . . and parts thereof," classification in Heading 9405 was proper in that instance. Trijicon thus maintains that Defendant's argument that classification under

Heading 9022 would somehow drastically narrow the scope of what remains classifiable in Heading 9405 ignores that a classification decision made by this Court with respect to the subject merchandise in this litigation only applies to the subject merchandise, and not to any separate hypothetical product that incorporates radiation and has illuminating functions.

**D.    Classification of the Tritium Sight Inserts in Heading 9022 Is Appropriate Because Heading 9022 Is More Specific than Heading 9405, Pursuant to GRI 3(a)**

Plaintiff contends that this case can be resolved under GRI 1, because the Tritium Sight Inserts are properly classifiable under Heading 9022 as apparatuses based on the use of beta radiation, and are not classifiable under Heading 9405 as "[l]amps and lighting fittings." However, even if the Court were to find the Tritium Sight Inserts to be classifiable under both Heading 9022 and Heading 9405, GRI 3(a) dictates that Heading 9022 is the more specific heading, and thus is the proper classification. GRI 3(a) states:

> When, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows:
>
> (a) The heading which provides the most specific description shall be preferred to headings providing a more general description.

As Trijicon explains in its Motion for Summary Judgment, Heading 9022 is more specific than Heading 9405 because it contains terms that are more difficult to satisfy, and describes the goods with more accuracy and certainty. *See* Pl.'s Mot. at 29–31.

The Government has highlighted that merchandise classified in Heading 9405 "can be constituted of any material" and can "use any source of light." *See, e.g.*, Def.'s Mot. at 2. In contrast, Heading 9022 applies only to "Apparatus based on the use of X-rays or of alpha, beta or gamma radiations." As discussed above, Heading 9405 is a basket provision for certain lamps and

light fittings, while Heading 9022 provides specifically for apparatuses based on x-rays, alpha, beta, or gamma radiation, which is a narrower and more precise description.

In addition, Heading 9022 encompasses goods that require more processing and is therefore the more difficult provision to satisfy. *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1441 (Fed. Cir. 1998) (finding that Heading 2103, which covers preparations for sauces, is more specific than Heading 2002, which covers prepared and preserved tomatoes, because it requires more processing and is therefore more difficult to satisfy). As explained above, mb-microtec must first heat large glass tubes in order to create the glass ampules, and then coat the inside of the glass capillary with zinc sulfide. The ampule is then filled with the tritium gas and cut to the appropriate length and sealed using a "highly automated laser melting machine." Pl.'s Ex. 22, Technology, *Trigalight*, https://trigalight.com/technology/. In addition to these high-precision manufacturing steps performed by mb-microtec, the radioactivity of the Tritium Sight Inserts necessitates specialized handling and safety protocols unique to substances that emit radiation—a far smaller universe of products than those that can be classified as a "lamp." *See, e.g.*, Def.'s Ex. 01, Koesler Dep. 202:1-203:10. These processes are certainly more difficult to perform than combining a lightbulb, wires, and a base into an electric candle.

Finally, Heading 9022 describes the subject merchandise with the greatest degree of accuracy and certainty. Heading 9022 names the exact type of radiation—beta radiation—that the Tritium Sight Inserts contain. This beta radiation is essential to the subject merchandise's purpose, to illuminate aiming points in Trijicon's iron sights and riflescopes. *See Photonetics, Inc. v. United States*, 33 C.I.T. 1549, 1569 659 F. Supp. 2d 1317, 1333 (Ct. Int'l Trade 2009) ("Courts undertaking the GRI 3(a) comparison 'look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty.'")

(quoting *Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1373 (Fed. Cir. 2009)); Pl.'s SUMF ¶¶ 12–23. By contrast, Heading 9405 only describes the subject merchandise to the extent that they produce light, and as discussed above, many other products produce light and can be classified in headings other than Heading 9405. *See infra*, Section II.B. Heading 9405 contains a wide variety of electric and non-electric lamps and lighting fittings and encompasses a wider range of products than those in Heading 9022, which rely upon beta radiation to achieve a functional result. As such, Heading 9022, which specifically provides for apparatus based on beta radiation, is a more specific description of the Tritium Sight Inserts, than the more general "[l]amps and lighting fittings . . . and parts thereof not elsewhere specified or included" provision in Heading 9405 and specifically, in 9405.50.40, HTSUS.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court issue summary judgment in its favor and order Customs to reliquidate the subject entries with classification in Subheading 9022.29.80, HTSUS, and to refund excess duties paid with interest as provided by law.

31

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Standard Chambers Procedures of the U.S. Court of International Trade, this Memorandum of Law in Response to Defendant's Cross-Motion for Summary Judgment contains 10,222 words, as determined by Microsoft Word. This word count is within the limit of 14,000 words set forth in Rule 2(B).


/s/*Alexander D. Chinoy*
Alexander D. Chinoy
Shara L. Aranoff
Cynthia Galvez
COVINGTON & BURLING LLP
850 10th St NW
Washington, D.C. 20001
achinoy@cov.com
(202) 662-5559

Dated: December 8, 2023

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 8, 2023, I served a copy of Trijicon Inc.'s attached Memorandum of Law in Response to Defendant's Cross-Motion for Summary Judgment  with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record, including Luke Mathers, counsel to the United States.


<u>/s/*Alexander D. Chinoy*</u>
Alexander D. Chinoy
Shara L. Aranoff
Cynthia Galvez
COVINGTON & BURLING LLP
850 10th St NW
Washington, D.C. 20001
achinoy@cov.com
(202) 662-5559

Dated: December 8, 2023