Slip Op. 24-18

### UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TRIJICON, INC., | |
| Plaintiff, | |
| v. | Before: Mark A. Barnett, Chief Judge |
| UNITED STATES, | Court No. 22-00040 |
| Defendant. | |

### <u>OPINION</u>

[Denying Plaintiff's motion for summary judgment and granting Defendant's cross-motion for summary judgment.]

Dated: February 16, 2024

<u>Alexander D. Chinoy</u>, <u>Shara L. Aranoff</u>, and <u>Cynthia Galvez</u>, Covington & Burling LLP, of Washington, DC, for Plaintiff Trijicon, Inc.

<u>Luke Mathers</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for Defendant United States.  With him on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Justin R. Miller</u>, Attorney-In-Charge, International Trade Field Office.  Of counsel on the brief was <u>Michael A. Anderson</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Barnett, Chief Judge:  Before the court are cross-motions for summary judgment.

See Confid. Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem."), ECF 28;

Def.'s Cross-Mot. for Summ. J. and Resp. in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s

Cross-Mem."), ECF No. 31; Confid. Pl.'s Mem. of Law in Resp. to Def.'s Cross-Mot. for

Summ. J. ("Pl.'s Resp."), ECF No. 36; Def.'s Reply in Supp. of its Cross-Mot. for Summ.

J. ("Def.'s Reply"), ECF No. 38.  Plaintiff Trijicon, Inc. ("Trijicon" or "Plaintiff") contests

the denial of protest number 2304-21-102337 challenging U.S. Customs and Border

Protection's ("Customs") liquidation of the subject imports, referred to variously as

Tritium Sight Inserts, Tritium Lamps, or Trigalights,[1] under subheading 9405.50.40 of

the Harmonized Tariff Schedule of the United States ("HTSUS")[2] as "[l]amps or other

lighting fittings," dutiable at six percent *ad valorem.*  Compl., ECF No. 9.  Trijicon

contends that Customs should have classified the subject imports as an "[a]pparatus

based on the use of alpha, beta or gamma radiations," under subheading 9022.29.80

and dutiable at zero percent ad valorem.  Pl.'s Mem. at 1–2.

BACKGROUND

### I.   Material Facts Not In Dispute

A party moving for summary judgment must show "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  U.S.

Court of International Trade ("USCIT") Rule 56(a).  Parties submitted separate

statements of undisputed material facts with their respective motions and responses to

the opposing party's statements.  *See* Pl.'s Confid. Statement of Undisputed Material

Facts ("Pl.'s SOF"), ECF No. 28-1; Def.'s Resps. to Pl.'s Statement of Undisputed

Material Facts ("Def.'s Resp. to Pl.'s SOF"), ECF No. 31-1; Def.'s Statement of Add'l

Undisputed Material Facts ("Def.'s Add'l SOF"), ECF No. 31-2; Pl.'s Confid. Resps. to

---

[1] The parties and the foreign manufacturer use different terminology to refer to the imported goods in question.  The court refers to the items as "subject imports."

[2] All citations to the HTSUS are to the 2019 version, as determined by the date of importation of the subject imports.  *See LeMans Corp. v. United States*, 660 F.3d 1311, 1314 n.2 (Fed. Cir. 2011).

Def.'s Statement of Add'l Undisputed Material Facts ("Pl.'s Resp. to Def.'s Add'l SOF"),
ECF No. 36-1.

The subject imports consist of eleven models of goods in two shapes: cylindrical
(which Trijicon uses in iron sights) and rectangular (which Trijicon uses in riflescopes).[3]
Pl.'s SOF ¶¶ 2, 5, 35, 36; *see* Def.'s Resp. to Pl.'s SOF ¶¶ 2, 5, 35, 36 (admitting in
relevant part).  Each model contains, at least, a "gaseous tritium light source," which
consists of a "hermetically sealed glass capsule . . . coated internally with zinc sulfide
(also called phosphor) and filled with tritium gas."  Pl.'s SOF ¶¶ 12–13; *see* Def.'s Resp.
to Pl.'s SOF ¶¶ 12–13 (admitting in relevant part).  Tritium is a radioactive isotope of
hydrogen that emits a beta radiation particle as it decays.  Pl.'s SOF ¶¶ 15–16; *see*
Def's Resp. to Pl.'s SOF ¶¶ 15–16.  "Beta radiation is not emitted outside of the subject
merchandise."  Pl.'s SOF ¶ 24; *see* Def.'s Resp. to Pl.'s SOF ¶ 24.  The "beta particle
excites the interior zinc sulfide coating" in the glass capsule and "causes the coating to
emit a self-luminous glow."  Pl.'s SOF ¶¶ 20–21; *see* Def.'s Resp. to Pl.'s SOF ¶¶ 20–
21.  The subject imports "are warranted to glow" for five years or twelve years,
depending on the model.  Pl.'s SOF ¶¶ 54–55; *see* Def.'s Resp. to Pl.'s SOF ¶¶ 54–55
(admitting in relevant part).  The subject imports are not lead-lined, Def.'s Add'l SOF

---

[3] The distinctions between the models are immaterial.  The parties (and the court) agree
that, once the court determines the correct heading, all 11 models, regardless of shape,
are covered by the same subheading.  *See* Pl.'s Mem. at 4 n.4 (citing Customs'
representative's deposition).

¶ 4; *see* Pl.'s Resp. to Def.'s Add'l SOF ¶ 4, and do not have an aperture "through which beta radiation can pass," Def.'s Add'l SOF ¶ 2; *see* Pl.'s Resp. to Def.'s Add'l SOF ¶ 2.

The subject imports are branded by its manufacturer as Trigalights.  Def.'s Add'l SOF ¶ 5; *see* Pl.'s Resp. to Def.'s Add'l SOF ¶ 5 (admitting fact to the best of Trijicon's knowledge).  The subject imports, when inserted into Trijicon's products, "illuminate[] aiming points in firearm sights that Trijicon manufactures."  Pl.'s SOF ¶ 26; *see* Def.'s Resp. to Pl.'s SOF ¶ 26 (admitting in relevant part).  Without the subject imports installed, Trijicon's firearm sights would continue to work in daylight, but "the user would lose the additional advantage . . . of being able to aim effectively in low-light situations." Pl.'s SOF ¶ 53; *see* Def.'s Resp. to Pl.'s SOF ¶ 53 (admitting in relevant part).  The foreign producer of the subject imports markets Trigalights for watches, compasses, and gunsights, however, it is unclear (and not material) whether the specific models imported could be used in other items.  *See* Def.'s Add'l SOF ¶ 7; Pl.'s Resp. to Def.'s Add'l SOF ¶ 7.

Trijicon refers to the subject imports as lamps in communications with the manufacturer, in its engineering diagrams and instructions for factory workers, in product information for the general public, and in regulatory filings.  Def.'s Add'l SOF ¶¶ 8–12; *see* Pl.'s Resp. to Def.'s Add'l SOF ¶¶ 8–12 (admitting in relevant part).

## II.    Procedural Background

The subject imports were entered between January 2019 and March 2019.  Pl.'s SOF ¶ 4; *see* Def.'s Resp. to Pl.'s SOF ¶ 4.  In response to a request for internal advice, on August 17, 2020, Customs issued a ruling, HQ H307905, concluding that the subject

imports are properly classified under HTSUS 9405.50.40 ("[l]amps and other light

fittings . . . not elsewhere specified").  *See* Pl.'s SOF ¶ 7; Def.'s Resp. to Pl.'s SOF ¶ 7.

On October 27, 2020, at the port of Laredo, Texas, Trijicon filed Reconciliation Entry

No. 637-0639215-4 covering six entries made between January 2019 and March 2019.

Pl.'s SOF ¶¶ 3–4; *see* Def.'s Resp. to Pl.'s SOF ¶¶ 3–4.  On April 30, 2021, Customs

liquidated Reconciliation Entry No. 637-0639215-4 under tariff classification HTSUS

9405.50.40, and on October 17, 2021, Trijicon timely protested that classification.  Pl.'s

SOF ¶¶ 8–9; *see* Def.'s Resp. to Pl.'s SOF ¶¶ 8–9; *see also* Pl.'s SOF ¶ 11 (stating

Customs conceded that the protest was timely); Def's Resp. to Pl.'s SOF ¶ 11 (admitting

the same).  On October 27, 2021, Customs denied the protest, relying on its internal

advice ruling.  Pl.'s SOF ¶ 10; *see* Def.'s Resp. to Pl.'s SOF ¶ 10.  Trijicon contests the

denial of its protest, contending that its imports are properly classified under HTSUS

9022.29.80 ("[a]pparatus based on the use of . . . beta . . . radiation . . . .").  Compl.

¶¶ 47, 55.  Trijicon and the Government each moved for summary judgment.

### JURISDICTION AND STANDARD OF REVIEW

The court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1581(a).

The court decides classification cases *de novo*.  28 U.S.C. §§ 2640(a), 2643(b).

While Customs' classification is afforded deference relative to its "power to persuade,"

*United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (quoting *Skidmore v. Swift &*

*Co.*, 323 U.S. 134, 140 (1944)), the court has "an independent responsibility to decide

the legal issue of the proper meaning and scope of HTSUS terms," *Warner-Lambert Co.*

*v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005).  It is "the court's duty . . . to find

the *correct* result, by whatever procedure is best suited to the case at hand." *Jarvis*

*Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).

LEGAL FRAMEWORK

The court may enter summary judgment when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." USCIT

Rule 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Classifying an imported good involves two steps: (1) determining the meaning of the

relevant tariff provisions and (2) determining whether the product at issue falls within a

particular tariff provision. *Gerson Co. v. United States*, 898 F.3d 1232, 1235 (Fed. Cir.

2018). The first step is a question of law; the second is a question of fact. *Id.* When

there is no factual dispute as to the nature of the product, the two-step analysis is

"entirely . . . a question of law." *Id.* (citation omitted).

The General Rules of Interpretation ("GRIs") provide the analytical framework for

the court's classification of goods under the HTSUS. *Id.* The court applies the GRIs in

numerical order. *Id.* First and foremost, "for legal purposes, classification shall be

determined according to the terms of the headings and any [relevant] section or chapter

notes." GRI 1, HTSUS. "Absent contrary legislative intent, [courts] construe HTSUS

terms according to their common and commercial meanings, which [courts] presume

are the same." *Otter Prods., LLC v. United States*, 834 F.3d 1369, 1375 (Fed. Cir.

2016). The court may rely on its own understanding of the relevant terms and may

consult dictionaries, encyclopedias, or other reliable authorities. *Kalle USA, Inc. v.*

*United States*, 923 F.3d 991, 995 (Fed. Cir. 2019). In addition to the headings and

section or chapter notes, courts also may consult the World Customs Organization's

Explanatory Notes, which, though not legally binding, "are 'persuasive' and are

'generally indicative' of the proper interpretation."  *Otter Prods.*, 834 F.3d at 1375.  GRI

3 is used by the court when it determines that the imported goods are prima facie

classifiable under two or more headings or subheadings of HTSUS.  *Home Depot*

*U.S.A., Inc. v. United States,* 491 F.3d 1334, 1336 (Fed. Cir. 2007).  Pursuant to GRI 3,

"[t]he heading which provides the most specific description shall be preferred to

headings providing a more general description."  GRI 3(a), HTSUS.

DISCUSSION

I.    **The Tariff Provisions at Issue**

The parties propose two different classifications for the subject imports.[4]  Trijicon

contends that the subject imports are properly classified under HTSUS 9022.29.80, at a

zero percent duty rate.  Pl.'s Mem. at 2.  Chapter 90 of the HTSUS covers "Optical,

photographic, cinematographic, checking, precision, medical or surgical instruments or

apparatus; parts and accessories thereof."  Chapter 90 excludes "[s]earchlights or

spotlights of heading 94.05."  Ch. 90, Note 1(ij).  The relevant portion of Chapter 90

reads:

> **9022**: Apparatus based on the use of X-Rays or of alpha, beta or
> gamma radiations, whether or not for medical, surgical, dental or
> veterinary uses, including radiography or radiotherapy apparatus, X-ray
> tubes and other X-ray generators, high tension generators, control panels

---

[4] The court independently considered other tariff classifications, including those
mentioned in the Customs case file.  *See* Pl.'s Confid. Ex. 1, ECF No. 28-2.  The court
concludes that no other classification would be appropriate.  *See Jarvis Clark Co.*, 733
F.2d 878 (explaining court's duty to reach the "correct result").

and desks, screens, examination or treatment tables, chairs and the like;
parts and accessories there of:

> Apparatus based on the use of alpha, beta or gamma radiations
> whether or not for medical, surgical, dental or veterinary uses,
> including radiography or radiotherapy apparatus:

> **9022.29**: For other uses:

> **9022.29.80**: Other

The Government contends that the subject imports are properly classified under

HTSUS 9405.50.40, subject to a duty rate of six percent.  Def.'s Cross-Mem. at 13.

Chapter 94 covers "Furniture; bedding, mattresses, mattress supports, cushions and

similar stuffed furnishings; lamps and lighting fittings, not elsewhere specified or

included; illuminated signs, illuminated nameplates and the like; prefabricated

buildings."  The relevant portion of Chapter 94 reads:

> **9405**: Lamps and lighting fittings including searchlights and
> spotlights and parts thereof, not elsewhere specified or included;
> illuminated signs, illuminated nameplates and the like, having a
> permanently fixed light source, and parts thereof not elsewhere specified
> or included:

> **9405.50**: Non-electrical lamps and lighting fittings:

> **9405.50.40**: Other

The Explanatory Notes to both chapters and headings provide further guidance

for understanding the chapters and headings.  For Chapter 90, "as a rule," apparatus

are "characterised by their high finish and high precision," though "[t]here are certain

exceptions to the general rule."  Def.'s Ex. 8 (2017 Explanatory Notes to Chapter 90) at

XVIII-90-3, ECF No. 31-10.[5]  Apparatus "are used mainly for scientific purposes . . ., for specialised technical or industrial purposes . . . or for medical purposes."  *Id.*  Apparatus "may be of any material."  *Id.*

Specifically for Heading 9022, the "radioactive substance is placed in a container, normally of steel coated with lead (bomb), which has an aperture designed to let the radiations pass in one direction only."  *Id.* at XVIII-9022-2.  As examples, apparatus based on the use of alpha, beta, or gamma radiations include therapy apparatus and apparatus for radiological examinations.  *Id.*

Turning to Heading 9405, lamps and light fittings may consist of "any material" and "use any source of light."  *Id.* (2017 Explanatory Notes to Chapter 94) at XX-9405-1. The heading includes "[s]pecialised lamps," like "inspection lamps," and "[l]amps and light fittings for . . . vehicles . . ., for aircraft or for ships or boats," like "headlamps for trains."  *Id.*

Based on the plain language of HTSUS 9405, the two tariff classifications are mutually exclusive.  HTSUS 9405 covers "[l]amps and light fittings . . . not elsewhere specified or included . . .," so that if the subject imports are described by HTSUS 9022, they cannot be classified under HTSUS 9405.  Because of this mutual exclusivity, the

---

[5] Defendant provided copies of the Explanatory Notes to both chapters and subheadings from 2017; the 2019 version contains no relevant material changes.

subject imports are not prima facie classifiable under two headings and, therefore, GRI

3 does not apply.

## II.   HTSUS 9022 Classification

### a.   Parties' Contentions

Trijicon argues for classification under heading 9022, Pl.'s Mem. at 12, and, to

that end, the parties disagree over whether the subject imports are "apparatus," *see*

Def.'s Cross-Mem. at 22.  Trijicon first focuses on "apparatus" as a "set of materials

which are intended for some purpose or use," Pl.'s Mem. at 15, asserting that each

subject import is a set of materials consisting of, at least, a glass capillary, a phosphor

coating, and tritium gas, *id.* at 16.  In response, the Government argues that the U.S.

Court of Appeals for the Federal Circuit ("the Federal Circuit") defined "apparatus" as a

"complex device or machine for a specific use," thereby "effectively" holding that a lamp

is not an apparatus.  Def.'s Cross-Mem. at 13 (relying on *Gerson*, 898 F.3d at 1236).

The Government further argues that the subject imports are not apparatus described by

HTSUS 9022 because they do not have an aperture to let through beta radiation (as

described in the Explanatory Note); they are not high precision (also as described in the

Explanatory Note); and they cannot perform simple tasks like turning on and off or

dimming.  *Id.* at 18–20.  Even accepting Trijicon's initial reliance on a "set of materials,"

the Government argues that the subject imports do not qualify because "materials"

means "tools" or "equipment," not simply "anything that has matter."  *Id.* at 13–14.

Trijicon responds that the Federal Circuit also defined "apparatus" as "equipment

designed specifically to carry out a particular purpose," and, Trijicon contends, the

subject imports meet this definition because they consist of three core components (glass capillary, phosphor coating, and tritium) that "facilitate the aiming" of Trijicon's products.  Pl.'s Resp. at 16–20.  Moreover, Trijicon contends that the subject imports also fit the proffered definition of "any complex device or machine for a specific use" because the aforementioned parts cannot be easily separated—each relies on the other.  *Id.* at 17, 21–22.  Finally, Trijicon asserts that each model of subject imports has an aperture allowing light radiation to pass in one direction and that the "complex production process" to manufacture the subject imports qualifies them as apparatus.  *Id.* at 21, 24–25.

The Government replies that the subject imports are not complex because the parts are simply coordinated: they "statically interact" to create "the natural phenomenon of radioluminescence," Def.'s Reply at 12, and the aperture described in the Explanatory Note refers to one for the beta radiation—not light radiation—which the subject imports do not have, *id.* at 12–13.

### b.  Analysis

In *Gerson*, the Federal Circuit explained that, in setting out definitions for apparatus, the term "is not free of ambiguity."  898 F.3d at 1236 (citation omitted). Here, while the parties present various definitions of "apparatus," they ultimately coalesce around two: "a set of materials or equipment for a particular use" or "a complex machine or device."  Pl.'s Ex. 17, ECF No. 28-18 (reproducing *Apparatus*, THE MERRIAM-WEBSTER DICTIONARY (11th ed. 2019)); *see also* Def.'s Ex. 7, ECF No. 31-9 (reproducing *Apparatus*, WEBSTER'S NEW WORLD DICTIONARY (3d ed. 1988) ("the

instruments, materials, tools, etc. needed for a specific use, experiment, or the like" or "any complex device or machine for a specific use")); *Apparatus*, COLLINS ENGLISH DICTIONARY (1st ed. 2016) ("a collection of equipment used for a particular purpose"). Similarly, the Federal Circuit described apparatus as "equipment designed specifically to carry out a particular function," relying in part on the definition of apparatus as "any complex device or machine for a specific use." *Gerson*, 898 F.3d at 1236 (quoting *Apparatus*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (4th ed. 2009)). Here, any difference between those two definitions (a set of materials or equipment or a complex device) is inconsequential because the subject imports do not meet either definition. The court takes each of those definitions in turn.

To begin, it is clear to the court that the subject imports serve a particular or specific use or function. Namely, the subject imports provide illumination, in this case for the aiming points in firearm sights that Trijicon manufactures. Pl.'s SOF ¶ 26; Def.'s Resp. to Pl.'s SOF ¶ 26 (admitting in relevant part). While their insertion into various firearm sights occurs after importation, the purpose of the subject imports, as imported, is illumination, whether for firearm sights or for other products. Relatedly, the subject imports also meet the common definition of a device—that is, a thing made for a particular purpose. *Device*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2018). Moreover, Defendant effectively concedes that the subject imports are devices because a lamp, by Defendant's definition, is "any of various devices for producing light

or heat, as an electric light bulb or a gas jet."  Def.'s Ex. 7 (reproducing *Lamp*,

WEBSTER'S NEW WORLD COLLEGE DICTIONARY (3d ed. 1988)).

      The court, however, concludes that the subject imports are not a set of materials

for purposes of HTSUS 9022.  "[W]ords grouped in a list should be given related

meaning," *Third Nat. Bank v. Impac Ltd.*, 432 U.S. 312, 322 (1977), and the court

considers the provided examples when evaluating the definitions of apparatus

referencing materials or equipment in this context.  In particular, the court notes that

Plaintiff's proffered definition is "a set of materials *or equipment*."  Pl.'s Ex. 17 (emphasis

added).  While this is stated in the disjunctive, in the context of an apparatus of HTSUS

9022, it appears incongruous to read "materials" to include anything of matter, rather

than referring to equipment or tools or instruments.  *See* Def.'s Ex. 7 (providing the

definition of apparatus as "*the instruments*, materials*, tools, etc.* needed . . . .)

(emphases added).  Equipment means a "set of articles or physical resources serving to

equip" something and is also, circularly for these purposes, known as an "apparatus."

*Equipment*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2018).  Nevertheless,

each individual component of the subject imports must also serve a particular function.

While the subject imports each contain, at least, three components consisting of a glass

capillary, phosphor coating, and tritium gas, *see* Pl.'s SOF ¶¶ 12–13; Def.'s Resp. to

Pl.'s SOF ¶¶ 12–13 (admitting in relevant part), none of those constituent parts

constitutes equipment because no part, alone, serves a particular function.  As

discussed below, it is only in combination with the other constituent parts that they serve

the intended function of providing illumination.  Thus, the existence of the constituent

parts is insufficient insofar as "apparatus" means "a collection of equipment." *Apparatus*, COLLINS ENGLISH DICTIONARY (1st ed. 2016). Moreover, the alternative definition of "a complex device" further supports that "apparatus" requires more than the inclusion of individual constituent parts.

The alternative definition of a "complex device" fares no better for Plaintiff. "Complex" is commonly defined as "[c]onsisting of parts or elements not simply co-ordinated, but some of them involved in various degrees of subordination"; "complicated, involved, intricate"; or "not easily analysed or disentangled." Pl.'s Ex. 21, ECF No. 36-4 (definition from the online version of *The Oxford English Dictionary*). The court can readily discern the separate elements of the subject imports: the glass capillary, the phosphor coating, and the tritium gas. However, as just discussed, these elements must work together to create illumination—if any element were removed, the illumination could not be effectively created *and* directed. Each element remains distinct and able to be disentangled from the others, and no element is subordinate to the others. Instead, all three elements must be coordinated, and this coordinated functioning is not sufficient to establish complexity. Despite the scientific nature of this manner of producing illumination, and the inclusion of beta radiation, it is a natural phenomenon created by the coordination of different component parts. Trijicon's assertion of a "complex production process" to manufacture the subject imports, Pl.'s Resp. at 21, is inapposite: the question is whether the device is complex, not whether

the process of creating the device is complex.  Here, the subject imports are not

complex devices for purposes of being considered apparatus under HTSUS 9022.

The court is not suggesting that illuminative items can never be complex.  *Cf.*

Def.'s Cross-Mem. at 15.  In *Gerson*, the Federal Circuit, rather than discussing

complexity, explained that the LED candles at issue did not serve a particular function,

because they were *both* decorative *and* illuminative.  898 F.3d at 1236.  In fact, the

Chapter 90 Explanatory Notes support the understanding that illuminative articles may

be complex by explicitly excluding "[s]earchlights and spotlights of heading 94.05."

Def.'s Ex. 8 at XVIII-90-1.  There would be no need to exclude any part of HTSUS 9405

from HTSUS 9022 if lamps could not be considered a complex device or apparatus.

Here, however, the court has considered the interaction of the individual parts of the

subject imports and determined that the subject imports are not complex.[6]

The relevant Explanatory Notes further support the conclusion that the subject

imports are not apparatus notwithstanding their inclusion of beta radiation.  The

Explanatory Notes contextualize *how* the beta radiation is *used*—it passes through an

aperture.  Def.'s Ex. 8 at XVIII-9022-2.  It is undisputed that the subject imports do not

contain an aperture "through which beta radiation can pass."  Def.'s Add'l SOF ¶ 2; *see*

---

[6] Defendant also argues that classifying the subject imports under HTSUS 9022 would
unreasonably limit HTSUS 9405 to non-radiation powered lamps.  Def.'s Cross-Mem. at
15.  Trijicon replies by citing numerous Customs rulings classifying non-electrical lamps
under HTSUS 9405.  Pl.'s Resp. at 27–28.  Because the court, relying on the definition
of apparatus and the undisputed facts describing the subject imports, concludes the
subject imports are not complex, this argument is inapposite.

*also* Pl.'s Resp. to Def.'s Add'l SOF ¶ 2.[7]  Plaintiff attempts to avoid the absence of an

aperture for beta radiation by averring that the subject imports have an "aperture that

allows for light radiation to pass in one direction."  Pl.'s Resp. at 25; *see also* Pl.'s Ex.

23 at 13–14, ECF No. 36-6.  But the Explanatory Note addresses alpha, beta, and

gamma radiation—not light radiation.  *See* Def.'s Ex. 8 at XVIII-9022-2 (identifying beta

radiation and describing "an aperture designed to let the radiations pass in one direction

only").  Thus, the subject imports also do not ultimately *use* the beta radiation in the

manner referenced in the Explanatory Notes.  That is to say, the beta radiation is

present and contained within the glass capsule, where it interacts with the phosphor

coating to create *light* radiation, which is directed by an outside sheathing (whether of

metal or paint).  *See* Pl.'s SOF ¶¶ 21, 42, 63; Def.'s Resp. to Pl.'s SOF ¶¶ 21, 42, 63.

　　　　Trijicon's attempts to analogize the subject imports to other Customs

classification rulings are unpersuasive.  Relying on a 1991 Headquarters Ruling

regarding the classification of a research irradiator, Trijicon argues that Customs has

previously found that "the incorporation of radiation along with other materials resulted

in an 'apparatus' classified in 9022."  Pl.'s Mem. at 15 (citing HQ 088465 (Feb. 22,

1991)).  That Customs ruling, however, is inapposite.  First, the ruling did not define the

contours of an "apparatus"; rather, Customs focused on why the irradiator was not

classified as a package for radioactive materials.  *See* HQ 088465.  Second, that

product was "a high dose rate research irradiator" used for "medical product

---

[7] The subject imports also do not contain a steel coating with lead; however, the parties
agree this is not a requirement.  *See* Pl.'s Mem. at 24; Def.'s Cross-Mem. at 22.

sterilization, biological and genetic effects, food preservation, growth stimulation, [and] chemistry pollution," *id.*; that description suggests a different level of complexity and a product that is incomparable in its manner of composition from the subject imports here. The single common feature of beta radiation between the two goods is insufficient to make the research irradiator a helpful comparator.[8]

For the reasons listed above, the court concludes that the subject imports are not properly classified under HTSUS 9022.

## III.   HTSUS 9405 Classification

### a.   Parties' Contentions

Defendant argues that the subject imports are classifiable within HTSUS 9405, lamps or light fittings.  Defendant explains that the subject imports fit the common definition of a lamp because they provide illumination, that light sources in gunsights are referred to as lamps, and that Trijicon refers to the subject imports as lamps in various materials.  Def.'s Cross-Mem. at 10.

Trijicon responds that the subject imports cannot be classified as "lamps" because that classification does not contemplate illumination devices using radiation for

---

[8] Trijicon further relies on this Customs ruling to dispute that "Heading 9022 applies only to an imported article consisting of several different devices working together as a machination, rather than a discrete, individual article designed for a particular purpose." Pl.'s Resp. at 19.  However, the Customs ruling in question did not provide a detailed description of the irradiator.  *See* HQ 088465.  Trijicon further cites to a Customs ruling classifying an Optical Heating Crystallization Device under HTSUS 9022, Pl.'s Resp. at 19, but that product consisted of a "laser, a red pointing laser diode, a combined scanner and mirror, additional mirrors, and a controller," thus indicating it, in fact, contained "several different devices."  NYRL 184115 (Oct. 5, 2011).

specific purposes.  Pl.'s Resp. at 2–15.  Trijicon contends that the incorporation of

radiation and the specific purpose of these products distinguish them from examples of

lamps in caselaw and the Explanatory Notes (which do not mention tritium).  *Id*.  Trijicon

further argues that prior Customs rulings establish that illumination is insufficient to

warrant classification as a lamp because the subject imports do not light a room.  *Id.* at

2–9.  Trijicon avers that HTSUS 9405 "contemplates merchandise that the general

public would traditionally understand to be 'lamps' or 'light fixtures,'" like "table lamps,

Christmas lights, and candlesticks."  Pl.'s Mem at 34.

### b.  Analysis

The parties (and the court) agree that HTSUS 9405 is an *eo nomine* provision,

that is, one that describes an article by a specific name and, absent terms of limitation,

includes all forms of the article.  *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375,

1379 (Fed. Cir. 1999) (citations omitted).  When considering classification under an *eo

nomine* provision, the court may, in some circumstances, consider an article's "physical

characteristics, . . . how it was designed and for what objectives, and how it is

marketed."  *GRK Can., Ltd. v. United States*, 761 F.3d 1354, 1358 (Fed. Cir. 2014).

It is clear from the definition of lamp and the description of the subject imports

that the subject imports are readily classified as lamps.  A lamp is "any of various

devices for producing light."  Def.'s Ex. 7 (quoting *Lamp*, WEBSTER'S NEW WORLD

COLLEGE DICTIONARY (3d ed. 1988)).  It is undisputed that the subject imports produce

illumination.  Pl.'s SOF ¶ 26; *see* Def.'s Resp. to Pl.'s SOF ¶ 26 (admitting in relevant

part).  The Explanatory Note confirms that lamps "can be constituted of any material . . .

and use any source of light." Def.'s Ex. 8 at XX-9405-1. Thus, a lamp can readily include one that involves beta radiation. It makes no difference that the Explanatory Notes do not specify tritium-powered lamps because the list is exemplary, not exhaustive. Moreover, Trijicon regularly refers to the subject imports as tritium lamps in various documents within the organization and with government agencies. *See* Def.'s Confid. Exs. 2–5, ECF Nos. 32-4, 32-5, 32-6, 32-7. At least one science journal also refers to the item used to illuminate the aiming point of a gun as a "lamp." *See* Def.'s Ex. 7 (reproducing *Gunsights*, McGraw-Hill Encyclopedia of Sci. and Tech. at 305 (9th ed. 2002) (". . . the reticle may be illuminated by a small lamp to permit night use."). Meanwhile, Trijicon's averment that the "general public" would not consider the subject imports to be lamps is unsupported. The documented usage of the term "lamp" to describe the subject imports suggests that they meet the "common and commercial meaning[]" of lamps. *See Carl Zeiss,* 195 F.3d at 1379.

Trijicon's further counterpoints are unavailing. First, Trijicon points out that, when "pressed" to place the subject imports into one of the Explanatory Note's categories, the Government's witness chose "candelabra, candlesticks, candle brackets, e.g., for pianos." Pl.'s Resp. at 7. Regardless of the witness's suggestion, the Explanatory Note's list is not exhaustive, and Customs need not place the items in any category. Moreover, the Government now suggests the subject imports could be considered to be specialized lamps. *See* Def.'s Cross-Mem. at 10.

Trijicon next quibbles over the purpose of the subject imports, contending that they are not meant to "illuminate a space" or "light a room" and therefore are not lamps.

Pl.'s Resp. at 7.  But HTSUS 9405 is not limited to items meant to light a room—it

includes searchlights and spotlights, exterior lamps, and headlamps for trains, none of

which would necessarily light a room or even a space, as those lamps might be used for

guidance or warning.  *See* Def.'s Ex. 8 at XX-9405-1.  Moreover, the subject imports do

illuminate a space—as used by Trijicon, they illuminate the "aiming points in firearm

sights."  Pl.'s SOF ¶ 26; *see* Def.'s Resp. to Pl.'s SOF ¶ 26 (admitting in relevant part).

Trijicon's reliance on caselaw wherein courts found that certain products (namely

LED candles and candles in decorative glass vessels) were properly classified under

HTSUS 9405 is equally unconvincing to distinguish the subject imports.  Pl.'s Resp. at

3–4 (discussing *Gerson*, 898 F.3d 1232, and *Pomeroy Collection, Ltd. v. United States*,

32 CIT 526, 559 F. Supp. 1374 (2008)).  Trijicon argues that because LED candles and

candles in decorative glass vessels *are* lamps, the subject imports, which are not

decorative and serve a single particular purpose, therefore *are not* lamps.  Pl.'s Resp. at

3–4.  The fact that the subject imports are different from the products in those cases

does not mean that they cannot also be lamps.  The term lamp encompasses all sorts

of devices that illuminate and there is no requirement that a lamp be decorative simply

because two prior court opinions involved decorative lamps.  Trijicon also notes that the

goods in *Pomeroy* fit into an identified category of the Explanatory Notes (candles), *id.*, but that list is illustrative, not exhaustive.[9]

Finally, Trijicon argues that "a name that *sometimes* refers to the articles in colloquial usage does not determine how the article is classified."  Pl.'s Resp. at 13. Trijicon advises that courts should not "ignore the purpose for which [the subject imports] were designed and made and the use to which they were actually put."  Pl.'s Resp. at 13 (citation omitted).  Nevertheless, marketing is a factor courts may consider, *GRK Can.*, 761 F.3d at 1358, and that is all the court does here—consider the marketing and industry usage of the term "lamp" when describing the subject imports. The court does not ignore the purpose of the subject imports; that purpose (illumination) is consistent with the court's analysis and conclusion.  Trijicon would, instead, have the court focus on the inclusion of beta radiation to find that the subject imports cannot be lamps, *see* Pl.'s Resp. at 7, 9–10; however, the mere inclusion of beta radiation does not detract from the court's finding that the physical characteristics, design, objectives,

---

[9] Trijicon also tries to analogize the subject imports to glows sticks and "light sticks," which Customs has previously classified as something other than lamps.  *See* Pl.'s Resp. at 8–9.  Those items, and their appropriate classifications, are sufficiently distinct from the subject imports that the analogies are unhelpful to the court.  In particular, glow sticks were ultimately classified in a subheading that still required a lighting effect (unlike the alternative subheading here), and "light sticks" (according to Trijicon) "are used in a variety of applications" (unlike the subject imports here which are used solely for illumination).

and marketing of the subject imports for illumination support classification of the subject imports as lamps within HTSUS 9405.

Having determined that the subject imports are properly classified within HTSUS 9405, and in the absence of any dispute as to the proper subheading, the court further finds that these imports are properly classified within the HTSUS subheading 9045.50.40, Non-electrical lamps and lighting fittings, Other.

## CONCLUSION

For the foregoing reasons, the court finds that Customs properly classified the subject imports under HTSUS 9405.50.40.  The court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment. Judgment will be entered accordingly.

/s/      Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: February 16, 2024
        New York, New York